No. 24-7203

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————————

**UNITED STATES OF AMERICA**,
PLAINTIFF-APPELLEE,

V.

**BENJAMIN MARTIN**,
DEFENDANT-APPELLANT.

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
D.C. NO. 1:21-CR-228-JLT-BAM

———————————

**UNITED STATES' RESPONSE IN OPPOSITION TO APPEAL
PURSUANT TO RULE 9(b)**

———————————

MICHELE BECKWITH
Acting United States Attorney

NIRAV K. DESAI
Assistant U.S. Attorney
Appellate Chief
Criminal Division

JOSEPH D. BARTON
ROBERT L. VENEMAN-HUGHES
MICHAEL G. TIERNEY
Assistant U.S. Attorneys
Eastern District of California
2500 Tulare Street, Suite 4401
Fresno, California 93721
Telephone: (559) 497-4000

Attorneys for Appellee

## INTRODUCTION

Martin was previously convicted for a domestic violence offense, was subject to multiple restraining orders, amassed an arsenal of firearms in California, and was found to have obstructed justice. He is serving 38 months in prison after being convicted of unlawfully possessing firearms following a misdemeanor conviction of domestic violence, pursuant to 18 U.S.C. § 922(g)(9). He seeks release while he argues that § 922(g)(9) is unconstitutional—a claim rejected in every published decision addressing the issue—and that he was pardoned in a separate and unrelated case relating to the events at the United States Capitol on January 6, 2021. Neither claim raises a substantial question of law or fact likely to result in reversal or a new trial, and so this Court should affirm the district court's denial of bail on appeal.

## STATEMENT OF THE CASE

Martin is a man in his mid-40s whose criminal history dates back to age 18. PSR ¶¶ 37–43. He has two convictions for domestic violence. PSR ¶¶ 41–42. First, in 2016, he pleaded no contest to a misdemeanor domestic violence offense later dismissed through a

1

diversion program.  PSR ¶ 41.  Second, in 2019, he suffered another such conviction, which gave rise to his firearms prohibition at issue here.  PSR ¶ 42; CR 11.  Martin has also been subject to three restraining orders.  PSR ¶¶ 42, 57 n.5; CR 113 at 2.[1]

On September 2, 2021, federal agents searched Martin's residence pursuant to a federal search warrant authorizing them to seize firearms and evidence of violations of 18 U.S.C. § 922(g)(9).  Ex. 1.  Agents authored the warrant after they observed eight firearms, including an assault rifle, four other rifles, a handgun, and two shotguns, in plain view while serving an unrelated warrant.  Ex. 1 at 7.  That unrelated warrant, which sought evidence related to events that occurred at or near the U.S. Capitol on January 6, 2021, did not include firearms in the scope of items to be seized.  Ex. B at 22–23.[2]

---

[1] Martin's motion advances only a facial constitutional attack on § 922(g)(9).  For example, he only attacks the statute in broad terms, does not expressly make an as-applied challenge, and does not discuss the relevant facts of his case.  Out of caution, the government describes Martin's background because any as-applied challenge does not present a substantial question.

[2] The government refers to Martin's exhibits throughout with continuous pagination as generated by a PACER download of the exhibits, from pages 1 through 62.

After service of the second warrant, Martin was charged with a violation of 18 U.S.C. § 922(g)(9).  CR 1.  He was released to on pre-trial conditions over the government's objection.  CR 7.  He was indicted for the same offense in September 2021.  CR 11.  Martin filed a motion to suppress and motion to dismiss.  CR 75–76.  After hearing, both motions were denied.  CR 97.

Prior to the service of the search warrant at issue in this case, Martin had been charged via complaint with offenses relating to events that occurred at or near the U.S. Capitol on January 6, 2021, in the U.S. District Court for the District of Columbia.  Compl., *United States v. Martin*, no. 1:21-cr-562 (D.D.C.), Req. for Judicial Notice[3], Ex. 2.  He was convicted by a jury of offenses related to trespass and civil disorder and sentenced on December 21, 2024.  Judgment, *Martin*, no. 1:21-cr-562 (D.D.C.), RFJN, Ex. 3.  On January 20, 2025, Martin was pardoned in that case.  Ex. C at 29–30.  His Certificate of Pardon was issued on February 5.  RFJN, Ex. 1.

---

[3] The government will file a request to take judicial notice of documents filed in:  *U.S. v. Martin*, no. 1:21-cr-562 (D.D.C.); and *U.S. v. Taranto*, no. 1:23-cr-229 (D.D.C.), as well as Martin's Certificate of Pardon.  Such documents are cited as, "RFJN, Ex. __."

On September 10, 2024, Martin was convicted in a bench trial of the sole count in the Eastern District case, a violation of 18 U.S.C. § 922(g)(9).  CR 115.  On November 25, the court sentenced him to 38 months in prison.  CR 132.  In doing so, it applied an enhancement for obstruction of justice.  Ex. 2 at 15–21; PSR ¶¶ 17–18, 28.  Martin filed a notice of appeal.  CR 124.  In January 2025, Martin unsuccessfully moved for bail pending appeal.  CR 133, 138.

When hearing Martin's motion, the court made several findings and conclusions.  First, it concluded legally that there was not a "fair debate" on the constitutionality of § 922(g)(9).  Ex. A at 16:23–24.  Second, it made a factual finding that that Martin's possession of weapons did not occur "at or near the Capitol," Ex. A. at 7:20–21, and a legal conclusion that the pardon did not cover Martin's conviction in the Eastern District case, Ex. A at 7:24–25.

## ARGUMENT

### I.    Applicable Legal Standards

#### A.    Standard of Review

In proceedings related to release pending appeal, this Court reviews the district court's factual findings for clear error.  *United*

4

*States v. Garcia*, 340 F.3d 1013, 1015 (9th Cir. 2003). This Court reviews the district court's legal determinations de novo. *Id.*

### B.    The Bail Reform Act

Post-trial release pending appeal is governed by 18 U.S.C. § 3143(b)(1); the court "shall" order a sentenced person who has filed an appeal to be detained unless the court finds both: (1) by clear and convincing evidence that the person is not likely to flee or pose a danger to the community, and (2) that the appeal is not for the purpose of delay and raises a substantial question of law and fact likely to result in reversal, a new trial, or the equivalent. In contrast to pre-trial detention, the burden to show that a person is not a flight risk or a danger lies with the defendant. *United States v. Montoya*, 908 F.2d 450, 451 (9th Cir. 1990).

This Court has defined a "substantial question" as one that is "fairly debatable or fairly doubtful." *United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985). Such a showing requires "more substance than would be necessary to a finding that it was not frivolous." *Id.* (citing *United States v. Giancola*, 754 F.2d 898, 901

5

(11th Cir. 1985) (holding that the Bail Reform Act raised the standard above showing merely that appeal is not frivolous).

## II.   Section § 922(g)(9) is constitutional, and Martin's pending appeal on that issue does not raise a "substantial question" of law or fact.

### A.    Facial Constitutional Challenges

As noted, Martin's motion shows he intends only to advance a facial challenge.  A facial challenge "is the 'most difficult challenge to mount successfully,' because it requires a defendant to 'establish that no set of circumstances exists under which the Act would be valid.'" *United States v. Rahimi*, 602 U.S. 680, 693 (2024) (citation omitted). Thus, to prevail on the merits, the government need only show that statute "is constitutional in some of its applications."  *Id.*

### B.    Section 922(g)(9) is constitutional because it disarms a category dangerous individuals.

Section 922(g)(9) bars a potentially dangerous class of persons from possessing firearms.  The statute makes it "unlawful for any person . . . who has been convicted in any court of a misdemeanor crime of domestic violence" to possess a firearm."  18 U.S.C. § 922(g)(9).  Congress took this action because "firearms and domestic strife are a potentially deadly combination."  *United States*

6

*v. Hayes*, 555 U.S. 415, 426–27 (2009). In Congress's view, the dangerousness posed by perpetrators of domestic violence required it to extend existing firearms prohibitions to misdemeanants. *Id.* The danger continues: every year the United States tragically records millions of acts of domestic violence and over 1,500 deaths. *United States v. Gailes*, 118 F.4th 822, 823 (6th Cir. 2024). And each month more than 70 people are shot and killed by an intimate partner. *Id.* at 827 (citing *Rahimi*, 602 U.S. at 707 (Sotomayor, J., concurring)). Section 922(g) therefore aims to protect the public by removing deadly weapons from a dangerous class of persons.

"The right to keep and bear arms," though a "fundamental right[] necessary to our system of ordered liberty," is "not unlimited." *Rahimi*, 602 U.S. at 69. Firearm restrictions, including prohibitions, are permissible so long as they are "consistent with the 'Nation's historical tradition of firearm regulation.'" *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. 1, 17 (2022).

Disarming dangerous people is firmly part of that tradition. "Since the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to

7

others from misusing firearms." *Rahimi*, 602 U.S. at 690. Indeed, since *Bruen* clarified the "historical tradition standard," courts have upheld several restrictions that—like § 922(g)(9)—aim to withhold dangerous persons from possessing firearms. That includes individuals subject to certain restraining orders, *Rahimi*, 602 U.S. at 693–98, as well as those accused of serious criminal offenses while their cases are pending. *Perez-Garcia*, 96 F.4th at 1186–89 (reviewing the "historical tradition of disarming people whose possession of firearms would pose an unusual danger, beyond the ordinary citizen, to themselves or others"). When it acts within this tradition of disarming dangerous persons, Congress's bans on firearms possession do not offend the Constitution.

Because § 922(g)(9) disarms the dangerous, it is likewise constitutional. *Gailes*, 118 F.4th at 830 (holding that "people who were previously convicted of a domestic-violence misdemeanor fall squarely within the category of people who pose a clear threat to the physical safety of others"). The historical tradition of restricting firearm ownership by dangerous or violent individuals, including surety laws and "going armed" laws, supports § 922(g)(9). *Id.* at 827–

28; *see also Rahimi*, 602 U.S. at 698 ("Taken together, the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed.").

Section 922(g)(9)'s constitutionality is not fairly debatable. "[T]here appears to be post-*Bruen* consensus that restrictions on the possession of firearms by persons convicted of domestic violence misdemeanors are consistent with the nation's historical tradition of firearm regulation." *United States v. Jones*, no. 1:23-CR-52-SEG-JKL, 2023 WL 8275969, at *4 (N.D. Ga. Nov. 30, 2023); *see also United States v. Hatch*, no. 1:22-CR-59 HAB, 2024 WL 340762, at *6 (N.D. Ind. Jan. 30, 2024) (noting a "consensus among every district court" to have considered a facial challenge that § 922(g)(9) is constitutional); *United States v. Ryno*, 675 F. Supp. 3d 993, 1003 (D. Alaska 2023) (upholding § 922(g)(9)'s constitutionality and noting a "robust consensus of persuasive authority").

Martin cites to pre-*Bruen* dissents and scholarly opinion, Mot. at 10–11, but they do not aid his cause because they neither analyze the issue under the correct framework nor grapple with the strong

9

tradition of danger-based prohibitions on firearms as articulated in *Rahimi* and subsequent cases.  *See Rahimi*, 602 U.S. at 690.[4]  Thus, the motion fails to disturb the nationwide consensus in favor of § 922(g)(9)'s constitutionality.  This Court should deny it.

Martin's other arguments do not produce a fairly debatable question.  He notes that this Court, sitting en banc, is reviewing the vacated panel decision in *United States v. Duarte*, 101 F.4th 657 (9th Cir. 2023), which held that § 922(g)(1) is unconstitutional as applied to certain felons.  Mot. at 9–10.  But the en banc panel is considering a broader question than presented here.  Here, what is at issue is a class of predicate offenses that already shows the class of persons committed acts of domestic violence and present a risk of danger to others.  And it is of no moment that Martin points to the labels of "misdemeanant" or "felon"; § 922(g)(9) is trained on persons who present an increased risk of violence or misuse of firearms.

---

[4] Nor does this Court's remand in *United States v. Yates*, no. 22-30051, 2023 WL 2770080 (9th Cir. Mar. 31, 2023), of a § 922(g)(9) case shortly after *Bruen* assist Martin.  Mot. at 13.  "*Bruen* represented a sea change in Second Amendment jurisprudence," *Ryno*, 675 F. Supp. 3d at 1007, so considering the issue under *Bruen*'s standards is sensible.

Further, Martin briefly attempts to contrast *Rahimi*'s focus on persons subject to domestic violence restraining orders with § 922(g)(9), which he claims effects lifetime disarmament. Mot. at 13. Setting aside that the relevantly similar principles identified in *Rahimi* and *Gailes* support the constitutionality of § 922(g)(9), the statutory scheme permits a misdemeanant to restore his ability to possess firearms. *See* 18 U.S.C. §§ 921(a)(33)(B)(ii) & (C).

Martin appears only to challenge § 922(g)(9)'s facial constitutionality, but Martin's history amplifies why § 922(g)(9) is constitutional and demonstrates why Congress properly regarded domestic-violence misdemeanants as having a higher likelihood for dangerousness. *See also Rahimi*, 602 U.S. at 693 (rejecting facial challenge to 18 U.S.C. § 922(g)(8) in reliance on the facts of Rahimi's own case). Martin's conviction stemmed from a 2017 incident in which he strangled his girlfriend and then dragged her back into the residence when she tried to flee. CR 113 at 2; PSR ¶ 42. Martin also threatened to "take out" his own sister as part of a profane tirade of messages that resulted in a court granting another restraining order against him. CR 113 at 2; PSR ¶ 57 n.5. Martin also physically

11

interfered with a supermarket company's operations, leading to yet another restraining order. CR 113 at 2 (proffer by the government). Martin also attempted to obstruct justice in this case, by suggesting to his fiancée that she lie about Martin's ownership of the firearms in his house. PSR ¶¶ 17–18, 28; CR 113 at 3–4. The district court imposed an obstruction of justice enhancement for that conduct. Ex. 2 at 21. Accordingly, even if Martin were to mount an as-applied challenge to § 922(g)(9), it would fail.

## III.  Martin does not raise a "substantial question" of law or fact regarding the scope of his pardon.

Martin was not pardoned for his September 2, 2021 crimes in Madera, California when he was pardoned for offenses committed at or near the U.S. Capitol on January 6, 2021. His argument otherwise, Mot. at 14, does not raise any "fairly debatable" question.

### A.  A pardon sets aside the consequences of a particular conviction as an "act of grace."

A pardon is an "act of grace" which removes the punishment from a crime a person has committed. *United States v. Wilson*, 32 U.S. 150, 160 (1833). Pardons are a distinct act of clemency; related is the President's related ability to commute sentences, reducing the

length of a convicted person's sentence without freeing him from the disability of the conviction. *See, e.g., Schick v. Reed*, 419 U.S. 256, 260 (1974) (reviewing the common-law roots of the power to commute sentences as formulated in the President's pardon powers).

In its effect, "the granting of a pardon is in no sense the overturning of a judgment of conviction by some other tribunal; it is an executive action that mitigates or sets aside *punishment* for a crime." *Nixon v. United States*, 506 U.S. 224, 232 (1993) (internal citations omitted) (emphasis original); *see also United States v. Benton*, 98 F.4th 1119, 1129 (D.C. Cir. 2024) (explaining that a pardon "'does not blot out guilt' or create a factual fiction that conviction never occurred.") (citation omitted).

By setting aside such punishment, a pardon restores the civil rights of a defendant and relieves the pardoned person from "any of the penalties and disabilities" of conviction. *Ex Parte Garland*, 71 U.S. 333, 334 (1866). No authority stands for the proposition that a pardon, regardless of the stage of proceeding, affects the fruits of an investigation rather than a conviction.

13

A pardon releases an offender only from those offenses covered by the pardon and does not extend to other offenses outside of the terms of the pardon. *Ex Parte Weimer*, 8 Biss. 321, 29 F. Cas. 597, 598 (C.C.E.D. Wis. 1878) (pardon for fraud conspiracy did not extend to forfeiture for individual acts of fraud); *see also United States v. Posey*, 655 F. Supp. 3d 762, 768–70 (N.D. Ind. 2023) (presidential pardon for simple possession of marijuana did not reach firearm possession by drug user). When interpreting the language of a pardon, courts look to its ordinary tools of statutory interpretation. *United States v. Matassini*, 565 F.2d 1297, 1302 (5th Cir. 1978).

**B.**    **Martin was pardoned only for "Certain Offenses Relating to Events at or near the United States Capitol on January 6, 2021."**

Martin's pardon was effectuated through two documents. To start, the President's Executive Order, "Granting Pardons and Commutation of Sentences for Certain Offenses Relating to the Events at or near the United States Capitol on January 6, 2021," granted clemency of different types to two different classes of individuals. Ex. C at 28–30; 90 Fed. Reg. 8331 (Jan. 20, 2025).

14

Subsection (a) pf the Executive Order commuted the sentences of fourteen individuals to "time served." Ex. C at 29. Subsection (b), covering Martin's D.D.C case, pardoned "all other individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021." Ex. C. at 30.

Martin also received a Certificate of Pardon. RFJN, Ex. 1. It provides that Martin's "pardon applies only to convictions for offenses related to events that occurred at or near the United States Capitol on January 6, 2021."

### C. Martin's firearms conviction is not for an offense related to events that occurred at or near the Capitol on January 6, 2021.

Martin's pardon for January 6, 2021 offenses he committed in Washington, D.C., does not reach his separate firearms offense he committed in California at a different time. The plain language of the pardon says it "applies only to convictions for offenses related to events that occurred at or near the United States Capitol on January 6, 2021." RFJN, Ex. 1. Crucially, it is the *offense* which must be related to those events. Something is related when it is "connected in some way," Black's Law Dictionary (12th ed. 2024), but Martin's

15

instant conviction was not connected in any way to events that occurred at or near the Capitol on January 6, 2021. CR 1; Ex. A at 7:20–21. He was convicted of illegal firearms possession in California, not Washington, D.C., and he engaged in that illegal possession on September 2, 2021, not January 6, 2021.

The limiting language and context of the pardon also show an intention to issue narrow grace, not broad relief. *See*, *e.g.*, *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 441 (2019) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.") (citation omitted). The Executive Order focuses on "certain" offenses. Similarly, the Certificate of Pardon uses the term "only," strongly suggesting restraint. And both documents provide relief only for offenses tethered to a specific location and date. The intention to provide limited relief is plain from the text and context.

Another court that confronted this issue found the pardon to be narrow in scope. In the superseding indictment for *United States v. Taranto*, no. 1:23-cr-229 (D.D.C.), RFJN, Ex. 5, the defendant was

16

charged with offenses related to events at or near the Capitol on January 6, 2021, as well as firearms-related offenses that occurred in June 2023. Following the President's Executive Order, the defendant moved to dismiss the 2023 firearms counts, arguing they were covered by the pardon. Mot. to Dismiss, *Taranto*, RFJN, Ex. 6. The government opposed, arguing that the "language of the pardon is limited in scope by time and location." Gov. Reply, *Taranto*, RFJN, Ex. 7. The court agreed, denying the motion to dismiss. 8/12/2025 Minute Order, *Taranto*, RFJN, Ex. 8.

Martin suggests that his California firearms offense is "related" to events that occurred at or near the Capitol on January 6, 2021, because the agents' plain view observations that gave rise to the separate search warrant for the instant offense were made during the service of a search warrant related to the events of January 6. In essence, he argues that because the firearms investigation was related to the January 6 investigation, the firearms offense is related to the events of January 6. However, as provided in *Garland* and *Nixon*, a pardon relieves someone of the punishment or consequences of his conviction. Martin's instant conviction is not punishment for

17

his conduct on January 6, 2021, nor was the search of his residence a consequence of his conviction. Martin's argument conflates the investigation that discovered his instant offense conduct with the offense itself, contrary to the plain language of the pardon.

In support of his argument, Martin relies primarily on subsection (a) of the Executive Order, particularly in the order's commutation of the sentence of Jeremy Bertino. Mot. at 16. Martin argues that he is similarly situated to Bertino, who possessed firearms at his home in North Carolina that were seized in a January 6-related search warrant. Mot. at 16. But Martin is not similarly situated to Bertino. Factually, Bertino was not charged with offenses that occurred at the Capitol; he was absent from the Capitol on January 6, 2021, and was instead charged with a conspiracy to plan violence due to messages sent from outside Washington, D.C. on January 6. Ex. D at 34–35. Bertino's factual basis discussed only a single search warrant in his case, which discovered firearms that could be used to carry out planned violence. Ex. D at 44. Because his conduct was related, he was charged and convicted in a single instrument. Ex. E at 49.

18

In contrast, Martin was convicted not of violent conduct but of trespass and civil violations for being present at or near the Capitol on January 6, 2021. RFJN, Ex. 3. Additionally, there were two search warrants executed at Martin's home—one related to January 6, Ex. B, which gave rise to his D.D.C. charges, and one related to firearms, Ex. 1, which gave rise to his Eastern District charges.

Unlike Bertino, Martin had a clear differentiation between his January 6 conduct and his firearms conduct. Martin was pardoned in a separate subsection of the Executive Order from Bertino's commutation and received different relief, indicating an intent by the President to treat Martin and Bertino separately.

The pardon on its face does not cover Martin's conduct in this case, and context of the pardon supports that conclusion. This Court should find no "fairly debatable" question about whether Martin's firearms conviction is covered by his pardon.

## IV. The record does not support the conclusion that the district court would have found by clear and convincing evidence that Martin was not a danger.

Apart from this Court's resolution of the whether there is a fairly debatable question as to the constitutionality of § 922(g)(9) or

19

the scope of Martin's pardon, Martin still should not be released because he is dangerous. Although the district court did not clearly make a finding as to Martin's danger, the record supports the conclusion that the court would not have found that Martin met his burden to show "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." *See* 18 U.S.C. § 3143(b)(1)(A).

The district court noted the factual circumstances of Martin's dangerousness, noting that he had sent "text with the sister where he's saying, I'm going take you out." Ex. A at 12. The court found that at the time of the offense, Martin had active restraining orders against him. Ex. A at 11. As discussed above, Martin has a violent history and was found to have obstructed justice during the pendency of the case, all factors cited as to his danger to the district court below. Ex. A at 10. Given the record here, this Court should decline to release Martin pending bail as a danger to the community.

## CONCLUSION

The government requests that this Court affirm the district court's denial of Martin's motion for bail pending appeal.

Dated:  February 14, 2025          Respectfully submitted,

                                    MICHELE BECKWITH
                                    Acting United States Attorney

                                    /s/ Robert L. Veneman-Hughes
                                    ROBERT L. VENEMAN-HUGHES
                                    JOSEPH D. BARTON
                                    MICHAEL G. TIERNEY
                                    Assistant United States Attorneys