# EXHIBIT 1

# Exhibit A



AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

## UNITED STATES DISTRICT COURT
for the
Eastern District of California 

**SEALED**

**FILED**
Sep 03, 2021
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

In the Matter of the Search of                          )
*(Briefly describe the property to be searched*          )
*or identify the person by name and address)*            )      Case No.      1:21-SW-00292 EPG
41304 Butte Way, Madera, California 93636               )
                                                        )
                                                        )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the _____Eastern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 922(g)(9) | Possession of firearm by person convicted of misdemeanor crime of domestic violence |

The application is based on these facts:
See attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Connor Ledbetter*
_____
*Applicant's signature*

Conner Ledbetter, FBI Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____Telephone_____ *(specify reliable electronic means).*

Date:      _____09/02/2021_____

*Erica P. Grosjean*
_____
*Judge's signature*

City and state: Fresno, California          Erica P. Grosjean, U.S. Magistrate Judge
_____
*Printed name and title*

MARTIN_00000559

## ATTACHMENT A

*Property to be searched*

The property to be searched is the property, structures, vehicles and curtilage located at 41304 Butte Way, Madera, CA 93636 (the "PREMISES"), further described as a white home with red brick, a gray composite roof, three blue garage doors and blue trim. The property is shown in the photograph below:



MARTIN_00000560

# **ATTACHMENT B**

The items to be seized are fruits, evidence, information, contraband, or instrumentalities, in whatever form and however stored, relating to violations of 18 U.S.C. § 922(g)(9) (possession of firearm by person convicted of misdemeanor crime of domestic violence) including the following:

    a.  Firearms, magazines and ammunition;

    b.  Firearm stock; and

    c.  Evidence of ownership and possession of firearms and ammunition.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF: 41304 BUTTE WAY, MADERA, CALIFORNIA 93636** | **Case No. _____** |

**AFFIDAVIT IN SUPPORT OF APPLICATION**
**FOR WARRANT TO SEARCH AND SEIZE**

I, Connor L. Ledbetter, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises known as 41304 Butte Way, Madera, California 93636 hereinafter "PREMISES," further described in Attachment A, for the things described in Attachment B.

2.      I am a Special Agent of the Federal Bureau of Investigation ("FBI"), assigned to the Sacramento Field Office, Fresno Resident Agency. I am a graduate of the FBI Academy in Quantico, Virginia and have been an FBI Special Agent since March 2020. I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make

arrests for offenses enumerated in Section 2516(1) of Title 18, United States Code.   As a Special Agent of the FBI, I received training and have experience in investigating violations of federal statutes, including firearms violations and international and domestic terrorism.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant.  It does not set forth all of my knowledge, or the knowledge of others, about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that violations of 18 U.S.C. § 922(g)(9) (possession of firearm by person convicted of misdemeanor crime of domestic violence) have been committed by BENJAMIN MARTIN. There is also probable cause to search the PREMISES, further described in Attachment A, for the things described in Attachment B.

## STATEMENT OF PROBABLE CAUSE

5.      On or about August 25, 2021, the Honorable Magistrate Judge Barbara A. McAuliffe signed a search warrant authorizing a search of the PREMISES for violations of 18 U.S.C. § 1512(c)(2) (Obstruction of an

Official Proceeding), 18 U.S.C. § 231(a)(3) (Civil Disorder), 18 U.S.C. § 1752(a)(1) and (2), (Entering and Remaining in a Restricted Building or Grounds, and Disorderly and Disruptive Conduct in a Restricted Building or Grounds) and 40 U.S.C. § 5104(e)(2)(D) and (G) (Disorderly Conduct in a Capitol Building and Demonstrating in a Capitol Building) in connection with the riot that occurred at the U.S. Capitol on January 6, 2021 ( "RESIDENTIAL SEARCH WARRANT"). A copy of the RESIDENTIAL SEACH WARRANT and the supporting application is attached as Exhibit 1 and the facts stated therein are incorporated into this Affidavit as though fully set forth herein.

6.     On September 2, 2021, agents executed the RESIDENTIAL SEACH WARRANT and also arrested MARTIN on a criminal complaint issued by the District Court for the District of Columbia. MARTIN informed the agents that he had a gun safe at the PREMISES and provided the agents with the code.

7.     While executing the RESIDENTIAL SEACH WARRANT, agents located the gun safe. It was in the garage, which also contained an area outfitted as a recording studio. I have viewed podcast-styled videos created by MARTIN that appear to have been recorded in that location.

There were also two vehicles parked in the garage that are believed to belong to MARTIN's girlfriend.

8.     Law enforcement officers attempted to open the gun safe using the code provided by MARTIN but were unsuccessful.   The officers subsequently opened the gun safe with force and found multiple contents including:

    a.  Four rifles;

    b.  Two shotguns, including a Benelli 12-Gauge Shotgun that Bureau of Alcohol, Tobacco, and Firearms ("ATF") Special Agent Eric Penman, who has specialized training in the origin and manufacture of firearms, confirmed was manufactured outside of California;

    c.  An assault rifle;

    d.  A pistol, which was a Kimber 1911 Pistol that Special Agent Penman also confirmed was manufactured outside California;

    e.  MARTIN's passport;

    f.  Passports and other documents for other individuals believed to live at the PREMISES;

    g.  A birth certificate for MARTIN's son;

h. A Certification of Vital Record in MARTIN's name; and

i. A vehicle title in MARTIN's name.

9. Based on the search of the PREMISES and other investigation, it is believed that the following people may live in the PREMISES: MARTIN, MARTIN's girlfriend, MARTIN's two adult children, and one minor child.

10. While searching MARTIN's bedroom, law enforcement officers found a 2013 receipt in MARTIN's name for the purchase of the above-mentioned Benelli 12-Gauge Shotgun.

11. A review of MARTIN's criminal history showed a 2018 domestic violence-related misdemeanor battery conviction in the Superior Court of Fresno County with Case Number F18901304. As a result of that conviction, MARTIN was placed on probation through January 10, 2022, with a condition that he not possess firearms. A further review of MARTIN's criminal history showed that he is also subject to a temporary restraining order that prohibits him from possessing firearms.

12. Based on the foregoing, there is probable cause to believe that MARTIN is prohibited from possessing firearms pursuant to 18 U.S.C. § 922(g)(9) as well as state law. There is also probable cause to believe that

MARTIN has possessed multiple firearms and ammunition in violation of federal and state law.

## **CONCLUSION**

13.    I submit that this Affidavit supports probable cause for a warrant to search the PREMISES described in Attachment A and to seize the items described in Attachment B.

Respectfully submitted,

*Connor Ledbetter*

Connor Ledbetter, FBI Special Agent

Approved as to form by:

/s/ Joseph Barton

Joseph Barton, Assistant United States Attorney

Affidavit submitted by email/pdf and attested to me as true and accurate by telephone consistent with Fed. R. Crim P. 4.1 and 41(d)(3) before me this Second day of September 2021:

Erica P. Grosjean

Honorable Erica P. Grosjean
United States Magistrate Judge

# EXHIBIT 1

MARTIN_00000568

AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

Case 1:21-sw-00285-JLT-BAM    Document 76-1    Filed 09/15/23    Page 12 of 15

# UNITED STATES DISTRICT COURT

for the
Eastern District of California

FILED

Aug 25, 2021

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

**SEALED**

|   |   |   |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.  1:21-sw-00285-BAM |
| Residence located at 41304 Butte Way, Madera, California 93636 | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, attached hereto and incorporated herein by reference

located in the _____ Eastern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, attached hereto and incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 1512(c)(2), 231(a)(3), and 1752(a)(1) and (2); and 40 USC 5104 (e)(2)(D) and (G) | Obstruction of Official Proceeding, Civil Disorder, and Entering and Remaining in Restricted Building and Grounds and Disorderly Conduct Therein; and Disorderly Conduct in a Capitol Building and Demonstrating Therein |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Connor Ledbetter*
*Applicant's signature*

Connor Ledbetter, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ Telephone _____ *(specify reliable electronic means)*.

Date: _____ 8/25/21 _____

*B. McAuliffe*
*Judge's signature*

City and state:  Fresno, California

Barbara A. McAuliffe, United States Magistrate Judge
*Printed name and title*

MARTIN_00000569

## ATTACHMENT A

*Property to be searched*

The property to be searched is the property, structures, vehicles and curtilage located at 41304 Butte Way, Madera, CA 93636 (the "PREMISES"), further described as a white home with red brick, a gray composite roof, three blue garage doors and blue trim. The property is shown in the photograph below:



MARTIN_00000570

**ATTACHMENT B**

1

2        The items to be seized are fruits, evidence, information, contraband, or instrumentalities,

3  in whatever form and however stored, relating to violations of violations of 18 U.S.C. § 1512(c)(2)

4  (Obstruction of an Official Proceeding), 18 U.S.C. § 231(a)(3) (Civil Disorder), 18 U.S.C. § 1752(a)(1)

5  and (2), (Entering and Remaining in a Restricted Building or Grounds, and Disorderly and Disruptive

6  Conduct in a Restricted Building or Grounds) and 40 U.S.C. § 5104(e)(2)(D) and (G) (Disorderly

7  Conduct in a Capitol Building and Demonstrating in a Capitol Building) (collectively, the "Target

8  Offenses") that have been committed by Benjamin Martin (the "Subject") and other identified and

9  unidentified persons, as described in the search warrant affidavit. Law enforcement personnel will

10  search for and seize the items in Part I. If the item in Part I is a Digital Device-Cellular Telephone, law

11  enforcement will seize it to conduct searches for the information and data described in Part II:

12      **PART I – OBJECTS TO BE SEIZED AND SEARCHED**

13    a. Records, objects, and information related to the Subject's presence at the January 6, 2021 riot at

14       the U.S. Capitol;

15    b. Records, objects, and information related to planning to unlawfully enter the U.S. Capitol,

16       including any maps or diagrams of the building or its internal offices;

17    c. Records, objects, and information related to the Subject's (and others') motive and intent for

18       traveling to the U.S. Capitol or nor about January 6, 2021;

19    d. Records, objects, and information concerning the Subject's (and others') activities in and around

20       Washington, D.C. on or about January 6, 2021;

21    e. Records, objects, and information that the Subject obtained from the U.S. Capitol;

22    f. Records, objects, and information related to the Subject's (and others') plans to disrupt an

23       official proceeding at the U.S. Capitol;

24    g. Records, objects, and information concerning the identity of persons who either (i) collaborated,

25       conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under

26       investigation; or (ii) communicated with the unlawful actors about matters relating to the

27       criminal activity under investigation, including records that help reveal their whereabouts.

28

h.  Records, objects, and information, including receipts, itineraries, and other location-specific information, related to the Subject's (and others') travel to or from Washington, D.C. from December of 2020 through January of 2021;

i.  All communications, including online postings, related to the Subject's (and others') planned travel to or from, or presence in, Washington, D.C. from December of 2020 through January of 2021;

j.  Photographs, videos, and audio recordings related to the Subject's planned travel to or from, or presence in, Washington, D.C. from December of 2020 through January of 2021;

k.  For the period December 2020 through January 2021, records, objects, and information related to email accounts, social media accounts, telephone numbers, and other communication-related identities used by the Target and any co-conspirator;

l.  Clothing and accessories worn by the Subject as depicted in videos and photos of the Subject in and around the U.S. Capitol, including a dark colored puffer jacket, dark colored pants and red hat;

m.  Clothing and other articles that reflect evidence of having participated in the unlawful activity at the U.S. Capitol, including evidence of pepper spray or other non-lethal crowd control remnants;

n.  Mobile cellular telephones and digital devices owned, used, or controlled by the Subject, or that the Subject had with him during his travel to or from, or presence in, Washington, D.C. between December 2020 and January 2021 (the "Device[s]");

o.  Records related to who owned, used, and/or accessed the above-described Devices;

p.  Records related to passwords, encryption keys, and other access devices that may be necessary to access the Devices, and

q.  Peripheral devices required for the operation of the above-described Devices, including but not limited to removable data-storage devices, power cords, and connection cables.

///

///

///

# EXHIBIT 2

Pages 1-56

1                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF CALIFORNIA
2                            (FRESNO)

3

4    UNITED STATES OF AMERICA,    )  Case No.  21-cr-00228-JLT-BAM
                                  )
5              Plaintiff,         )  Fresno, California
                                  )  Courtroom 4, 7th Floor
6       v.                        )  Monday, November 25, 2024
                                  )
7    BENJAMIN JOHN MARTIN,        )
                                  )
8              Defendant.         )
                                  )
9    _____)

10

                    TRANSCRIPT OF SENTENCING HEARING
11          BEFORE THE HONORABLE JENNIFER L. THURSTON
                  UNITED STATES DISTRICT COURT JUDGE
12

13   APPEARANCES:

14   For Plaintiff:                JOSEPH BARTON, ESQ.
                                   United States Attorney's Office
15                                 2500 Tulare Street, Suite 4401
                                   Fresno, California 93721
16                                 (559) 497-4000

17   For Defendant:               HOOTAN BAIGMOHAMMADI, ESQ.
                                   DOUGLAS J. BEEVERS, ESQ.
18                                 Office of the Federal Defender
                                   801 I Street, 3rd Floor
19                                 Sacramento, California 95814
                                   (916) 498-5700
20
     For U.S. Probation:          OFFICER ROSS MICHELI
21
     Transcription Service:       Peggy Schuerger
22                                 Ad Hoc Reporting
                                   2220 Otay Lakes Road, Suite 502-85
23                                 Chula Vista, California 91915
                                   (619) 236-9325

24

25   Proceedings recorded by electronic sound recording; transcript
     produced by transcription service.

2

1    FRESNO, CALIFORNIA  MONDAY, NOVEMBER 25, 2024  9:04 A.M.

2                              --oOo--

3         THE CRD:  The Court calls Number 1 on calendar, United

4    States v. Benjamin John Martin, Case Number 1:21-cr-228, scheduled

5    for sentencing.

6         THE COURT:  Good morning.  May I have your appearances,

7    please.

8         MR. BARTON:  Good morning, Your Honor.  Joe Barton for

9    the Government.

10        MR. BAIGMOHAMMADI:  Your Honor, do we go to the podium?

11   I'm not sure how you do things here.

12        THE COURT:  It's wherever you prefer.  It's fine to be

13   there or podium is fine, too.

14        MR. BAIGMOHAMMADI:  Hootan Baigmohammadi and Douglas --

15   Douglas Beevers on behalf of Benjamin Martin who's present, out of

16   custody, to my right.

17        THE  COURT:   All  right.   We're  on  calendar  for

18   sentencing.   In connection with the sentencing, I received the

19   pre-sentence report by Mr. Micheli, who's also present this

20   morning.  That was dated November 4th of 2024.  I received the

21   Defense objections filed on November 12th of 2024 as well as the

22   Defense memorandum with the attachments on November 20th of 2024,

23   and the Government's memorandum filed on November 20th of 2024.

24        Is  there  anything  else  I  should  have  received  in

25   connection with the sentencing?

3

1          MR. BARTON:  No for the Government, Your Honor.

2          THE COURT:  All right.  I have also then just been

3    handed an exhibit binder showing five photos.  All right.

4    Anything else then for the Defense?

5          MR. BAIGMOHAMMADI:  No, Your Honor.  And just for

6    clarification, the Defense Exhibit A in the binder is a blown-up

7    picture of what's in the Government's memo.  If I may be allowed

8    to file those five photos on ECF after court today?

9          THE COURT:  Sure.

10          MR. BAIGMOHAMMADI:  Thank you.

11          THE COURT:  All right.  All right.  Because I'm not sure

12    -- is it Mr. Baigmohammadi?  I can't speak this morning.

13          MR. BAIGMOHAMMADI:  It's okay, Your Honor -- Mr. Baig-

14    -- Mr. Baigmohammadi.

15          THE COURT:  I'm making you do it, too.

16          MR. BAIGMOHAMMADI:  I apologize.  I usually write it out

17    phonetically for the judges.

18          THE COURT:  Actually, I have it, but my lips aren't

19    working.  Baigmohammadi -- Mr. Baigmohammadi, are you going to be

20    speaking for Mr. Martin here this morning?

21          MR. BAIGMOHAMMADI:  Yes, Your Honor.

22          THE COURT:  Okay.  Did you receive and read the pre-

23    sentence report and have enough time to discuss it with Mr.

24    Martin?

25          MR. BAIGMOHAMMADI:  Yes, Your Honor.

4

1          THE COURT:  Mr. Martin, do you feel like you've had
2    enough time to discuss the matter with your attorneys?
3          MR. MARTIN:  Yes.
4          THE COURT:  And when I say "the matter," I'm
5    specifically talking about the pre-sentence report.
6          MR. MARTIN:  Yes.
7          THE COURT:  All right.  Let's start with the objections.
8    The first objection, as I understand it, is being made simply for
9    the record.  It raises a objection that has been rejected by the
10   Ninth Circuit in *Trumbull*.  Is there anything else on this topic?
11         MR. BAIGMOHAMMADI:  Submitted on that issue, Your Honor.
12         THE COURT:  All right.  That objection is overruled.  As
13   to the second objection related to the four-level enhancement,
14   I've read through this objection as well as the Government's
15   response.  What strikes me is the point made by the Government and
16   that was, first, Mr. Martin doesn't have to own the guns and
17   obviously we agree on that.  And then the question is whether or
18   not he had control over them.  Then there's the issue -- Mr.
19   Gramespacher indicates in his declaration that he provided them to
20   his daughter who placed them in the safe.  And at the time, they
21   were in cases.  But at the time the agents opened the safe, there
22   was the weapon out -- that was not in a case and then there was
23   Mr. Martin's fingerprint on it.
24         So let me hear additional comments if you have any, Mr.
25   Baigmohammadi.

5

1     MR. BAIGMOHAMMADI: Yes, Your Honor. So just at the

2 start, there's eight guns in this case. So if we knock out just

3 one of the guns, that would take it to the three to seven range in

4 terms of guns, and that would be a plus-two so not a plus-four.

5 So if we just show that he did not possess just one of the guns,

6 then, you know, it's a plus-two.

7     If you look at Defense Exhibit A, which is a blown-up

8 photo, you see not only two guns that are out, but there are three

9 cases underneath those guns. Those are firearms cases. Mr.

10 Gramespacher is here today and, if the Court wants to hear from

11 him, he will testify that those are the firearms cases. And if

12 you look at the other exhibits, B through E, you can see the

13 agents opened up those cases and took out the guns.

14     And so although there's a shotgun that's out of the

15 case, there are three guns at least that were in cases. And the

16 declaration of Mr. Gramespacher, which the Government doesn't take

17 issue with, says that he put those guns in the safe in the cases.

18 And so if you combine that with the evidence here in the photos,

19 at least three of those guns were undisturbed, meaning nobody

20 touched them. There's not an issue with whether or not Mr. Martin

21 or anyone else removed them from the safe. And so those three

22 guns, if you subtract them from the -- the argument being is that,

23 you know, Mr. Martin did not intend to control any of Mr.

24 Gramespacher's guns. But even if we accept the Government's

25 assertion that, yes, indeed one of the guns was removed, the

6

1   shotgun, and, you know, let's just probably even accept that it

2   was Mr. Martin, we take the position that just the photo of one of

3   the guns being out of the safe doesn't establish that Mr. Martin

4   was the one who did that.

5          Also, there's no time stamp on the photo. We don't know

6   if this photo was taken immediately after the safe was opened.

7   The Government asserts it, but there's not any evidence to

8   establish that. It's just the photo and it doesn't tell us when

9   the photo was taken and it doesn't tell us who was the one who

10   removed that shotgun, if at all, from a case.

11          But putting aside that, I mean, just accepting for

12   argument's sake for right now that worst-case scenario Mr. Martin

13   was the one who did it; there's still three other guns that are in

14   cases undisturbed and we have a declaration of Mr. Gramespacher

15   that says, "I put these -- my guns in their cases in this safe."

16   And so when it comes to possession, you know, the Government has

17   the burden to prove that Mr. Martin not only knew about the

18   presence of the guns; he had to have power to control the guns but

19   also intent to control. And what we see here is that those three

20   guns are completely undisturbed from the condition in which Mr.

21   Gramespacher left them in the safe.

22          And so if we -- the evidence affirmatively shows that --

23   there is no evidence that he intended to control those guns. He

24   never touched them. They weren't -- they weren't disturbed. And

25   so if we subtract even one of the guns -- and I submit there's

7

1  three guns here that we can affirmatively say were not

2  disturbed -- that would take us from eight guns possessed to only

3  five. And when it's three to seven guns, it's just a plus-two and

4  not a plus-four.

5        THE COURT: Mr. Barton, your comments?

6        MR. BARTON: Yes, Your Honor. The Government believes

7  Mr. Martin well knew of all the firearms in the safe. The

8  Government has highlights in its sentencing memorandum that point

9  out that when Mr. Martin was arrested and the search warrant was

10  executed, before the safe was opened, I believe he told the

11  agents, "My father-in-law's firearms are in the safe."

12        Then if you believe Mr. Gramespacher -- if I'm

13  pronouncing the name right -- which the Government takes issue

14  with his credibility here, he's saying that Mr. Martin's fiancee

15  opened the safe for him and let him put the guns in there. Ms.

16  Martin -- Mr. Martin's fiancee was on a jail call after Mr.

17  Martin's arrest saying that she didn't know there were any guns in

18  the safe.

19        So we've got the exact opposite of what Mr. Martin is

20  alleging here. He told law enforcement that the father-in-law's

21  guns were in the safe, and his fiancee had no idea that the guns

22  were in the safe, in their own words. And that's what they said.

23  Now we're -- Mr. Gramespacher's asking us to believe the opposite.

24        The Government also has issue with the fact that Mr.

25  Gramespacher in his declaration says that at no time -- I believe

8

1  he says flat out, "At no time did Mr. Martin possess my weapons."

2  He doesn't know that, and he doesn't have a hard time from for

3  when he put the guns in there.  And the Government would submit it

4  goes further to his credibility that someone that had just put

5  guns in a safe and can't recall the exact month and year and then

6  just leave them there for some indefinite period of time and they

7  don't remember about them until the FBI finds them, that is

8  lacking credibility.

9          And then, last, his relationship to Mr. Martin and his

10 fiancee, he has every incentive to reduce the sentence that Mr.

11 Martin faces.

12         And then one more point, Your Honor.  If Mr. Martin is

13 now contending that the firearms were taken out of the carrying

14 cases -- so before, Mr. Gramespacher said he put them in there in

15 those carrying cases and never touched them, but now we're in the

16 factual scenario that at least one or two of the guns were out of

17 the carrying cases and someone did it and it wasn't Mr. Martin's

18 fiancee because she didn't know of the guns in there, it just

19 lacks all credibility for the Government to say that Mr. Martin

20 didn't know there were eight firearms in that safe.

21         THE COURT:  All right.

22         MR. BAIGMOHAMMADI:  May I respond briefly?

23         THE COURT:  Please.  Go ahead.

24         MR. BAIGMOHAMMADI:  Thank you.  The Government mentions

25 that Ms. Gray said that she did not know there were guns in the

9

1    safe on a jail call.  However, as I mentioned in a footnote in my

2    sentencing memo -- or it's either -- either the memo or the

3    objections, Ms. Gray is responding to a compound statement by Mr.

4    Martin where, as laid out in the PSR, the statement was, "Why did

5    they take the guns?  They weren't illegal."  And she said, "I

6    didn't know there were any," and that's it.  That could be a

7    response "I didn't know there were any guns" or it could be a

8    response "I didn't know there were any illegal guns."  It's not

9    clear from the statements what she's responding to.  And so I

10   think it's factually incorrect for the Government to say that Ms.

11   Gray said she didn't know about the firearms.

12           And in fact, the firearms -- I mean, there are things

13   said on those jail calls that are in fact true.  Mr. Gramespacher

14   did own five of those guns.  And so -- and to the extent the

15   Government takes issue with Mr. Gramespacher's credibility, I

16   mean, we would request -- to the affect that -- to the extent that

17   it would affect the Court's decision, he's here today.  We're

18   ready to have him testify if that's what's necessary.

19           THE COURT:  I don't question his credibility and I don't

20   think it's inconsistent with what the girlfriend said.  But I also

21   think that the declaration went farther than he's able to speak,

22   and I think Mr. Barton's right about that.  He can't say that Mr.

23   Martin didn't possess them.  That's a legal question.  That's not

24   within his personal knowledge.  But beyond that, I don't doubt his

25   credibility.  I don't think it's necessary.  But if you want to

10

1   put him up, I don't -- I'm fine with that.

2           MR. BAIGMOHAMMADI:  No, Your Honor.  Only if the Court

3   thinks it's necessary.  But the -- the greater point here is that

4   I acknowledge that Mr. Gramespacher is not with Mr. Martin every

5   moment of the day and he can't testify -- he doesn't have personal

6   knowledge of whether he touched the guns without Mr. Mar- --

7   without Mr. Gramespacher knowing.  But I think common sense here

8   is important and, you know, if my father-in-law brings his items

9   to my house and he does not give me permission to touch them,

10  you're asking me in the dog house (ph) if you go in and touch your

11  father-in-law's things without him knowing.  I think that's

12  important to keep -- take into account here.

13          Also, the types of firearms that are in -- were in those

14  cases were hunting rifles.  They're not like the other firearms.

15  These are not guns that you would use to -- every day in your

16  house to protect your home.  They're not like the pistol that Mr.

17  Martin's taken responsibility for.  They're not like the assault

18  rifle that Mr. Martin's taken responsibility for.  They're not

19  like the shotgun that Mr. Martin's taken responsibility for.

20  Hunting rifles, one shot and that's it.  They're specific to

21  hunting.  I mean, why would he go in there and touch those?  It

22  doesn't make a lot of sense.  They're not like the other guns.

23          THE COURT:  I'm not understanding your point here.  Is

24  your point -- because I think what you're saying is there has to

25  be evidence that he took them out of the case.  There has to be

11

1   evidence that he took them outside, dry-fired them, shot them,

2   that he sat at home and thought about, Well, I'd like to use those

3   guns.  I don't have to make those types of findings, right?  And

4   the question of whether he removed them from the cases is not

5   really determinative.

6          As I understand the situation, Mr. -- I mean, his

7   girlfriend's father brings them over for storage -- I don't have

8   any doubt.  Stores them in Mr. Martin's safe.  I don't have any

9   doubt about that.  There's other items in the safe that clearly

10  belonged to Mr. Martin.  I don't have any doubt about that.  But

11  what I'm wondering is what difference does it make the nature of

12  these weapons?  They don't belong to Mr. Martin, without dispute,

13  so I'm not sure what difference that makes.

14         MR. BAIGMOHAMMADI:  I think they go towards the intent

15  to control and whether Mr. Martin would have intentionally

16  controlled items that, one, he's not present for when they're put

17  into the safe.  He's not been given permission by Mr. Gramespacher

18  to touch the guns, to begin with.  And so it would require us to

19  believe that he would go against his father -- for all intents and

20  purposes, his father-in-law's wishes --

21         THE COURT:  Well, he doesn't know his wishes; right?

22  There's no evidence he knows wishes at all.  He knows there's

23  these guns -- or at least from the evidence is that the guns had

24  been placed in his safe by his girlfriend.

25         MR. BAIGMOHAMMADI:  Well, I think he hasn't been given

12

1  affirmative permission to control the guns, right?  The guns were

2  given -- if you -- accepting what Mr. Gramespacher said in his

3  declaration, he gave over possession to his daughter and not to

4  Mr. Martin.

5        THE COURT:  Well, I don't know because, again, that's a

6  legal question.  He places them in a safe that belongs to somebody

7  else, not his daughter.  I don't know what his intention was.

8  Maybe that was his intention, but there's a legal effect that he

9  can't speak to, right?

10        MR. BAIGMOHAMMADI:  Well, he -- he explicitly says in

11  his declaration that he did not intend to give possession to Mr.

12  Martin.

13        THE COURT:  Well, maybe he doesn't, but there's a legal

14  effect that he can't speak to is what I'm saying.  Because -- you

15  know, it's no different -- he comes and puts them in my car and

16  I'm going to drive him around, he doesn't get to say I don't have

17  control of them because he put them in my car.  He puts them in

18  Mr. Martin's safe.  Mr. Martin has items in there.  Mr. Martin has

19  entitlement to enter that safe, take things out, move them around,

20  put stuff in, take stuff out.  The fact that, you know, Mr. -- is

21  it Gam- -- Gamespacher?

22        MR. BAIGMOHAMMADI:  Gramespacher.

23        THE COURT:  -- Gramespacher doesn't intend that, that's

24  interesting.  It's not determinative, at least in my view.

25        MR. BAIGMOHAMMADI:  And then -- I understand that.  I

13

1    think that all of the evidence in its totality -- his declaration,

2    plus the guns being untouched, plus, you know -- those things

3    combined I think are strong evidence that --

4             THE COURT:  How do we know they're untouched?  We know

5    they're not removed from the case at the time that the agents --

6    but how do we know they've been untouched?  I mean, they could

7    have been taken out 20 times in their cases and put back in

8    without ever having been removed from their cases.  We just don't

9    know that; right?

10            MR. BAIGMOHAMMADI:  Well, and the burden's on the

11   Government here to establish --

12            THE COURT:  Right, but --

13            MR. BAIGMOHAMMADI:  -- by a preponderance of --

14            THE COURT:  -- what I'm saying is there's no evidence of

15   what you're saying that they've been untouched.  We just know that

16   at the time that the safe was opened, this was the condition that

17   we -- we find them in.  Right?

18            MR. BAIGMOHAMMADI:  I think the evidence is the photo

19   that's -- you know, it doesn't -- it doesn't show -- we don't have

20   video footage, for example, of every moment that these guns were

21   in the safe.

22            THE COURT:  Right.

23            MR. BAIGMOHAMMADI:  But if the -- we're willing to

24   accept the Government's assertion that this -- these photos,

25   especially Defense Exhibit A, is the condition in which the guns

14

1  were found by the agents, then, you know, we have here that the

2  guns are exactly where Mr. Gramespacher said they were when he

3  inserted them into the safe.

4          THE COURT:  Which photo are you relying upon for that?

5          MR. BAIGMOHAMMADI:  Defense Exhibit A is the three

6  cases.  They're unopened.

7          THE COURT:  But when you say "exactly where they were,"

8  you mean inside the cases, but not in position in the safe; right?

9  I mean, unless I'm --

10         MR. BAIGMOHAMMADI:  Inside their cases, yes, --

11         THE COURT:  Okay.  I misunderstood what you're saying.

12         MR. BAIGMOHAMMADI:  -- Your Honor.

13         THE COURT:  All right.  Anything else then?

14         MR. BAIGMOHAMMADI:  No, Your Honor.

15         THE COURT:  All right.  In considering this, as I said,

16 Mr. Martin -- this is Mr. Martin's safe.  While I accept that he

17 wasn't present, he didn't put these guns into the safe, he clearly

18 knew that they were there because of the statements in jail calls.

19 He clearly -- at least the evidence is sufficient to support that

20 he did remove the Mossberg 12 gauge shotgun from the case.  His

21 fingerprints are on it.  I accept fingerprints could have come at

22 some different time.  But based upon a preponderance of the

23 evidence, it does suggest to me that he did exercise control over

24 those.

25         The fact that these firearms belonged to his

15

1    girlfriend's father, again, it's not determinative of this
2    question.  If it were, then every person who comes in here with a
3    stolen weapon would be able to say, "I didn't control it because
4    I don't own it," so we know that that's not the law.

5            In this situation, though, the fact that the three
6    weapons were not removed from their case does not demonstrate to
7    me that he did not have control over them.  He had access to the
8    safe.  He clearly at least as to the one went into the safe and,
9    based upon the evidence, he took it from its case.  That doesn't
10   suggest to me a person who is concerned about not touching other
11   people's properties, despite having any express or implied
12   permission to do so.

13           I think by the preponderance of the evidence he did have
14   control over those weapons.  He did have an intent to possess them
15   and did in fact possess them.  The objection is overruled.

16           As to the obstruction of justice, we've talked a little
17   bit about that.  I appreciate that there is some ambiguity as to
18   what the girlfriend was referring to, but clearly she did know
19   there were guns in the safe, but the -- at least what it appears
20   to me, based upon the context of the conversation, is Mr. Martin
21   trying to tell his girlfriend that these guns are going to be a
22   problem for him and that, in essence, they need to make it appear
23   as though they didn't belong to him.  That's at least how it
24   appears to me at first blush, but let me hear your comments, Mr.
25   Baigmohammadi.

16

1          MR. BAIGMOHAMMADI:  Mr. Martin is asking to speak to me

2     for a second.  Can I have a moment, please, with him?

3          THE COURT:  Sure.  Go ahead.

4          MR. BAIGMOHAMMADI:  Thank you.

5        (Pause.)

6          MR. BAIGMOHAMMADI:  Thank you, Your Honor.  One moment.

7     Let me switch to my -- so we do object to the obstruction of

8     justice enhancement.  You know, what is clear from what's

9     summarized in the pre-sentence report is that Mr. Martin did not

10    tell Ms. Gray to talk to the police.  She did not -- he did not

11    tell her to testify in a certain manner.  And this does -- these

12    omissions distinguish this case from cases of *Phillips* and

13    *Collins*.

14         You know, the Government's assertion that Mr. Martin

15    attempted to have Ms. Gray do these things is speculative.  On the

16    jail calls, Mr. Martin actually tells Ms. Gray, "Tell my lawyer

17    about these things."  And, you know, I am not the investigative

18    body in the case.  I'm -- you know, I'm not the Court.  And this

19    enhancement is tied to obstructing investigation, prosecution, or

20    sentencing of a case.  And so for him to -- so we don't have to

21    guess as to who Mr. Martin wanted Ms. Gray to tell these things

22    to.  He actually explicitly tells her, "Tell my lawyer."

23         And it's actually true that at least some of the things

24    that Mr. Martin said to Ms. Gray are in fact true.  Five of those

25    guns did belong to his father-in-law, and that's not contested.

17

1          You know, here the evidence in its totality shows that

2     it's just as likely that Mr. Martin was essentially on a jail call

3     immediately after he's been arrested and he's made panic

4     ramblings, saying some things that are true, some things that may

5     not be true.  But, you know, it's our contention that he's -- he's

6     saying these things with no intention for their conversation to go

7     any farther than the defense team, and that is supported by what

8     he's actually said in the calls and what he's not said in the

9     calls.  It's just as likely that that's his intention as it is

10    likely he is attempting to unlawfully influence Ms. Gray.  And

11    when the standard is preponderance of the evidence, it makes you

12    more likely than not.  That's what the Government has to

13    establish.  And just these calls themselves don't establish that.

14    So it's our position that the plus-two enhancement is not

15    appropriate.

16          THE COURT:  Mr. Barton, your comments.

17          MR. BARTON:  Thank you, Your Honor.  I don't think

18    there's any ambiguity in the calls.  Mr. Martin is clearly asking

19    his fiancee to lie and to take responsibility for the guns.  As to

20    the comment that it was panicked rambling, it wasn't.  Mr. Barton

21    had been -- or Mr. -- Mr. Martin had been in custody for a little

22    bit and he had talked to his lawyer and Ms. Gray had talked to a

23    lawyer, and on the call it's indicated that they know these guns

24    could be a serious problem for Mr. Martin and for the exposure

25    he's facing.  And after discussing that exposure is when he asks

18

1  Ms. Gray to lie for him and say that the guns belonged to her and

2  her father and that he didn't know about them.

3        In the Government's view, you can't ask a witness to

4  lie.  That's what he did and she agreed to do it.

5        And the idea that it was to just her -- to Mr. Martin's

6  attorney at the time, that to the Government doesn't make sense.

7  There's no point to having a witness lie to your attorney if you

8  don't intend for that lie to be communicated to the Government

9  and/or the Court.

10        THE COURT:  The -- is that -- as I understand the PSR,

11  the comment about "Tell the lawyer" or "Talk to the lawyer,"

12  that's the September 4th conversation; is that right? -- paragraph

13  14?

14        MR. BARTON:  I believe that's correct, Your Honor.

15        THE COURT:  So before that, there's conversations on

16  September 2nd and September 3rd.  Is that your understanding as

17  well, Mr. Barton?

18        MR. BARTON:  Yes, Your Honor.

19        THE COURT:  Mr. Baigmohammadi, is that your

20  understanding as well?

21        MR. BAIGMOHAMMADI:  Yes.

22        THE COURT:  All right.  Anything else, Mr. Barton?

23        MR. BARTON:  No, Your Honor.

24        THE COURT:  Mr. Baigmohammadi, any other comments?

25        MR. BAIGMOHAMMADI:  Yeah.  In response to Mr. Barton is

19

1  -- that he said that Ms. Gray agreed to lie, I don't think that's

2  in the calls.  I don't know where that is that he gets that from.

3       THE COURT:  All right.  In looking at these calls, the

4  September 2nd call, this is where Mr. Martin in essence

5  demonstrates the ownership of the safe.  He calls it, you know,

6  his "big one" that's knocked over by the FBI.

7       There's a conversation on September 2nd between Mr.

8  Martin and an unidentified male in which the male tells Mr. Martin

9  that the FBI took the firearms and Mr. Martin says "Why" because

10  he doesn't think any of them are illegal.  And then the girlfriend

11  says -- this is when she says she didn't know that there were any.

12  I think based upon the statements later on, I think that's why we

13  agree she did know there were guns there.  She wasn't trying to

14  say she doesn't know there were guns there.

15       Then we get to the September 3rd call.  This is what's

16  troubling to me because this is when Mr. Martin says, you know,

17  "What's in that safe is going to be a problem for me, probably get

18  me locked up unless there's a way I can prove that they're not

19  mine, like they're your -- they're like yours and your dad's;

20  right?  I think those -- I think those were the ones" -- and she

21  says, "They're my dad's hunting rifles," right?  And he says,

22  "Right.  That's where they were.  Right?"  She says, "Yes."  Then

23  he says, "And I don't even have a code to the safe.  That was your

24  safe.  I don't know anything about that, so I don't know."  And

25  then he says, "It's not good."

20

1      We know it's his safe. He's already said it's his safe.

2  And him saying, "I don't have the code to the safe" harkens back

3  to he gives a code to the FBI that doesn't work. And then -- but

4  what he's saying is he understands if there are guns in that safe

5  that belong to him, he's going to have trouble. And he's saying,

6  "But if I can prove they belong to you and your dad, you know,

7  it's a different situation." And she says, "Yeah, they're my

8  dad's guns," when we know some of them are, but they weren't all.

9      Then we get to September 4th where he reiterates that,

10  "I don't have a combination to that safe. That's your dad's

11  things. That's your things. I don't have a combination."

12      And so when I -- when I look at these conversations,

13  he's already told the FBI that the guns belong to his -- his

14  father-in-law. This isn't a situation which he needs his

15  girlfriend to speak to his lawyer to say, "These don't belong to

16  me. They belong to somebody else." He's already said this right

17  off the bat. It's in the law enforcement reports. So what is

18  striking to me is these conversations don't have the flavor of,

19  you know, "Just make sure my lawyer knows this" because clearly

20  he's got conversations with his lawyers. He can do that. But the

21  way that these things are worded where -- he's not saying, "They

22  don't belong to me." He's saying, "Well, if they didn't belong to

23  me, then I would be -- I would be in good shape here."

24      If the level of proof here were something like beyond a

25  reasonable doubt, I would have some doubt, I suppose, but anything

21

1  less than that, I don't have a lot of doubt here. I think there
2  is sufficient evidence that Mr. Martin was intending here to get
3  his girlfriend to agree to a factual situation that would assist
4  him in getting out of what he sees as big trouble. I think the
5  language here is pretty clear that he intends that she take this
6  factual description that he's giving her and to repeat that as
7  necessary, that they don't belong to him, that the safe doesn't
8  belong to him, and that the guns belong to her and her father.

9         Based upon that, the objection is overruled. I think
10 the enhancement is appropriate.

11        Looking at -- the objection really goes to the guideline
12 calculation. I don't really accept -- I don't see that as an
13 objection. I think this is just simply a summary of the previous
14 arguments and I find the request for the evidentiary hearing I
15 don't think is required. Based upon my finding, I don't think Mr.
16 -- I find Mr. Gramespacher's declaration to be perfectly credible.
17 I accept what he says as -- as true to the extent that he has
18 personal knowledge.

19        Given those rulings, I otherwise adopt the findings of
20 the pre-sentence report and the guideline calculations. I do
21 determine them to be true and correct. I find the applicable
22 offense level is 24. Mr. Martin's criminal history places him in
23 a criminal history category II. The Advisory Sentencing
24 Guidelines call for a term of imprisonment between 57 and 71
25 months. And the charge to which he pled guilty carries with it a

22

1    term of imprisonment between zero and ten years.  The Sentencing

2    Guidelines are only making the point of the sentencing process and

3    the Court is to impose a sentence that is fair and reasonable as

4    required by *Booker* and *Fanfan*.  I will give due weight to the

5    statutory factors set forth at 18 U.S.C. Section 3553(a).

6            As it stands, Probation's recommending a sentence of 57

7    months.  The Government is recommending a sentence of 66 months.

8    Mr. Martin is seeking a sentence of 18 months.

9            Mr. Micheli, let me start with you.  Do you have any

10   comments at this time?

11           OFFICER MICHELI:  Good morning, Your Honor.  I don't

12   have any additional comments other than what's already been

13   submitted.

14           THE COURT:  All right.  Thank you.  Mr. Barton, your

15   comments?

16           MR. BARTON:  Yes, Your Honor.  As summarized in the

17   Government's sentencing memorandum, Mr. Martin, whatever circles

18   he may have had in his childhood, he seemingly overcame them.  He

19   had a good upbringing.  He had a college degree.  He had a family

20   who cared for him and he had a good job.

21           And notwithstanding that, he's a violent person and he

22   -- he has a child abuse conviction, he has a domestic violence

23   conviction which prohibited him from having guns here, and that

24   violence continued.

25           He invaded the Capitol on January 6, 2021.  He even

23

1  scared his sister enough to get a restraining order.  And he also

2  got a restraining order in -- from a local supermarket.

3       In the -- reading from the PSR in Mr. Martin's

4  sentencing memorandum, you know, I get the feeling from reading

5  that that, you know, if Mr. Martin wasn't a bully when he was

6  growing up, he became a bully.  That's what he became.  He became

7  a bully.  He used force and fear to get people to do what he

8  wanted them to believe that he wanted.  And because of that, he

9  lost his right to possess firearms.

10      But nonetheless, even though he told courts when he had

11 restraining orders put against him or pled guilty to the domestic

12 violence that he didn't have them, he did.  He did have firearms.

13 And most tellingly to the Government, he had an AR-15 assault

14 rifle with a high-capacity magazine.  Each one of those magazines

15 was loaded when found, and that makes for about I believe it's 120

16 rounds of ammunition to 150.  That is a lot of ammo for an AR-15

17 if the Court's familiar with that weapon and what it's -- what it

18 could be used for.  And for Mr. Martin, that was a weapon he can't

19 have because data, statistics have shown that people that commit

20 domestic violence like Mr. Martin had, they have a higher tendency

21 to use that weapon the next time they get angry.  And if they do,

22 they can seriously hurt or kill someone, and that's why.  And Mr.

23 Martin didn't care about that.  He didn't care.  He wanted his

24 guns and he kept them.

25      And for that, the Government thinks he should be

24

1  punished harshly here.  But more, Mr. Martin then had two pending
2  federal cases.  And in both federal cases, he has been found to
3  have obstructed justice --one here by asking a witness to lie and
4  another one where he took the stand and perjured himself in D.C.
5  And in my experience, I haven't seen that.  I haven't seen a
6  defendant with two pending federal cases, a violent defendant
7  who's found with guns and lie and obstruct justice in two federal
8  cases.

9          And for all that, the Government would recommend a mid-
10  guideline sentence of 66 months to send the message that you can't
11  do this.  You can't bully people.  You can't scare 'em.  You can't
12  obstruct justice.

13          THE COURT:    Mr. Barton, you mentioned a local
14  supermarket situation in your memo on page 2.  And I didn't see
15  any evidence of this.  I don't know what this is.  I don't know
16  what you're talking about here.

17          MR. BARTON:  Yes, Your Honor.  It's a -- it comes from
18  during the COVID mask mandate that was well-publicized.  It was in
19  -- came up when we had the initial detention hearings.  Mr. Martin
20  was protesting the mask mandate at the Sprout's supermarket and
21  made the employees there uncomfortable enough to where they went
22  to court and got a restraining order against him.  I don't think
23  he's going to contest that.  And that was around the same time
24  that he got the restraining order issued by his sister, I believe,
25  give or take a few months.

25

1          THE COURT:  All right.  And just to be clear, while he
2  was convicted of the other offense, despite his testimony, there
3  wasn't any finding of perjury; correct?

4          MR. BARTON:  Yes, there is, Your Honor.

5          THE COURT:  There was a finding of perjury?

6          MR. BARTON:  There is a finding of perjury.  I have it
7  for the Court if they'd like it.

8          THE COURT:  Yeah.  Let me take a look.

9          MR. BAIGMOHAMMADI:  Your Honor, Mr. Martin hasn't been
10 sentenced in that case, so I don't know what Mr. Barton's talking
11 about.

12          THE COURT:  I don't know either.  Maybe -- you can take
13 a look at it before I do.

14          MR. BARTON:  It's the PSR, Your Honor.  The final PSR
15 has been filed in that case and Probation has found the
16 obstruction enhancement.

17          THE COURT:  In the PSR filed in the Washington case?

18          MR. BARTON:  Yes, and I have the relevant page if the
19 Court would like it.  I could send the whole PSR, too.

20          THE COURT:  Yeah.  Let me take a look.  Let me have Mr.
21 Baigmohammadi take a look at it first.

22          MR. BAIGMOHAMMADI:  I have seen it, Your Honor.

23          THE COURT:  Okay.

24      (Court reviewing document.)

25          THE COURT:  Oh, okay.  So you're talking about the

26

1    enhancement as opposed to --

2         MR. BARTON:  Yes, Your Honor.

3         THE COURT:  All right.  I'm going to return this back.

4    So, in essence, in -- in the Washington case, the PSR, the

5    probation officer has found the obstruction enhancement should

6    apply.

7         MR. BARTON:  Yes, Your Honor.

8         THE COURT:  All right.  Anything else then at this time,

9    Mr. Barton?

10        MR. BARTON:  With that, Your Honor, the Government will

11   submit unless the Court has questions.

12        THE COURT:  I don't.  Let me turn to you, Mr.

13   Baigmohammadi, for your comments.

14        MR. BAIGMOHAMMADI:  Thank you, Your Honor.  First of all

15   there's been -- the Court has not found that Mr. Martin has

16   obstructed justice in D.C.  You know, the probation officer

17   recommends it, but there's been no finding.

18        Respectfully, we do believe that 18 months' custody

19   is -- will justly punish here, deter, and protect the public in

20   Mr. Martin's case.  It's so rare to see a 922 case where someone

21   is in the shoes of Mr. Martin, where the guns found in this case

22   are in a locked safe, Mr. Martin's not armed in public, he's not

23   dealing drugs, he has no prior felonies.  You know, this is not

24   the typical -- he is not the typical 922 client that we see in

25   this jurisdiction -- somebody who's only served a total of two

27

1  days' jail prior to him being arrested in this case.

2       Government's arguments that Mr. Martin is increasingly

3  violent is belied by the evidence. He has not committed any

4  violence in the last seven years. There's no accusation that he

5  committed violence in D.C. We had a full-blown trial and the

6  Government never asserted that. I cited to the complaint in the

7  D.C. case. What Mr. Martin is accused of doing, the most

8  egregious thing in D.C., what he's been found guilty of doing, is

9  holding a door, an outer door to the Capitol, not -- he didn't --

10 he made it in to the door. He was inside for about 15 seconds

11 before officers stopped him and pushed him out with a group of

12 other people. He's not -- absolutely not accused of any violence.

13 He is not -- there is a broad spectrum of what people did on

14 January 6th. Mr. Martin is nowhere near the most egregious

15 conduct that others committed.

16      Mr. Martin's last violent act was the domestic violence

17 that occurred in 2017. That was seven years ago.

18      Mr. Martin poses a minimal threat to society to use

19 firearms in a dangerous manner, and the evidence supports that.

20 He's actually never used firearms dangerously. There is no

21 evidence of that. He has shown that even when he's been involved

22 in the behavior that the Government points out, the risky behavior

23 that's never involved a firearm, he has -- he did not take a

24 firearm to the Capitol Building. He did not take any weapons to

25 the Capitol Building at all. He was dressed in street clothes.

28

1   He was unarmed.

2       He -- no firearms were involved in any of the

3   restraining order cases. No firearms were involved in any of Mr.

4   Martin's prior battery cases. So this is a man who has never

5   demonstrated a case to use firearms in a dangerous way. It

6   doesn't mean that there's not any risk. I'm not saying that at

7   all. I'm just saying that this is not an individual who's

8   demonstrated the level of violence or danger that the Government

9   claims.

10      You know, for all these reasons -- also, he's not

11  similarly situated to other 922 defendants in this case -- or in

12  our -- in our district. You know, if Mr. Martin were not involved

13  in the D.C. case, I doubt he would be prosecuted here in federal

14  court if he were caught with guns in the circumstances in which

15  they found him. He would have been possibly prosecuted in state

16  court but not here.

17      The way that officers found these guns is by complete

18  accident. They weren't looking for guns. They stumbled across

19  them. And, again, they were -- they're consistent with somebody

20  who's using them or has them to protect their home. They're in a

21  locked safe, not in public.

22      Eighteen months for Mr. Martin also is a substantial

23  sentence to deter him and protect the public. As I mentioned,

24  he's not spent more than two days in jail prior to this case.

25  He's 46 years old. Empirical evidence shows that people of Mr.

29

1   Martin's age at sentencing, after they get sentenced, their risk

2   of recidivism is very low.

3       As I point out in my papers, Mr. Martin -- the Court

4   should consider as a mitigator the collateral consequences that

5   Mr. Martin has also suffered as a result of his decisions.  He's

6   lost -- loss of profession is severe.  I mean, for somebody who

7   was making at one point six figures a year to not be able to

8   practice his profession anymore, that's a significant consequence.

9       THE COURT:  That's not a consequence of this conviction,

10  is it?

11      MR. BAIGMOHAMMADI:  It's a combination of both.  I mean,

12  it's felony convictions.

13      THE COURT:  But what I'm kind of concerned about is, I

14  mean, a lot of what you say in your -- in your memo is he lost his

15  real estate license.  I don't think he actually has -- I think

16  what you said was he's decided he'll let it expire.  At least

17  that's what was reported in the PSR.  That the publicity

18  surrounding the case -- but it wasn't around this case; it was

19  around the D.C. case; correct?

20      MR. BAIGMOHAMMADI:  Well, respectfully, I mean, the

21  cases are related insofar as what led to the firearms being found

22  was the D.C. case and so, you know, although they're not --

23  they're separate cases -- they're related in some senses.  And

24  it's -- he has let his -- his license expire, but the --

25      THE COURT:  So there's no real estate license at this

30

1  point?  Because I -- it was kind of vague to me about the outcome

2  of the proceedings.  And then my understanding what he's told Mr.

3  Micheli was that he was going to let it expire, not that it was --

4          MR. BAIGMOHAMMADI:  He is going to let it expire because

5  it was highly likely that he would lose his license and I -- I

6  cited to the attorney that Mr. Martin spoke to that's very

7  familiar with his past cases.  I mean, it's basically a virtual

8  certainty that he's not going to be able to practice anymore.

9          THE COURT:  Okay.

10         MR. BAIGMOHAMMADI:  And so for Mr. Martin to pay the

11  fees to renew his license, it just makes no sense --

12         THE COURT:  Okay.

13         MR. BAIGMOHAMMADI:  -- because he's going to lose it

14  anyways, and so --

15         THE COURT:  That was as a result of something unrelated

16  to this.  It was related to the 2019 domestic violence conviction;

17  correct?  That's what you said in your memo.

18         MR. BAIGMOHAMMADI:  The representation -- she

19  represented Mr. Martin related to that.  He was put on a

20  probationary status after that and he was able to keep his

21  license.  It's only after these cases now where, you know, he's

22  got a felony record that he -- that that's the basis for the

23  attorney, Ms. Jones, to say he's not going to be able to retain

24  his license.

25         THE COURT:  Okay.  So that's what I misunderstood.  So

31

1   she represents him in relation to the 2019 domestic violence
2   conviction. When did this proceeding occur then? I understood it
3   to be contemporaneous to that conviction, but when did this occur?

4         MR. BAIGMOHAMMADI: When you say "this," what are you
5   referring to?

6         THE COURT: Page 5 of your memo, you say that Ms. Jones
7   represented him related to that 2019 domestic violence conviction.

8         MR. BAIGMOHAMMADI: Uh-huh.

9         THE COURT: And that she believes it is highly unlikely
10  that he'd be able to keep his broker's license.

11        MR. BAIGMOHAMMADI: So --

12        THE COURT: Are these two separate things? She
13  represented him at this point and now she's opining this other
14  thing? Is that what's happening?

15        MR. BAIGMOHAMMADI: Yes. So I'm sorry if that's
16  confusing. So to clarify, after his domestic violence conviction,
17  he received notice from the Department of Real Estate or the Board
18  of Real Estate -- I forgot what the organization's name is -- but
19  essentially he failed to report that conviction. And then he had
20  to go before that body. She represented him in that case.

21        THE COURT: Okay.

22        MR. BAIGMOHAMMADI: And she was able to get and negoti-
23  -- negotiate something where he admitted responsibility there, and
24  then he was able to keep his license. He was put on a
25  probationary period and then he was able to keep his license.

32

1    And then now, Mr. Martin's counsel here after these

2 cases because, again, you have to report those to the Board, and

3 she has told me that based upon her knowledge of, you know, his

4 past case and then also now these felonies, that it's highly

5 unlikely that he will ever be able to practice real estate again.

6    THE COURT:  When did -- when did the resolution occur

7 related to the 2019 domestic violence conviction with the

8 Department of Real Estate?

9    MR. BAIGMOHAMMADI:  I believe it is sometime near 2019.

10    THE COURT:  Okay.

11    MR. BAIGMOHAMMADI:  It was years ago.

12    THE COURT:  Okay.

13    MR. BAIGMOHAMMADI:  Yes.

14    THE COURT:  All right.  Makes sense now.  Thank you.

15    MR. BAIGMOHAMMADI:  Yes.  So Your Honor's correct in

16 that the -- certainly the D.C. case and those felony convictions

17 are impacting his ability to practice real estate going forward,

18 but those cases -- well, it's all of the felonies, you know -- the

19 Board is going to take into account all of that in deciding

20 whether he's able to keep his license.  And it's Ms. Jones'

21 opinion that it's very unlikely he's going to be able to do that.

22    And he's also, in addition, lost -- excuse me --

23 friends, family, community, as a result of this negative backlash

24 when it comes to, you know, what we now refer to as "cancer

25 culture."

33

1          Finally, I think in mitigation is Mr. Martin's conduct
2    on bond. I mean, he's been out of custody for three years. He's
3    shown this Court that he can be law-abiding during this time. He
4    is law-abiding and he has been law-abiding. He's not been a
5    threat to other people. He's not threatened anyone. When he's
6    supervised, he has been compliant. And he's going to -- I'm sure
7    going to be put on supervised release here in this case.

8          And so go back to the principle of sufficient but not
9    greater than necessary. What is sufficient here to justly punish
10   him, to deter Mr. Martin, to protect the public? And for somebody
11   who's spent two nights in jail on an 18-month sentence is very
12   significant. It's not a drop in the bucket. He's not like many
13   of the other clients we see in this district. And we believe that
14   that -- the facts in this case support that sentence, and so we
15   are respectfully requesting 18 months of custody.

16         We are also asking for a self-surrender date, but if
17   Your Honor would like to wait to talk about that.

18         THE COURT: Sure. We can wait on that.

19         MR. BAIGMOHAMMADI: Okay. So, yes, we're asking for 18
20   months' custody and we'd submit on that, Your Honor.

21         THE COURT: All right. Mr. Barton, anything additional?

22         MR. BARTON: Your Honor, I think all the alleged
23   mitigating factors that Mr. Martin identifies cut exactly the
24   opposite way. He can't have a gun because he hurt somebody and
25   he's more likely to use that gun again. To say he's not like

34

1    other defendants who deal drugs and all that, that's true. He's

2    not. But he also had a much better upbringing and background than

3    any of those defendants ever did. Many of those defendants we see

4    in gun cases never make six figures or have a supporting family.

5              Besides all that, Mr. Martin just doesn't get it. He's

6    had time and time again. He's had multiple opportunities to stop.

7    And the idea that the violence stopped seven years ago -- in 2021,

8    when he got the restraining order by his sister, he texted her

9    saying, "I'm going to take you out." She thought he was going to

10   go use the guns. I mean, his violence hasn't stopped. That's not

11   true. He uses violence to get what he wants, to get his way. And

12   he's finally hit the wall here and he needs to be punished for it

13   and that's the reasoning behind the Government's 66-month

14   recommendation.

15             THE COURT: All right.

16             MR. BAIGMOHAMMADI: Your Honor, briefly. I just -- you

17   know, Mr. Barton has alleged that she was a threat of -- Mr.

18   Martin was -- what's her last name?

19             MR. BARTON: Odabashian.

20             MR. BAIGMOHAMMADI: Odabashian, another -- so many hard

21   last names here. Ms. Odabashian is here. She is not afraid that

22   Mr. Martin is going to use a gun against her. I mean, that's

23   totally --

24             THE COURT: I don't know what she's afraid of or not.

25             MR. BAIGMOHAMMADI: Right.

35

1          THE COURT:  I don't think that -- I mean, I remember

2    this is not the first time this issue's come up and -- I mean,

3    I've seen the text.  It's exactly what it said.  What she took

4    that to mean as it's a gun or something else, I don't know, but

5    that's exactly what the text said; correct? -- "I'm going to take

6    you out"?

7          MR. BAIGMOHAMMADI:  And I'm just clarifying that Mr.

8    Barton's assertion here that, you know, she's afraid he's going to

9    use a gun against her is totally, I mean, speculative.

10          THE COURT:  Right.

11          MR. BAIGMOHAMMADI:  And I'd just like to reiterate --

12    Your Honor's heard before at the last hearing the text -- the text

13    messages, the "take out" is not meant to take her out violently.

14    It's to take her out of her position as she was senior or some

15    sort of management at Keller Williams.

16          And I'd just remind the Court that Ms. Odabashian did

17    submit to the Court -- wanted me to communicate at the last

18    hearing that she did not want her case to be used to enhance Mr.

19    Martin's sentence.  I mean, she explicitly stated that in her

20    email to me, that she wanted to share with the Court.  And so, you

21    know, to the extent that Mr. Barton is speculating about her

22    wishes and what she felt, I mean, that's contrary to what she

23    said.

24          THE COURT:  Yeah.  I certainly don't mean any disrespect

25    to her, but her wishes are not significant.  I'm looking at the

36

1  texts and a judge clearly didn't think that's what his intention
2  was which is why the restraining order was -- was issued. I mean,
3  I feel a little revisionist here because, I mean -- I mean,
4  looking at the texts -- and this is not a request that management
5  of this company changed -- I mean, the language, the tone, what he
6  says to her --

7      MR. BAIGMOHAMMADI: What are you looking at, Your Honor,
8  so I can look at it as well?

9      THE COURT: I'm looking at the document that was
10  filed -- I mean, I have all your filings from previous, too, so
11  it's Document 113, the Government's brief related to they're
12  seeking remand after the entry. So it was -- it was filed in
13  relation to Mr. Martin -- his bench trial in which the Government
14  was seeking remand. And of course that was the second time I'd
15  seen that information because it was presented previously related
16  to other issues raised. So page 2 is the screenshots of those
17  texts and what he says is -- in one point -- "I come home Monday.
18  The first order of business is to take you out. I promise."

19      Then he does say, "I'm doing what I can to force you
20  out."

21      MR. BAIGMOHAMMADI: Right, and the context, though, is
22  "You need to step down as TL Team Leader."

23      THE COURT: Well, --

24      MR. BAIGMOHAMMADI: That's --

25      THE COURT: That is -- that's one way. But when you

37

1    look at the beginning, "We will never be good.  You are a fake

2    two-faced bitch.  I hope you enjoy your life with that piece of

3    shit you call husband.  Fuck you."  That is not, "Let us change

4    management in the company."

5              MR. BAIGMOHAMMADI:  That is not saying it in a nice way.

6    I certainly agree with that.

7              THE COURT:  Yeah.

8              MR. BAIGMOHAMMADI:  But I think, you know, is he

9    threatening to hurt her or is he --

10             THE COURT:  "Step down and gtf out" is what he says,

11   too.

12             MR. BAIGMOHAMMADI:  He's very angry and it's tied to

13   also what I mentioned in the -- in my opposition to this motion by

14   the Government which is the alleged -- I don't know what to call

15   it other than infidelity between -- that involved Mr. Martin's

16   wife and Ms. Odabashian's husband.

17             THE COURT:  I don't know what that means either and I

18   appreciate that there were some emotions going high there, but I

19   think his sister's now saying it related to her taking some

20   management action related to the 2019 domestic violence issue.

21   That's her declaration, Mr. Martin.  I mean, we can -- that's

22   exactly what she's saying now.  So I don't -- I mean, you're

23   shaking your head that this is not what she's saying, so I don't

24   know if she's gotten it wrong -- maybe I'm getting it wrong.  Is

25   it related to some infidelity, or is it related to the 2019

38

1  domestic violence that she says in her declaration?

2          MR. BAIGMOHAMMADI:  I mean, I don't want to get too into

3  the weeds in this issue.

4          THE COURT:  Okay.  That's fine.

5          MR. BAIGMOHAMMADI:  I think that my -- what is important

6  here from Mr. Martin's perspective is what is the Government

7  trying to argue about this incident?

8          THE COURT:  I think they're just pushing back on the

9  suggestion that Mr. Martin hasn't engaged in physical violence,

10  and I think that's undisputed.  But what they're saying is -- as

11  I understand it is his conduct, though, smacks of violence, even

12  though it's -- it hasn't been effectuated.  That's how I was

13  understanding the argument.

14          MR. BAIGMOHAMMADI:  And I would just say the full

15  context of these messages, he's -- he's, you know -- he's clearly

16  in multiple places talking about her needing to step -- "taking

17  her out" is referencing her position in management, not to hurt

18  her in any way.  And it's not just, "You need to step down as team

19  leader."  It's, "I will ruin you.  Step down.  You need to go."

20  You know, he's talking about her and her position.

21          THE COURT:  Well, I mean, ultimately it doesn't -- I

22  mean, if this was -- a restraining order was issued.  A judge read

23  this, read the pleadings, and decided that this was sufficient to

24  restrain Mr. Martin from -- from his sister; correct?  I mean, so

25  it's not a matter of us getting behind what that judge was

39

1   thinking or re-thinking what is there.  A court considered that
2   and determined that Mr. Martin posed a risk to his sister.

3          And I appreciate that that restraining order has
4   expired.  But as I understand the context of the Government's
5   argument is simply that while he didn't take steps, he made the
6   comments, a restraining order issued which legally prevented him
7   from having contact with her.

8          MR. BAIGMOHAMMADI:  That is correct, Your Honor.  Can I
9   have an aside with Mr. Martin, please?

10         THE COURT:  Uh-huh.

11         (Pause.)

12         MR. BAIGMOHAMMADI:  Thank you, Your Honor.  I would just
13  end my comments by saying -- emphasizing what I started off by
14  saying, which is that, you know, you're sentencing him when it
15  comes to him possessing firearms and I think, you know, a point of
16  consideration is, well, is this somebody who we're concerned about
17  using firearms in a dangerous way.  And he -- notwithstanding, you
18  know, including this situation with his sister, he has never used
19  firearms in a dangerous way.  And that's not to say there's not
20  some concern.  But I just want to emphasize that he has not ever
21  used -- even in these conflicts, he has never brought firearms
22  into play.  And so I think that's important for the Court to
23  consider, and I would submit, Your Honor.

24         THE COURT:  All right.  Thank you.  Mr. Barton, anything
25  further?

40

1          MR. BARTON:  Submitted, Your Honor.

2          THE COURT:  Mr. Martin, is there anything that you'd

3     like to say before I impose sentence in your case?

4          MR. MARTIN:  This has been a fascinating experience, to

5     say the least.  Never did I ever imagine that I would be in a

6     position like this.  And I love my entire family.  I love my

7     fiancee and my kids and I love my parents and I love my sister.

8     And I know that when you look at paper, you have to make a

9     determination.  And unfortunately, you weren't there.  Nobody is

10    there except for the people involved.  And I know that I don't --

11    I don't believe in violence.  I really don't.  I know I have a

12    misdemeanor domestic violence.  And withstanding that situation,

13    I truly am a person who believes in unconditional love and

14    kindness.  I believe in helping your neighbor.  I believe in -- in

15    the rule of law.  I really do.  If you knew anything about me, I

16    believe in the rule of law and I'm passionate about this country

17    and I'm passionate about people and helping people as best as I

18    can.  I'm passionate about protecting my rights.

19          And I have made mistakes and I accept responsibility.

20    I've always accepted responsibility for my mistakes.  I do good.

21    For three and a half years, I've been out and I do good.  I love

22    people.  I support people.  I feed people.  You know, I do

23    whatever I can to be a productive good citizen, a good person, a

24    good human.

25          Mr. Barton's right -- I come from a really loving family

41

1  and I've been very, very blessed because I have had a ton of
2  trials and tribulations in my life, not necessarily legal --
3  personal things as a child and throughout marriage, as we've
4  talked a little bit about here today -- the loss of my oldest son
5  when he was unethically adopted away from me without my consent
6  and I had to fight for him for 19 years. I'm a dad. Before
7  anything, I'm a dad. I love my kids and I would do anything for
8  my kids, and I would do anything for my neighbor as well. I'm not
9  who he describes me as. I know he's doing his job and Joseph
10 Barton is pretty good at his job. I don't like it, but he's
11 pretty good at his job.

12      It's not who I am. He's misrepresenting me based on --
13 over a ton of paper. He's never had a coffee with me. Nobody
14 ever has, except for the people that know me and love me. I mean,
15 I brought 30 people here today with me that all love and support
16 me and they know who I am.

17      I'm really sorry. I am. I'm sorry that I brought all
18 of this pain on everyone and I didn't -- I didn't mean to cause
19 anyone any harm. I went to the Capitol. I didn't think I was
20 doing anything wrong at the Capitol. I was just there
21 videotaping. I didn't know -- I didn't -- it just wasn't in my
22 head -- I never even imagined that something like this could
23 happen to somebody, but it did.

24      And instead of running away from it, I've faced it head-
25 on. I've come to every court proceeding. I have done my very

42

1  best to give the information as I remember it. It amazes me how

2  you can give information and when giving the information, in your

3  heart you know that the information you're giving is accurate, but

4  other people did it and question it and make it look any certain

5  way. I can tell you beyond any doubt I'm not a violent person.

6  I've done -- I've done something bad in the past and I -- I went

7  to a Batterers Intervention program. It's the only violence I

8  think I've ever been -- well, I'm sorry. There was -- there was

9  one other situation that I can think of. But other than that,

10 there just hasn't -- I'm just not that person and the situation --

11 I'm sorry -- in the other situation, my daughter calls her mom a

12 bitch and I slapped her face and that's what I got in trouble for.

13 I was being a parent. I didn't know -- I mean, I -- she cussed at

14 her mom. It was awful, and so I disciplined my daughter. And

15 that's all it was.

16      Unfortunately, we were in Las Vegas and, you know, it

17 happened the way that it happened. I'm sorry about that. My baby

18 girl is my very -- one of my very best friends. I would never

19 want to hurt any of my children. I would never want to hurt

20 anyone around me. It's just not who I am. I am a loving, kind

21 person. I truly am. And I know that I -- I do better out here.

22 I'll be better for society out here, better for my neighbors,

23 bringing them eggs, bringing them microgreens, bringing then

24 gourmet mushrooms. You know, I do better out here. I'll be --

25 I'll be a better contributor to society and society than I would

43

1   anywhere else.

2         I promise you. My family needs me and I need my family.

3   I am a good man and I won't make any more mistakes. I don't have

4   any intention to. I am burnt out. I don't want to do this

5   anymore. I really don't. I don't want to do this anymore. I

6   just want to be done and I want to move on with my life. This has

7   been the hardest thing I've ever gone through.

8         I can't imagine my fiancee sleeping by herself. I'm

9   sorry. That's all I have to say.

10       THE COURT: All right. Thank you, Mr. Martin, for your

11   comments. I believe what you're saying and I know you believe it.

12   And you're right. I have to make the decisions based upon the

13   paper that's been provided me. I don't get to go and have coffee

14   with the defendants that come before me and try to figure out who

15   they are as a person. What I have to do is rely upon the

16   information provided to me.

17       And this case is difficult in a lot of ways. First, I'm

18   not making any judgments about what happened in the Capitol in

19   Washington. That's not for me to do. That's another judge. So

20   that situation, I'm not -- I don't know. I wasn't there. I

21   didn't hear your trial. I don't know what happened there. I know

22   that you've been convicted related to your conduct there. What

23   the judge ultimately does with that, I don't know.

24       What I do know, too, though, is you have been convicted

25   of domestic violence, violence against a woman you're in a

44

1    relationship with and then -- I appreciate the impulse to respond
2    to a child who disrespects your spouse -- I get that.  But even in
3    California, you're not permitted to slap a kid in the face.  And
4    maybe -- there was a time when that was allowed.  When I was a
5    kid, that was a pretty common thing and I guarantee you I had my
6    share, but that is not the law these days.  And so when you do
7    that, that's a violation of the law.

8            And a lot of the things that were said in the -- in your
9    attorney's report on your behalf, it speaks to me and I hear -- I
10   hear what you're saying.  But Mr. Barton's not wrong that when I
11   look at your history, courts have taken incremental steps with you
12   and said, you know, When this happens, this is the consequence.
13   We don't want to see it happen again.  And then, When this
14   happens, this is the consequence.  We don't want to see it again.
15   And despite these consequences and despite knowing that you are a
16   person prohibited from having firearms, you bought firearms and
17   you kept them in your house.

18           I guess -- I mean, your response right there suggests to
19   me that you didn't own the 2013 firearm for which they found a
20   receipt in your home with your name on it.

21           MR. BAIGMOHAMMADI:  I think he's just -- he's thinking
22   that those guns were purchased prior to being a prohibited person.

23           THE COURT:  Right, but he wasn't -- wasn't he divested?
24   I think he was divested of the right to have possession of those,
25   was he not?

45

1          MR. BAIGMOHAMMADI:  Right.

2          THE COURT:  Yeah.

3          MR. BAIGMOHAMMADI:  I think he was just making a face

4    about he didn't -- he purchased those prior to being divested.

5          THE COURT:  Right, but he --

6          MR. BAIGMOHAMMADI:  He wasn't allowed to have them.

7    That's correct.

8          THE COURT:  He wasn't allowed to have them.

9          MR. BAIGMOHAMMADI:  Yes.

10         THE COURT:  And so I guess when -- when the courts take

11   these actions, it is because of the -- at least my understanding

12   is because they're afraid that when you act in this way, you're

13   going to take different steps and you're going to act in a worse

14   way because I think the understanding is domestic violence victims

15   oftentimes there is an escalation in violence.  And if you have a

16   firearm, it's more likely to be used.  So they issue these orders

17   saying, Don't have them.  And despite knowing that, you did have

18   them.  And I'm not even talking about your girlfriend's.  You had

19   your own there.  And I don't -- I don't know that circumstance.

20   I don't know what -- no.  We're not talking anymore.

21         So I don't know why you would have done that except that

22   you judged yourself to be safe to have those weapons, I suppose.

23         And then what happened with -- with your girlfriend's

24   father bringing his guns over, that was obviously a mistake that

25   shouldn't have occurred either.

46

1          I'm sure that you've looked at these papers, so you know

2     what appears is a course of conduct that doesn't seem deterred.

3     The situation with your sister, you're right.  I wasn't there.

4     All I can read is what she read on the text because it wasn't in

5     person.  She couldn't see your facial expression.  All she could

6     do is read the words that you wrote, and she took them seriously

7     enough to seek a restraining order.

8          And I'll be honest.  I'm not sure what that circumstance

9     is because I remember being told before this had something to do

10    with infidelity, but the declaration now says this has something

11    to do with your domestic violence conviction in 2019 and then when

12    this Capitol thing happened, it brought it up again.  So I'm not

13    sure exactly that circumstance.  All I know is that it has

14    happened and the court had restrained you.

15         And then I do see the good things you've done.  As

16    you've pointed out, you started this business, this microgreens

17    business.  And Mr. Baigmohammadi in your memorandum talks about

18    the fact that you work there 40 hours a week, seven days a week,

19    so this business that you're training your son to take over, that

20    you manage relationships with the suppliers, the vendors, the

21    customers.  You're responsible for the bills, for the receivables,

22    for the payables, that you're the farmhand and the sole employee

23    of this business and that this was your idea to do this and that

24    you took it from nothing and you built it.  And I think that

25    speaks to -- I mean, clearly you're a person who is driven to

47

1    succeed because you've done that before.  You want to do it again
2    and that's admirable.
3            I don't really understand the circumstance because, as
4    I understand, you told the probation officer that this is your
5    girlfriend's business and that you don't have any salary.  But as
6    I understand it, she's in nursing school or has gotten her nursing
7    license or she's working toward it.  I don't really understand how
8    it's her business but you're the one running it.  Maybe that's
9    because you're concerned about publicity.  I don't know.  But it
10   does appear to me that you spent your time productively in the
11   last year or so in developing that business and I think that's
12   admirable.
13           On the other hand, I look at the pre-sentence report.
14   Your criminal history -- I mean, you started at age 18 with some
15   pretty petty stuff.  And then, you know, a more serious thing at
16   20 which maybe there's some explanation for why that occurred.
17   Then you've got the conviction in -- when you're age 24.  You've
18   got a conviction at age 31.  You've got a conviction at age 37
19   which is the incident related to your daughter.  And you've got
20   the conviction at age 39 related to your girlfriend at the time.
21   And then you've got your most recent conviction in 2021 in
22   Washington, D.C. as well as in this case.
23           The other thing mentioned in the pre-sentence report is
24   at the time of the search warrant at your house, the FBI agents
25   found a marijuana grow in the house and then there was the issue

48

1    related to the electric meter being bypassed or something and
2    that's resulted in additional charges in Madera County I think is
3    what I'm understanding.

4          So what appears to be criminal history that is rated for
5    purposes of your criminal history category, it's very minor.  But
6    when I look over the entirety of your life, you've had pretty
7    regular contact with law enforcement.  And I guess I'm now put in
8    a position of saying, What do I do with this?  Yeah, I have it
9    here.  You were arrested related to the possession of marijuana
10   for sale, cultivation, and it looks like that's set for trial
11   setting in a couple weeks and, you know, that the PG&E was
12   bypassed.  I don't know what's going to happen with that,
13   obviously, but it sounds different, right, when I say it this way
14   than what you said to me that, you know, you -- you've not really
15   been in trouble, that you haven't really done -- you know, that
16   you haven't had any sort of involvement in a legal setting.  It
17   seems like you have quite a bit.  While none of it has really
18   resulted in you spending any measurable time in custody -- I mean
19   your attorney frankly is correct.  I think you've done one day.
20   But it seems to continue.

21         And at this point, I have to consider a lot of things in
22   imposing a sentence.  One is punishment for what you did and
23   another thing is deterrence.  I think from what you say, you feel
24   like you have been adequately deterred, and I think courts in the
25   past have believed that as well.  I have to understand if this is

49

1   truly -- this is truly it or if it's just enough to get you past

2   this and to the next thing.

3        You come across to me very sincerely.  You have a lot of

4   supporters, although I don't understand -- I mean, obviously the

5   letters that were presented to me were copies of those that are

6   going to Washington, and I get that.  I don't -- I wouldn't either

7   have felt that they needed to rewrite those letters in a different

8   way, but some of them seem to be under the impression that this

9   was all COVID-related -- and I don't know where that's coming

10  from.  Maybe it's because that's what got you interested in going

11  to the Capitol.  I don't know that.  Clearly, it has nothing to do

12  with this case here.

13       And I don't -- there was a lot of complaint about the

14  fact that after the search warrant that your girlfriend and

15  children and you also were excluded from that home, as if somehow

16  that was the FBI's doing as opposed to PG&E shutting it down

17  because they found that the meter had some defect for whatever

18  going on.  So I don't know how much the story of what I'm seeing

19  has been out there, and -- so that's a bit troubling, too.

20       I appreciate that you had some difficulty in your

21  childhood and I think it probably did lead you to make some bad

22  decisions.  But unlike a lot of people who have a history, you

23  also had a very supportive and loving family.  And you're 46 years

24  old.  I don't think most of what happened to you as a kid has

25  driven your decisions where you are standing here today.

50

1        You truly have done well on Pretrial release.  But then

2   in looking at the jail calls, I do think that you took steps to

3   try to encourage your girlfriend to take a factual position that

4   was different than what the truth was.

5        In considering all of those factors, I think a custodial

6   sentence is required.  I mean, it's not even being asked for

7   anything less than that.  I don't think the 66 months requested by

8   the Government is appropriate.  Truly, you should probably be

9   sentenced in the 57-month range because I am seriously concerned

10  about at least some of your history of violence, of threats of

11  violence in a situation where you think that the courts don't take

12  this seriously enough and in having guns in your possession.  But

13  I think that a lesser term can do that.

14       In doing so, I find the following sentence is reasonable

15  and sufficient but is not greater than necessary to comply with

16  the purposes stated in 18 U.S.C. Section 3553(a).

17       Pursuant to the Sentencing Reform Act of 1984, it is the

18  judgment of the Court that the Defendant, Benjamin John Martin, is

19  hereby committed to the custody of the Bureau of Prisons to be

20  imprisoned for a term of 38 months.

21       You must pay a special assessment of $100, your payment

22  to be immediately.  I find you do not have the ability to pay a

23  fine.  Imposition of a fine is waived.

24       If filed, a preliminary order of forfeiture is hereby

25  made final as to Mr. Martin and shall be incorporated into the

51

1    judgment.

2          Upon release from imprisonment, you will be placed on

3    supervised release for a term of 24 months.

4          Within 72 hours of release from the custody of the

5    Bureau of Prisons, you must report in person to the Probation

6    Office in your district to which you are released.

7          While on supervised release, you must not commit another

8    federal, state, or local crime.

9          You shall not illegally possess controlled substances.

10          You must cooperate in the collection of DNA as directed

11    by the probation officer.

12          You shall comply with the standard conditions which have

13    been recommended by the United States Sentencing Commission which

14    are adopted by this Court.

15          You must refrain from the unlawful use of a controlled

16    substance and you must submit to one drug test within 15 days of

17    release from imprisonment and at least two periodic drug tests

18    thereafter not to exceed four drug tests per month.

19          I adopt the special conditions recommended by the

20    probation officer in the Sentencing Recommendation Report and

21    impose all of those listed as special conditions.

22          As to a preferred location of incarceration?

23          MR. BAIGMOHAMMADI:  Your Honor, we'd ask for housing in

24    California as close to Fresno as possible, please.

25          THE COURT:   I will recommend that Mr. Martin be

52

1    incarcerated in an institution in California as close as possible
2    to Fresno for purposes of facilitating family visitation, but only
3    insofar    as    this    recommendation    accords    your    security
4    classification and space availability.
5            As to voluntary surrender, Mr. Baigmohammadi, your
6    comments?
7            MR. BAIGMOHAMMADI: Your Honor, I think I've laid out my
8    arguments pretty clearly in the brief. Just emphasize that Mr.
9    Martin has a plane ticket purchased for his sentencing in D.C. for
10   December 20th. He has every intention to go. He's not missed any
11   court dates. He's here today. All the things that applied back
12   at the -- when the Government originally moved to remand Mr.
13   Martin apply with even greater force here in terms of he is not by
14   clear and -- by clear and convincing evidence, he is not a flight
15   risk or a danger, given his conduct on bond, and his Pretrial
16   officer does not oppose Mr. Martin staying out of custody. Also,
17   it is the holidays. Mr. Martin is going to serve a significant
18   sentence. We'd ask that he please be able to spend that time with
19   his family, get his affairs in order. He is trying to transition
20   the business to his son. And so, you know, he's actively working
21   with his son to take over. And for all those reasons, Your Honor,
22   we'd ask for a self-surrender of January 31st, please.
23           THE COURT: All right. And Mr. Barton, your comments?
24           MR. BARTON: Thank you, Your Honor. The Government
25   stands by its motion for remand. This is a significant sentence.

53

1  Thirty-eight months, if I heard the Court correctly, is what he's

2  facing.  He committed obstruction in this case, Your Honor.  The

3  Court should not condone that.  If you commit obstruction in a

4  federal case -- to say that someone who commits obstruction in a

5  federal case and then can go to sentencing where it's his burden

6  by clear and convincing evidence to show that he will follow the

7  law and not pose a danger to others, the Government doesn't --

8  doesn't believe that's appropriate and that remand is the

9  appropriate remedy here.  One, that Mr. Martin has earned remand

10 but, two, to send a message that you do not obstruct justice.

11        And the Government would also submit to the Court, as

12 stated in its sentencing memo, the -- while the court in D.C. may

13 not have made an obstruction finding yet, the facts are very clear

14 of what Mr. Martin did.  He testified that he didn't break the law

15 and it was very apparent that he did.  That was while he's on

16 Pretrial release here.  That's a Pretrial release violation if the

17 Government had pursued it.  In my experience, to say that someone

18 with two pending federal cases can obstruct justice in both cases

19 and then not be remanded at sentencing, it doesn't send the right

20 message to other defendants.

21        MR. BAIGMOHAMMADI:  Can I just briefly add?  If he is

22 remanded, it will be the Marshals' responsibility to ship him

23 across the country to also be sentenced there.  And so although

24 that's kind of neither here nor there, it is something to consider

25 in terms of, you know, what burden that would impose on -- on the

54

1    courts and the Marshals to send Mr. Martin all the way across the
2    country to be sentenced.  And with more force, everything else
3    I've said is what's relevant.

4          THE COURT:  Right.  I -- the Marshals Service, that's
5    their job.  They would have no problem being able to do that.  I
6    do think, though, based upon Mr. Martin's conduct on Pretrial
7    Services in this court, it does justify voluntary surrender.  I
8    mean, we all know that there is an advantage to surrendering to
9    custody as opposed to being remanded, and what the judge does in
10   D.C. is up to that judge.  I don't know what's going to happen in
11   that case.  But based upon what's before me, I am going to grant
12   voluntary surrender.

13         So, Mr. Martin, what that means is I am going to keep
14   you out of custody for a while and you are on the same terms of
15   supervision as you have been complying with.  I am going to tell
16   you, though, if you fail to comply to surrender on the date that
17   I give you, that you could be -- that is a criminal offense
18   punishable by a consecutive term of imprisonment and -- so it is
19   very serious that you do what I'm telling you to do.

20         And obviously, you do need to coordinate with the
21   Pretrial Services officer to make that travel to D.C.  I don't
22   know if you've had those conversations with your Pretrial Services
23   officer, but the fact that you bought that ticket and you're
24   prepared to go, that you'd better pass that by him first or you're
25   going to find yourself in, you know, a bit of trouble.

55

1          So it is further ordered that the Defendant, having been

2     sentenced to the custody of the Bureau of Prisons, shall surrender

3     to the institution designated by the Bureau of Prisons or, if no

4     such institution has been designated, to the United States Marshal

5     in Fresno, California between -- before 12 noon on January 22nd of

6     2025.

7          As I said, Mr. Martin, it is a criminal offense

8     punishable by a consecutive term of imprisonment to fail to

9     surrender for service of the sentence pursuant to the order of

10    this Court.

11         All conditions of Pretrial release shall remain in

12    effect until you surrender in accordance with this order.

13         In addition, before you leave the building today, you do

14    need to report to Pretrial Services so they can give you further

15    instructions.

16         You are advised that if you wish to appeal from the

17    sentence I've just imposed, you must file a written notice of

18    appeal within 14 days of today's date.  If you cannot afford an

19    attorney in connection with your appeal, I will appoint one for

20    you.

21         Is there anything else on this matter or any other

22    objections?

23         MR. BAIGMOHAMMADI:  No, Your Honor.

24         MR. BARTON:  No, Your Honor.

25         THE COURT:  All right.  I'm going to return these

56

1  exhibits.  Mr. Baigmohammadi, you're going to have those filed?

2          MR. BAIGMOHAMMADI:  Yes, Your Honor.

3          THE COURT:  All right.

4          MR. BAIGMOHAMMADI:  Yes, Your Honor.

5          THE COURT:  Thank you.

6          MR. BAIGMOHAMMADI:  Thank you.

7          THE COURT:  Thank you.  Good luck, sir.

8          MR. MARTIN:  Thank you.

9      (Proceedings adjourned at 10:24 a.m.)

10

11          I, Peggy Schuerger, certify that the foregoing is a

12  correct transcript from the official electronic sound recording

13  provided to me of the proceedings in the above-entitled matter.

14
            *Peggy Schuerger*                    November 29, 2024
15  Signature of Approved Transcriber      Date

16
    Peggy Schuerger
17  ***Ad Hoc Reporting***
    Approved Transcription Provider
18  for the U.S. District Court,
    Eastern District of California

19

20

21

22

23

24

25

# EXHIBIT 3

Query    Reports    Utilities    Help    Log Out

<span style="color:red">APPEAL</span>,<span style="color:red">CLOSED</span>,COLLATERAL

# U.S. District Court
## Eastern District of California - Live System (Fresno)
## CRIMINAL DOCKET FOR CASE #: 1:21-cr-00228-JLT-BAM-1

Case title: USA v. Martin                     Date Filed: 09/16/2021

Magistrate judge case number: 1:21-mj-00092-EPG     Date Terminated: 11/25/2024

---

Assigned to: District Judge Jennifer L.
Thurston
Referred to: Magistrate Judge Barbara A.
McAuliffe

Appeals court case number: 24-7203 USCA

**Defendant (1)**

**Benjamin John Martin**          represented by   **Douglas J. Beevers**
*TERMINATED: 11/25/2024*                           Office Of The Federal Public Defender
                                                   801 I Street
                                                   Third Floor
                                                   Sacramento, CA 95814
                                                   916-498-5700
                                                   Fax: 916-498-5710
                                                   Email: douglas_beevers@fd.org
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*
                                                   *Designation: Public Defender or*
                                                   *Community Defender Appointment*

                                                   **Hootan Baigmohammadi**
                                                   Office of the Federal Defender
                                                   801 I Street
                                                   3rd Floor
                                                   Sacramento, CA 95814
                                                   916-498-5700
                                                   Email: hootan_baigmohammadi@fd.org
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*
                                                   *Designation: Public Defender or*
                                                   *Community Defender Appointment*

                                                   **Roger Nuttall**
                                                   Nuttall & Coleman
                                                   2333 Merced St.
                                                   Fresno, CA 93721
                                                   559-233-2900
                                                   Fax: 559-485-3852

Email: roger@nuttallcoleman.com
*TERMINATED: 05/23/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| **Pending Counts** | **Disposition** |
| --- | --- |

18:922(g)(9) - Possession of Firearm and
Ammunition by Person with Prior
Conviction for Misdemeanor Crime of
Domestic Violence
(1)

CUSTODY: 38 months. Special Assessment
$100. SUPERVISED RELEASE: 24
months.

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |

None

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
| --- | --- |

18 USC 922(g)(9) - Possession of firearm in
and affecting interstate or foreign commerce
by person who has previously been
convicted of misdemeanor crime of
domestic violence.

---

**Plaintiff**

**USA**                        represented by    **Fresno Forfeiture Unit**
United States Attorney's Office, Fresno
2500 Tulare Street
Suite 4401
Fresno, CA 93721
559-497-4000
Email: usacae.ecffrsfor@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Joseph Barton**
U.S. Attorney's Office
2500 Tulare Street, Suite 4401
Fresno, CA 93721
559-497-4000
Email: joseph.barton@usdoj.gov
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Michael G. Tierney**
United States Attorney's Office, Fresno
2500 Tulare Street
Suite 4401
Fresno, CA 93721
559-497-4000
Email: Michael.Tierney@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/08/2021 | 1 | CRIMINAL COMPLAINT as to Benjamin John Martin (1). (Rivera, O) [1:21-mj-00092-EPG] (Entered: 09/08/2021) |
| 09/08/2021 | 3 | MINUTES (Text Only) for proceedings held via video conference before Magistrate Judge Erica P. Grosjean: INITIAL APPEARANCE ON COMPLAINT as to Benjamin John Martin held on 9/8/2021. The hearing was conducted via video and telephonically pursuant to General Orders 614, 620, 624, 628, 630, and 632 and the CARES Act. Defendant and counsel consented to the appearance by video. Defendant advised of charges/rights; reading/advisement waived; true name stated as charged; DENIAL ENTERED. DETENTION HEARING as to Benjamin John Martin held on 9/8/2021. The matter of detention was argued and submitted, with the Court ORDERING DEFENDANT RELEASED on the following conditions: Post a $15,000.00 cash bond, by 4:00 PM on 9/9/2021, to be replaced with a full equity property bond posted and owned by Cara Gray and Brian Martin, which property bond is to be posted by 10/8/2021, third party custody, surrender passport by 4:00 PM on 9/9/2021, do not apply/obtain another passport and/or travel document during the pendency of these proceedings, and on all other conditions as read into the record. Defendant's release is delayed until the first working day at 8:30 AM following the surrender of the passport and posting of the cash bond. PRELIMINARY EXAMINATION HEARING set for 9/22/2021 at 02:00 PM in Courtroom 7 (SKO) before Magistrate Judge Sheila K. Oberto. The court instructed government counsel under Rule 5(f) to comply with its disclosure obligations under *Brady v. Maryland.* Government Counsel: Joseph Barton (via Zoom) present. Defense Counsel: Roger Nuttall (via Zoom) present. Custody Status: Custody (via Zoom) present. Court Reporter/CD Number: ECRO - Otilia Rosales. (Rooney, M) [1:21-mj-00092-EPG] (Entered: 09/09/2021) |
| 09/09/2021 | 4 | ORDER (TEXT ONLY) as to Defendant Benjamin John Martin signed by Magistrate Judge Erica P. Grosjean on 9/8/2021: According to the Federal Rules of Criminal Procedure Rule 5(f), the government is ordered to comply with its discovery obligations as required by federal law, including those duties imposed by Brady v. Maryland, 373 U.S. 83 (1963), and all applicable decisions interpreting Brady. This order does not relieve any party of any other discovery obligation. The consequences for violating this order or the government's obligations under Brady may include sanctions, referral to a disciplinary authority, adverse jury instruction, exclusion of evidence, and dismissal of charges, among other consequences. (Rooney, M) [1:21-mj-00092-EPG] (Entered: 09/09/2021) |
| 09/09/2021 | 5 | CASH BOND POSTED as to Benjamin Martin in amount of $ 15,000, Receipt # CAE100049085. (Maldonado, C) [1:21-mj-00092-EPG] (Entered: 09/09/2021) |

| 09/09/2021 | 6 | COLLATERAL RECEIVED as to Benjamin Martin: U.S.A. Passport from Benjamin John Martin, Passport Number 561698547. (Maldonado, C) [1:21-mj-00092-EPG] (Entered: 09/09/2021) |
| --- | --- | --- |
| 09/09/2021 | 7 | ORDER SETTING CONDITIONS of RELEASE, signed by Magistrate Judge Erica P. Grosjean on 9/9/2021. (Rivera, O) [1:21-mj-00092-EPG] (Entered: 09/10/2021) |
| 09/09/2021 | 8 | APPEARANCE and COMPLIANCE BOND, signed by Magistrate Judge Erica P. Grosjean on 9/9/2021 as to Benjamin John Martin. (Rivera, O) [1:21-mj-00092-EPG] (Entered: 09/10/2021) |
| 09/10/2021 | 9 | ARREST WARRANT RETURNED Executed on 9/8/2021 as to Benjamin John Martin. (Rivera, O) [1:21-mj-00092-EPG] (Entered: 09/10/2021) |
| 09/15/2021 | 10 | NOTICE of ATTORNEY APPEARANCE: Roger Taylor Nuttall appearing for Benjamin John Martin. Attorney Nuttall, Roger Taylor added. (Nuttall, Roger) [1:21-mj-00092-EPG] (Entered: 09/15/2021) |
| 09/16/2021 | 11 | INDICTMENT as to Benjamin John Martin (1) count(s) 1. (Attachments: # 1 True Bill and Information Sheet) (Martin-Gill, S) (Entered: 09/16/2021) |
| 09/22/2021 | 12 | MINUTES (Text Only) for proceedings held via video conference before Magistrate Judge Sheila K. Oberto: ARRAIGNMENT as to Benjamin John Martin (1) Count 1 held on 9/22/2021. The Court noted the hearing was being conducted via video conference pursuant to General Order 614, 620, 624, 628, and 630 and the CARES Act. Defendant and counsel consented to the appearance by video and government counsel also consented to appearance by video. Defendant is advised of charges and rights; Defendant acknowledged receipt of the indictment and waives formal reading and statutory and constitutional rights. True Name stated as charged; NOT GUILTY PLEA ENTERED. Discovery/reciprocal requested and ORDERED. The court instructed government counsel under Rule 5(f) to comply with its disclosure obligations under *Brady v. Maryland.* Status Conference set for 12/8/2021 at 01:00 PM in Courtroom 8 (BAM) before Magistrate Judge Barbara A. McAuliffe. XT Start: 9/22/2021 Stop: 12/8/2021- Time is to be excluded under the Speedy Trial Act in that good cause exists and that the ends of justice outweigh the interest of the public and the defendant in a speedy trial. For the reasons set forth on the record, the continuance requested is granted for good cause and the Court finds the ends of justice outweigh the interest of the public and the defendant in a speedy trial.Government Counsel: Joe Barton present. Defense Counsel: Roger Nuttall present. Custody Status: BOND (ZOOM). Court Reporter/CD Number: Otilia Rosales. (Kusamura, W) (Entered: 09/22/2021) |
| 10/07/2021 | 13 | STIPULATION and PROPOSED ORDER for MODIFICATION OF CONDITIONS OF RELEASE. (Nuttall, Roger) (Entered: 10/07/2021) |
| 10/08/2021 | 14 | STIPULATION TO MODIFY CONDITIONS OF RELEASE AND ORDER THERE as to Benjamin John Martin signed by Magistrate Judge Stanley A. Boone on 10/07/2021. IT IS HEREBY ORDERED that Defendant BENJAMIN MARTIN'S pretrial release conditions are amended to require the posting of one property bond for property belonging to Cara Gray with equity of no less than $200,000. All other Conditions of Release, not modified herein, will remain in full force and effect. (Gonzales, V) (Entered: 10/08/2021) |
| 10/08/2021 | 15 | COPY OF DEED OF TRUST # 2021031530 and Original Straight Note RECEIVED, posted by Cara Ann Gray as to Benjamin John Martin. (Martin-Gill, S) (Entered: 10/13/2021) |

| | | |
|---|---|---|
| 10/18/2021 | 16 | PROPOSED ORDER re Release of Cash Bond by Benjamin John Martin. (Nuttall, Roger) (Entered: 10/18/2021) |
| 10/18/2021 | 17 | ORDER signed by Magistrate Judge Erica P. Grosjean on 10/18/2021 as to Benjamin John Martin. The Court orders the $15,000.00 cash bond posted on behalf of defendant, returned to the surety, as said bond has now been replaced by the required property bond. (Rooney, M) (Entered: 10/18/2021) |
| 10/18/2021 | 18 | COLLATERAL RECEIVED as to Benjamin John Martin: ORIGINAL Deed of Trust posted by Cara Ann Gray, #2021031530. (Rivera, O) (Entered: 10/19/2021) |
| 11/18/2021 | 19 | MINUTE ORDER (TEXT ONLY): This case is set for a status conference on December 8, 2021. At least <u>one week</u> before the hearing the parties shall file a **joint** status report informing the court of the status of the case, including whether any change of plea is anticipated, a proposed next date for a status conference or change of plea, and whether defendant agrees to exclude time to the next date. Alternatively, the parties may stipulate to a continuance of the status conference, with an appropriate exclusion of time. The stipulation **<u>must be filed no later than noon</u>** on Wednesday, December 1, 2021. Minute order signed by Magistrate Judge Barbara A. McAuliffe on 11/18/2021. (Valdez, E) (Entered: 11/18/2021) |
| 11/30/2021 | 20 | STIPULATION and PROPOSED ORDER for Continuance by USA. (Barton, Joseph) (Entered: 11/30/2021) |
| 11/30/2021 | 21 | STIPULATION and ORDER to Continue Status Conference, as to Benjamin John Martin (1), signed by Magistrate Judge Barbara A. McAuliffe on 11/30/2021. Upon the Parties' stipulation and for good cause shown, the Status Conference scheduled for December 8, 2021, at 1:00 p.m., is continued until **March 23, 2022, at 1:00 p.m., before Magistrate Judge Barbara A. McAuliffe**. The period through March 23, 2022, inclusive, is excluded pursuant to 18 U.S.C. §§ 3161(h)(7)(A) and 3161(h)(7)(B)(i) and (iv). (Valdez, E) (Entered: 11/30/2021) |
| 12/17/2021 | 22 | MOTION for BAIL REVIEW by Benjamin John Martin. Motion Hearing set for 12/22/2021 at 11:00 AM in Courtroom 7 (SKO) before Magistrate Judge Sheila K. Oberto. (Nuttall, Roger) (Entered: 12/17/2021) |
| 12/21/2021 | 23 | OPPOSITION by USA. (Barton, Joseph) (Entered: 12/21/2021) |
| 12/22/2021 | 24 | MINUTES (Text Only) for proceedings held via video conference before Magistrate Judge Sheila K. Oberto: MOTION HEARING as to Benjamin John Martin held on 12/22/2021. The Court noted the hearing was being conducted via video conference pursuant to General Order 614, 620, 624, 628, 630, 632, 635 and 640 the CARES Act. Defendant and counsel consented to the appearance by video and government counsel also consented to appearance by video. Court GRANTS the request to return the $15,000 cash bond, due the Court receiving the full equity property bond. The Court ordered the parties to prepare and submit a proposed order for that return of the cash bond. After a discussion with the parties the Court continues the Motion Hearing to 12/29/2022 at 02:00 PM in Courtroom 10 (EPG) before Magistrate Judge Erica P. Grosjean. Government Counsel: Joe Barton present. Defense Counsel: Roger Nuttall present. Custody Status: BOND. Court Reporter/CD Number: Otilia Rosales. (Kusamura, W) (Entered: 12/22/2021) |
| 12/29/2021 | 25 | MINUTES (Text Only) for proceedings held via video conference before Magistrate Judge Erica P. Grosjean: MOTION HEARING as to Benjamin John Martin held on 12/29/2021. The hearing was conducted via video and telephonically pursuant to General Orders 614, 620, 624, 628, 630, 632, 635, and 640 and the CARES Act. Defendant and counsel consented to the appearance by video. The Court heard argument on defendant's |

|  |  | Motion for Bail Review, document 22 , with the Court granting said motion. Amended conditions of release to be filed. Government Counsel: Joseph Barton (via Zoom) present. Defense Counsel: Roger Nuttall (via Zoom) present. Custody Status: Bond (via Zoom) present. Court Reporter/CD Number: ECRO - Otilia Rosales. (Rooney, M) (Entered: 12/29/2021) |
| 01/03/2022 | 26 | _**AMENDED**_ ORDER SETTING CONDITIONS OF RELEASE signed by Magistrate Judge Erica P. Grosjean on 1/3/2022. (Rooney, M) (Entered: 01/03/2022) |
| 03/07/2022 | 27 | MINUTE ORDER (TEXT ONLY): This case is set for a status conference on March 23, 2022. At least one week before the hearing the parties shall file a **joint** status report informing the court of the status of the case, including whether any change of plea is anticipated, a proposed next date for a status conference or change of plea, and whether defendant agrees to exclude time to the next date. Alternatively, the parties may stipulate to a continuance of the status conference, with an appropriate exclusion of time. The stipulation **must be filed no later than noon** on Wednesday, March 16, 2022, so that the Court may have sufficient time to coordinate inmate movement in the jail(s). Minute order signed by Magistrate Judge Barbara A. McAuliffe on 3/7/2022. (Valdez, E) (Entered: 03/07/2022) |
| 03/15/2022 | 28 | STIPULATION and PROPOSED ORDER for Continuance by USA. (Barton, Joseph) (Entered: 03/15/2022) |
| 03/15/2022 | 29 | STIPULATION and ORDER to Continue Status Conference, as to Benjamin John Martin (1), signed by Magistrate Judge Barbara A. McAuliffe on 3/15/2022. Upon the Parties' stipulation and for good cause shown, the Status Conference scheduled for March 23, 2022, at 1:00 p.m., is continued until **June 22, 2022, at 1:00 p.m., before the Honorable Barbara A. McAuliffe**. The period through June 22, 2022, inclusive, is excluded pursuant to 18 U.S.C. §§ 3161(h)(7)(A) and 3161(h)(7)(B)(i) and (iv). (Valdez, E) (Entered: 03/15/2022) |
| 05/23/2022 | 30 | SUBSTITUTION of ATTORNEY - PROPOSED, submitted by Benjamin John Martin. (Baigmohammadi, Hootan) (Entered: 05/23/2022) |
| 05/23/2022 | 31 | CONSENT ORDER Granting Substitution of Attorney, signed by Magistrate Judge Stanley A. Boone on 5/23/2022. Hootan Baigmohammadi for Benjamin John Martin in place of attorney Roger Nuttall. (Marrujo, C) (Entered: 05/23/2022) |
| 06/07/2022 | 32 | MINUTE ORDER (TEXT ONLY): This case is set for a status conference on June 22, 2022. At least one week before the hearing the parties shall file a **joint** status report informing the court of the status of the case, including whether any change of plea is anticipated, a proposed next date for a status conference or change of plea, and whether defendant agrees to exclude time to the next date. Alternatively, the parties may stipulate to a continuance of the status conference, with an appropriate exclusion of time. The stipulation **must be filed no later than noon** on Wednesday, June 15, 2022, so that the Court may have sufficient time to coordinate inmate movement in the jail(s). Minute order signed by Magistrate Judge Barbara A. McAuliffe on 6/7/2022. (Valdez, E) (Entered: 06/07/2022) |
| 06/07/2022 | 33 | STIPULATION and PROPOSED ORDER for Continue Status Conference by USA. (Barton, Joseph) (Entered: 06/07/2022) |
| 06/08/2022 | 34 | STIPULATION and ORDER to Continue Status Conference, as to Benjamin John Martin (1), signed by Magistrate Judge Barbara A. McAuliffe on 6/8/2022. Upon the Parties' stipulation and for good cause shown, the Status Conference scheduled for June 22, 2022, at 1:00 p.m., is continued until **October 12, 2022, at 1:00 p.m., before the Honorable Barbara A. McAuliffe**. The period through October 12, 2022, inclusive, is excluded |

|  |  | pursuant to 18 U.S.C. §§ 3161(h)(7)(A) and 3161(h)(7)(B)(i) and (iv). (Valdez, E) (Entered: 06/08/2022) |
| --- | --- | --- |
| 06/29/2022 | 35 | TRANSCRIPT REQUEST for proceedings held on December 29, 2021 before Judge Erica P. Grosjean. Court Reporter ECRO-Fresno. (Baigmohammadi, Hootan) (Entered: 06/29/2022) |
| 07/05/2022 | 36 | TRANSCRIPT of Motion for Bail Review as to Benjamin John Martin held on 12/29/2021, before Magistrate Judge Erica P. Grosjean, filed by Court Reporter Thresha Spencer, Phone number 916-730-2269 E-mail Thresha.csr@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction must be filed within 5 court days. Redaction Request due 7/28/2022. Redacted Transcript Deadline set for 8/5/2022. Release of Transcript Restriction set for 10/3/2022. (Spencer, T) (Entered: 07/05/2022) |
| 07/08/2022 | 37 | TRANSCRIPT of Motion for Bail Review as to Benjamin John Martin held on 12/29/2021, before Magistrate Judge Erica P. Grosjean, filed by Court Reporter Thresha Spencer, Phone number 916-730-2269 E-mail Thresha.csr@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction must be filed within 5 court days. Redaction Request due 7/29/2022. Redacted Transcript Deadline set for 8/8/2022. Release of Transcript Restriction set for 10/6/2022. (Spencer, T) (Entered: 07/08/2022) |
| 08/11/2022 | 38 | MOTION for BAIL REVIEW by Benjamin John Martin. Motion Hearing set for 8/26/2022 at 02:00 PM before Magistrate Judge Erica P. Grosjean. (Attachments: # 1 Exhibit A, Bail Rev Hrg Tx)(Baigmohammadi, Hootan) (Entered: 08/11/2022) |
| 08/18/2022 | 39 | MINUTE ORDER signed by Magistrate Judge Erica P. Grosjean on 8/18/2022 as to Benjamin John Martin: As a Motion for Bail Review, document 38 , has been noticed for hearing on 8/26/2022 before Magistrate Judge Erica P. Grosjean, the government's response shall be filed by 5:00 PM on 8/25/2022. (Text Only Entry) (Rooney, M) (Entered: 08/18/2022) |
| 08/19/2022 | 40 | STIPULATION and PROPOSED ORDER for Filing Motion Under Seal. (Baigmohammadi, Hootan) (Entered: 08/19/2022) |
| 08/19/2022 | 41 | STIPULATION and PROPOSED ORDER for Withdrawal of Motion. (Baigmohammadi, Hootan) (Entered: 08/19/2022) |
| 08/22/2022 | 42 | STIPULATION and ORDER TO WITHDRAW MR. MARTIN'S EMERGENCY MOTION TO 1) QUASH THE SEARCH WARRANT; 2) GRANT LEAVE TO FILE FURTHER MOTIONS; AND 3) STAY EXECUTION OF SEARCH WARRANT as to Benjamin John Martin. Order signed by Magistrate Judge Sheila K. Oberto on 8/19/2022. (Kusamura, W) (Entered: 08/22/2022) |
| 08/24/2022 | 43 | ORDER REASSIGNING CASE by Chief Judge Kimberly J. Mueller: Due to the appointment of *District Judge Ana de Alba* to the bench of the Eastern District of California, this action is reassigned from *District Judge Dale A. Drozd* to District Judge Ana de Alba for all further proceedings. (Gonzalez, R) (Entered: 08/24/2022) |
| 08/25/2022 | 44 | OPPOSITION by USA. (Barton, Joseph) (Entered: 08/25/2022) |
| 08/26/2022 | 45 | MINUTES (Text Only) for proceedings held via video conference before Magistrate Judge Erica P. Grosjean: MOTION HEARING as to Benjamin John Martin held on |

| | | |
|---|---|---|
| | | 8/26/2022. The Court noted the hearing was being conducted via video conference pursuant to General Order 614, 620, 624, 628, 630, 632, 635, 640, 649 and 652 the CARES Act. Defendant and counsel consented to the appearance by video and government counsel also consented to appearance by video. The Court heard argument on defendant's Motion for Bail Review, document 38 , with the Court ordering the motion denied. Government Counsel: Joseph Barton (via Zoom) present. Defense Counsel: Hootan Baigmohammadi (via Zoom) present. Custody Status: Bond (via Zoom) present. Court Reporter/CD Number: ECRO - Araceli Gil-Garcia. (Rooney, M) (Entered: 08/29/2022) |
| 08/31/2022 | 46 | TRANSCRIPT REQUEST for proceedings held on August 26, 2022 before Judge Erica P. Grosjean. Court Reporter ECRO-Fresno. (Baigmohammadi, Hootan) (Entered: 08/31/2022) |
| 09/07/2022 | 47 | TRANSCRIPT of Proceedings as to Benjamin John Martin held on **8/26/2022**, before Magistrate Judge Erica P. Grosjean. **MOTION FOR BAIL REVIEW HEARING** filed by ECRO, Phone number 559-499-5928 or 559-499-5980, E-mail Fresno_ECRO@caed.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction must be filed within 5 court days. Redaction Request due 9/29/2022. Redacted Transcript Deadline set for 10/11/2022. Release of Transcript Restriction set for 12/8/2022. (Rosales, O.) (Entered: 09/07/2022) |
| 09/29/2022 | 48 | MINUTE ORDER (TEXT ONLY): This case is set for a status conference on October 12, 2022. At least one week before the hearing the parties shall file a joint status report informing the court of the status of the case, including whether any change of plea is anticipated, a proposed next date for a status conference or change of plea, and whether defendant agrees to exclude time to the next date. Alternatively, the parties may stipulate to a continuance of the status conference, with an appropriate exclusion of time. The stipulation must be filed no later than noon on Wednesday, October 5, 2022, so that the Court may have sufficient time to coordinate inmate movement in the jail(s). If unforeseen circumstances delay the timely submission of the stipulation, the AUSA is instructed to email the courtroom deputy. Minute order signed by Magistrate Judge Barbara A. McAuliffe on 9/29/2022. (Valdez, E) (Entered: 09/29/2022) |
| 10/05/2022 | 49 | STIPULATION and PROPOSED ORDER for Continue Status Conference by USA. (Barton, Joseph) (Entered: 10/05/2022) |
| 10/05/2022 | 50 | STIPULATION and ORDER to Continue Status Conference, as to Benjamin John Martin (1), signed by Magistrate Judge Barbara A. McAuliffe on 10/5/2022. Upon the Parties' stipulation and for good cause shown, the Status Conference scheduled for October 12, 2022, at 1:00 p.m., is continued until **December 14, 2022, at 1:00 p.m., before the Honorable Barbara A. McAuliffe.** The period through December 14, 2022, inclusive, is excluded pursuant to 18 U.S.C. §§ 3161(h)(7)(A) and 3161(h)(7)(B)(i) and (iv). (Valdez, E) (Entered: 10/05/2022) |
| 10/14/2022 | 51 | MOTION to REVOKE Magistrate's Order Denying Modification of Conditions of Release by Benjamin John Martin. (Attachments: # 1 Exhibit A, Tx of Aug. 26, 2022 Bail Rev Hrg)(Baigmohammadi, Hootan) (Entered: 10/14/2022) |
| 10/17/2022 | 52 | MINUTE ORDER signed by District Judge Ana de Alba on 10/17/2022 as to Benjamin John Martin: (Text Only Entry) The Court sets the following briefing schedule as to the Motion to Revoke Order Denying Release. Government shall file a response by 10/24/2022; Reply due 10/31/2022; Hearing set for 11/7/2022 at 9:00 am before U.S. District Judge Ana de Alba. (Hernandez, M) (Entered: 10/17/2022) |

| 10/24/2022 | [53](#) | OPPOSITION by USA. (Barton, Joseph) (Entered: 10/24/2022) |
|---|---|---|
| 10/31/2022 | [54](#) | REPLY by Benjamin John Martin to RESPONSE to [51](#) Motion to Revoke. (Attachments: # [1](#) Declaration of Erin Snider, # [2](#) Declaration of Vincent Lee)(Baigmohammadi, Hootan) (Entered: 10/31/2022) |
| 11/07/2022 | 55 | MINUTES (Text Only) for proceedings held via video conference before District Judge Ana de Alba: MOTION HEARING RE MOTION TO REVOKE ORDER DENYING MODIFICATIONS as to Benjamin John Martin held and addressed on 11/7/2022. The Court set a further hearing regarding the motion for **11/29/2022 at 08:30 AM in Courtroom 1 (ADA) before District Judge Ana de Alba.** Government Counsel: Joseph Barton present. Defense Counsel: Hootan Baigmohammadi present. Custody Status: (B) Defendant present. Court Reporter/CD Number: ECRO S. Hall. (Hernandez, M) (Entered: 11/07/2022) |
| 11/28/2022 | 56 | MINUTE ORDER signed by District Judge Ana de Alba on 11/28/2022 as to Benjamin John Martin: (Text Only Entry) The Court takes the Further Hearing RE Motion to Revoke Order Denying Modifications OFF CALENDAR. The Court will issue a written order. Hearing set for 11/29/2022 at 8:30 am before U.S. District Judge de Alba is VACATED. (Hernandez, M) (Entered: 11/28/2022) |
| 11/30/2022 | [57](#) | ORDER GRANTING [51](#) Defendant's Motion to Revoke the Magistrate Judge's Order Denying Modification of Conditions of Release as to Benjamin John Martin (1) signed by District Judge Ana de Alba on 11/30/2022. (Hernandez, M) (Entered: 11/30/2022) |
| 12/01/2022 | 58 | MINUTE ORDER (TEXT ONLY): This case is set for a status conference on December 14, 2022. At least <u>one week</u> before the hearing the parties shall file a <u>joint</u> status report informing the court of the status of the case, including whether any change of plea is anticipated, a proposed next date for a status conference or change of plea, and whether defendant agrees to exclude time to the next date. Alternatively, the parties may stipulate to a continuance of the status conference, with an appropriate exclusion of time. The stipulation <u>must be filed no later than noon</u> on Wednesday, December 7, 2022, so that the Court may have sufficient time to coordinate inmate movement in the jail(s). <u>If unforeseen circumstances delay the timely submission of the stipulation, the AUSA is instructed to email the courtroom deputy.</u> Minute order signed by Magistrate Judge Barbara A. McAuliffe on 12/1/2022. (Valdez, E) (Entered: 12/01/2022) |
| 12/07/2022 | [59](#) | JOINT STATUS REPORT by Benjamin John Martin. (Baigmohammadi, Hootan) (Entered: 12/07/2022) |
| 12/14/2022 | 60 | MINUTES (Text Only) for proceedings held via video conference before Magistrate Judge Barbara A. McAuliffe: STATUS CONFERENCE as to Benjamin John Martin (1) held on 12/14/2022. The Court noted the hearing was conducted via video conference pursuant to General Order 614, 620, 624, 628, 630, 632, 635, 640, 649, 652 & 655 and the CARES Act. Defendant and counsel consented to the appearance by video. The Court received the reviewed the joint status report. Defense counsel requested another status conference; the government requested matter be set for trial - discussion held. The Court granted request for another status conference. Parties waived excludable time - So Ordered, 18 USC 3161. **Status Conference set for 3/22/2023 at 01:00 PM in Courtroom 8 (BAM) before Magistrate Judge Barbara A. McAuliffe.** Excludable started as to Benjamin John Martin: XT Start: 12/14/2022 Stop: 3/22/2023. Time is to be excluded under the Speedy Trial Act in that good cause exists and that the ends of justice outweigh the interest of the public and the defendant in a speedy trial. For the reasons set forth on the record, the continuance requested is granted for good cause and the Court finds the ends of justice outweigh the interest of the public and the defendant in a speedy trial. Government Counsel: Joseph Barton - present via zoom. Defense Counsel: Hootan |

| | | |
|---|---|---|
| | | Baigmohammadi - present via zoom. Custody Status: BOND - present via zoom. Court Reporter/CD Number: ECRO - Otilia Rosales. (Valdez, E) (Entered: 12/14/2022) |
| 03/07/2023 | 61 | MINUTE ORDER (TEXT ONLY): This case is set for a status conference on March 22, 2023. At least <u>one week</u> before the hearing the parties shall file a <u>joint</u> status report informing the court of the status of the case, including whether any change of plea is anticipated, a proposed next date for a status conference or change of plea, and whether defendant agrees to exclude time to the next date. Alternatively, the parties may stipulate to a continuance of the status conference, with an appropriate exclusion of time. **However, in any request for a continuance, the parties shall explain when they will be ready <u>to set a trial date</u>**. The stipulation <u>must be filed no later than noon</u> on Wednesday, March 15, 2023, so that the Court may have sufficient time to coordinate inmate movement in the jail(s). <u>If unforeseen circumstances delay the timely submission of the stipulation, the AUSA is instructed to email the courtroom deputy</u>. Minute order signed by Magistrate Judge Barbara A. McAuliffe on 3/7/2023. (Valdez, E) (Entered: 03/07/2023) |
| 03/15/2023 | <u>62</u> | JOINT STATUS REPORT by USA as to Benjamin John Martin. (Barton, Joseph) (Entered: 03/15/2023) |
| 03/22/2023 | 63 | MINUTES (Text Only) for proceedings held via video conference before Magistrate Judge Barbara A. McAuliffe: STATUS CONFERENCE as to Benjamin John Martin (1) held on 3/22/2023. The Court noted the hearing was conducted via video conference pursuant to General Order 614, 620, 624, 628, 630, 632, 635, 640, 649, 652, 655 & 656 and the CARES Act. Defendant and counsel consented to the appearance by video. The Court received and reviewed the joint status report. The government advised discovery was produced. The parties discussed the constitutional challenge pending in the Ninth Circuit in *United States v. Yates*, U.S.C.A. No. 22-30051. Defense counsel addressed the court regarding defendant's related case in the District of Columbia. Parties requested another status conference and waived excludable time - So Ordered, 18 USC 3161. **Status Conference set for 7/12/2023 at 01:00 PM in Courtroom 8 (BAM) before Magistrate Judge Barbara A. McAuliffe**. Excludable started as to Benjamin John Martin: XT Start: 3/22/2023 Stop: 7/12/2023. Time is to be excluded under the Speedy Trial Act in that good cause exists and that the ends of justice outweigh the interest of the public and the defendant in a speedy trial. For the reasons set forth on the record, the continuance requested is granted for good cause and the Court finds the ends of justice outweigh the interest of the public and the defendant in a speedy trial. Government Counsel: Joseph Barton - present via zoom. Defense Counsel: Hootan Baigmohammadi - present via zoom. Custody Status: BOND - present via zoom. Court Reporter/CD Number: ECRO - Araceli Gil-Garcia. (Valdez, E) (Entered: 03/22/2023) |
| 06/28/2023 | 64 | MINUTE ORDER (TEXT ONLY): This case is set for a status conference on July 12, 2023. At least <u>one week</u> before the hearing the parties shall file a <u>joint</u> status report informing the court of the status of the case, including whether any change of plea is anticipated, a proposed next date for a status conference or change of plea, and whether defendant agrees to exclude time to the next date. **In the status report, each defendant's counsel shall state whether defendant is waiving personal appearance pursuant to Rule 43 <u>and</u> whether the waiver is for all appearances or for a single appearance. For waiver, a Rule 43 waiver motion must be submitted with the status report, and if approved by the Court, the defendant's counsel shall appear by video conferencing. If defendant does not waive appearance, counsel <u>and</u> defendant must appear <u>in person</u> for the hearing**. Alternatively, the parties may stipulate to a continuance of the status conference, with an appropriate exclusion of time. **However, in any request for a continuance, the parties shall explain when they will be ready <u>to set a trial date</u>**. The stipulation <u>must be filed no later than noon</u> on Wednesday, July 5, 2023, so that the Court may have sufficient time to coordinate inmate movement in the jail(s). If unforeseen |

| | | |
|---|---|---|
| | | circumstances delay the timely submission of the stipulation, the AUSA is instructed to email the courtroom deputy. Minute order signed by Magistrate Judge Barbara A. McAuliffe on 6/28/2023. (Valdez, E) (Entered: 06/28/2023) |
| 07/05/2023 | 65 | STATUS REPORT by USA as to Benjamin John Martin. (Barton, Joseph) (Entered: 07/05/2023) |
| 07/05/2023 | 66 | STATUS REPORT by Benjamin John Martin. (Baigmohammadi, Hootan) (Entered: 07/05/2023) |
| 07/12/2023 | 67 | MINUTES (Text Only) for proceedings held before Magistrate Judge Barbara A. McAuliffe: STATUS CONFERENCE as to Benjamin John Martin (1) held on 7/12/2023. The Court received and reviewed the status reports. Defense counsel requested a 2 month continuance for filing of a motion to dismiss. The government requested the court issue a motion schedule and set the matter for trial. Defense counsel addressed the court regarding the motion to dismiss. **MOTION SCHEDULE:** *Motion due 9/15/2023; Opposition due 10/16/2023; and Reply due 11/17/2023.* **Motion Hearing set for 12/4/2023 at 08:30 AM in Courtroom 1 (ADA) before District Judge Ana de Alba**. Excludable started as to Benjamin John Martin: XT Start: 7/12/2023 Stop: 12/4/2023. Time is to be excluded under the Speedy Trial Act in that good cause exists and that the ends of justice outweigh the interest of the public and the defendant in a speedy trial. For the reasons set forth on the record, the continuance requested is granted for good cause and the Court finds the ends of justice outweigh the interest of the public and the defendant in a speedy trial. Government Counsel: Joseph Barton - present. Defense Counsel: Hootan Baigmohammadi - present. Custody Status: BOND - present. Court Reporter/CD Number: ECRO - Otilia Rosales. (Valdez, E) (Entered: 07/12/2023) |
| 08/23/2023 | 68 | MOTION to COMPEL *Discovery* by Benjamin John Martin. Motion Hearing set for 9/7/2023 at 02:00 PM before Magistrate Judge Sheila K. Oberto. (Baigmohammadi, Hootan) (Entered: 08/23/2023) |
| 08/24/2023 | 69 | MINUTE ORDER (TEXT ONLY): On August 23, 2023, defense counsel for Benjamin John Martin (1) filed a Motion to Compel (Doc. 68 ). The **MOTION to Compel is RESET to September 13, 2023, at 1:00 PM before Magistrate Judge Barbara A. McAuliffe**. Minute order signed by Magistrate Judge Barbara A. McAuliffe on 8/24/2023. (Valdez, E) (Entered: 08/24/2023) |
| 08/28/2023 | 70 | MINUTE ORDER (TEXT ONLY): As to the motion to compel, any opposition and reply brief shall follow the time frames in Local Rule 430.1(f). Minute order signed by Magistrate Judge Barbara A. McAuliffe on 8/28/2023. (Valdez, E) (Entered: 08/28/2023) |
| 08/29/2023 | 71 | STATEMENT of Government in Response to Defendant's Motion to Compel Discovery. (Barton, Joseph) (Entered: 08/29/2023) |
| 09/08/2023 | 72 | STIPULATION and PROPOSED ORDER for Order re Motion to Compel re 68 MOTION to COMPEL *Discovery*. (Baigmohammadi, Hootan) (Entered: 09/08/2023) |
| 09/08/2023 | 73 | STIPULATION and ORDER re Mr. Martin's Motion to Compel Discovery at ECF No. 68 as to Benjamin John Martin (1) signed by Magistrate Judge Barbara A. McAuliffe on 9/8/2023. The Court, having received and considered the parties' stipulation, and good cause appearing therefrom, adopts the parties' stipulation in its entirety as its order. The motion hearing scheduled on September 13, 2023, at 1:00 p.m. before Magistrate Judge Barbara A. McAuliffe is vacated. (Valdez, E) (Entered: 09/08/2023) |
| 09/14/2023 | 74 | DESIGNATION of COUNSEL FOR SERVICE. Added attorney Douglas J. Beevers for Benjamin John Martin (Beevers, Douglas) (Entered: 09/14/2023) |

| 09/15/2023 | 75 | MOTION to SUPPRESS *EVIDENCE* by Benjamin John Martin. Motion Hearing set for 12/4/2023 at 08:30 AM before District Judge Ana de Alba. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Beevers, Douglas) (Entered: 09/15/2023) |
| 09/15/2023 | 76 | MOTION to DISMISS *Indictment* by Benjamin John Martin. Motion Hearing set for 12/4/2023 at 08:30 AM before District Judge Ana de Alba. (Attachments: # 1 Exhibit A, Select Portion of Search Warrant Aff., # 2 Exhibit B, Misdemeanor Plea Form) (Baigmohammadi, Hootan) (Entered: 09/15/2023) |
| 09/21/2023 | 77 | STIPULATION and PROPOSED ORDER for Setting Briefing Schedule re 75 MOTION to SUPPRESS *EVIDENCE*. (Baigmohammadi, Hootan) (Entered: 09/21/2023) |
| 09/22/2023 | 78 | STIPULATION and ORDER RE MOTION TO SUPPRESS BRIEF SCHEDULE as to Benjamin John Martin signed by District Judge Ana de Alba on 9/22/2023. **Motion Hearing set for 12/4/2023 at 8:30 am before District Judge Ana de Alba.** (Hernandez, M) (Entered: 09/22/2023) |
| 10/16/2023 | 79 | OPPOSITION by USA. (Barton, Joseph) (Entered: 10/16/2023) |
| 10/16/2023 | 80 | OPPOSITION by USA to 75 Motion to Suppress. Attorney Tierney, Michael G. added. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Tierney, Michael) (Entered: 10/16/2023) |
| 10/31/2023 | 81 | MINUTE ORDER signed by District Judge Ana de Alba on 10/31/2023 as to Benjamin John Martin: (Text Only Entry) The Court RESETS the Motion to Suppress Evidence and Motion to Dismiss Indictment from 12/4/2023 to 12/12/2023 at 09:00 AM in Courtroom 1 (ADA) before District Judge Ana de Alba. The parties shall submit a stipulation addressing time exclusion to the Court. (Hernandez, M) (Entered: 10/31/2023) |
| 11/03/2023 | 82 | STIPULATION and PROPOSED ORDER for Excludable Time by USA. (Barton, Joseph) (Entered: 11/03/2023) |
| 11/06/2023 | 83 | STIPULATION and ORDER as to Benjamin John Martin signed by Magistrate Judge Barbara A. McAuliffe on 11/3/2023. It is so ordered, upon the parties' stipulation and for good cause shown, time under the Speedy Trial Act is excluded from December 5, 2023, through December 12, 2023, pursuant to 18 U.S.C. §§ 3161(h)(1)(D). (Vue, Yee) (Entered: 11/06/2023) |
| 11/17/2023 | 84 | REPLY by Benjamin John Martin to RESPONSE to. (Beevers, Douglas) (Entered: 11/17/2023) |
| 11/17/2023 | 85 | REPLY by Benjamin John Martin to RESPONSE to 76 Motion to Dismiss,. (Attachments: # 1 Declaration of Clayton Cramer)(Baigmohammadi, Hootan) (Entered: 11/17/2023) |
| 11/21/2023 | 86 | STIPULATION and PROPOSED ORDER for Sur-Reply and Motion Hearing. (Baigmohammadi, Hootan) (Entered: 11/21/2023) |
| 11/28/2023 | 87 | STIPULATION AND ORDER RE SUR-REPLY AND MOTION HEARING signed by District Judge Jennifer L. Thurston on 11/28/2023 as to Benjamin John Martin. (Gonzales, V) (Entered: 11/28/2023) |
| 12/01/2023 | 88 | ORDER by Chief Judge Kimberly J. Mueller: Due to the elevation of U.S. District Judge Ana I. de Alba to the Ninth Circuit Court of Appeals, the court finds it necessary to temporarily reassign this case to No District Court Judge (NODJ) until a new district judge is appointed. (Davis, D) (Entered: 12/01/2023) |
| 12/04/2023 | 89 | STIPULATION and PROPOSED ORDER for Continuance of Motion Hearing. (Baigmohammadi, Hootan) (Entered: 12/04/2023) |

| 12/04/2023 | 90 | STIPULATION and PROPOSED ORDER for Continuance of Motion Hearing (Amended) re 89 Stipulation and Proposed Order - CR. (Baigmohammadi, Hootan) (Entered: 12/04/2023) |
| 12/05/2023 | 91 | AMENDED STIPULATION AND ORDER RE MOTION HEARING as to Benjamin John Martin. IT IS SO ORDERED that the motion hearing is continued from January 15, 2024, to **January 16, 2024, at 8:30 a.m. in Courtroom 5 before the District Judge**. Order signed by Magistrate Judge Barbara A. McAuliffe on 12/5/2023. (Vue, Yee) (Entered: 12/05/2023) |
| 12/19/2023 | 92 | REPLY/RESPONSE to Defendant's Reply to Government's Opposition to Motion to Dismiss Indictment by USA as to Benjamin John Martin. (Barton, Joseph) (Entered: 12/19/2023) |
| 01/08/2024 | 93 | MINUTE ORDER (Text Only Entry) 75 MOTION to SUPPRESS and 76 MOTION to DISMISS as to Benjamin John Martin set for 1/16/2024 at 10:30 AM in Courtroom 4 (JLT) before District Judge Jennifer L. Thurston signed by District Judge Jennifer L. Thurston on January 8, 2024. (Munoz, I) (Entered: 01/08/2024) |
| 01/16/2024 | 94 | MINUTES (Text Only) for proceedings held before District Judge Jennifer L. Thurston: MOTION TO SUPPRESS 75 and MOTION TO DISMISS 76 HEARING as to Benjamin John Martin held on 1/16/2024. Order to follow. Government Counsel: Michael Tierney, Joseph Barton present. Defense Counsel: Douglas Beevers, Hootan Baigmohammadi present. Custody Status: BOND. Court Reporter/CD Number: ECRO. (Munoz, I) (Entered: 01/17/2024) |
| 01/17/2024 | 95 | MINUTE ORDER (Text Only Entry) The motions to suppress and dismiss (Docs. 75, 76) are taken under submission. Time is excluded under the Speedy Trial Act under 18 USC § 3161(h)(1)(H) signed by District Judge Jennifer L. Thurston on January 17, 2024 as to Benjamin John Martin. (Munoz, I) (Entered: 01/17/2024) |
| 01/18/2024 | 96 | AMENDED MINUTE ORDER: (Text Only Entry) The motions to suppress and dismiss (Docs. 75, 76) are taken under submission. Time is excluded under the Speedy Trial Act under 18 USC § 3161(h)(1)(D) signed by District Judge Jennifer L. Thurston on January 18, 2024 as to Benjamin John Martin. (Munoz, I) Modified on 1/18/2024 (Munoz, I). (Entered: 01/18/2024) |
| 02/06/2024 | 97 | ORDER DENYING Defendant's 75 Motion to Suppress and 76 Motion to Dismiss signed by District Judge Jennifer L. Thurston on 2/5/2024 as to Benjamin John Martin. *Status Conference set for 2/14/2024 at 01:00 PM in Courtroom 8 (BAM) before Magistrate Judge Barbara A. McAuliffe.* (Xiong, J.) (Entered: 02/06/2024) |
| 02/07/2024 | 98 | MINUTE ORDER (TEXT ONLY): In light of the ruling on the Motion to Suppress, counsel are directed to meet and confer and select a mutually convenient date for trial to be discussed at the next hearing date. Minute order signed by Magistrate Judge Barbara A. McAuliffe on 2/7/2024. (Valdez, E) (Entered: 02/07/2024) |
| 02/07/2024 | 99 | STIPULATION and PROPOSED ORDER for Continue Status Conference by USA. (Barton, Joseph) (Entered: 02/07/2024) |
| 02/08/2024 | 100 | STIPULATION and ORDER to Continue Status Conference as to Benjamin John Martin (1) signed by Magistrate Judge Barbara A. McAuliffe on 2/8/2024. Upon the parties' stipulation and for good cause shown, the status conference that is scheduled for February 14, 2024, is continued until **February 28, 2024, at 1:00 p.m. before Magistrate Judge Barbara A. McAuliffe**. Time under the Speedy Trial Act is excluded from February 14, 2024, through February 28, 2024, for defense preparation and continuity of defense counsel pursuant to 18 U.S.C. §§ 3161(h)(7)(A) and (h)(7)(B)(iv). The February 28, 2024 |

| | | |
|---|---|---|
| | | hearing is an *in person* court appearance for counsel and defendant. (Valdez, E) (Entered: 02/08/2024) |
| 02/14/2024 | 101 | MINUTE ORDER (TEXT ONLY): This case is set for a status conference on February 28, 2024. **Counsel are directed to meet and confer and select a mutually convenient date for trial to be discussed at the next hearing date**. **In the status report, each defendant's counsel shall state whether defendant is waiving personal appearance pursuant to Rule 43 <u>and</u> whether the waiver is for all appearances or for a single appearance. For waiver, a Rule 43 waiver motion must be submitted with the status report, and if approved by the Court, the defendant's counsel shall appear by video conferencing. If defendant does not waive appearance, counsel <u>and</u> defendant must appear <u>in person</u> for the hearing**. Alternatively, the parties may stipulate to the trial date, with an appropriate exclusion of time. The stipulation <u>must be filed no later than noon</u> on Wednesday, February 21, 2024, so that the Court may have sufficient time to coordinate inmate movement in the jail(s). <u>If unforeseen circumstances delay the timely submission of the stipulation, the AUSA is instructed to email the courtroom deputy</u>. Minute order signed by Magistrate Judge Barbara A. McAuliffe on 2/14/2024. (Valdez, E) (Entered: 02/14/2024) |
| 02/21/2024 | [102](#) | STIPULATION and PROPOSED ORDER for Setting Jury Trial. (Baigmohammadi, Hootan) (Entered: 02/21/2024) |
| 02/22/2024 | [103](#) | STIPULATION and ORDER Re: Jury Trial as to Benjamin John Martin (1) signed by Magistrate Judge Barbara A. McAuliffe on 02/22/2024. IT IS SO ORDERED that the status conference set for February 28, 2024, is vacated. A jury trial is set for **September 24, 2024, at 8:30 a.m. in Courtroom 5 before the District Court Judge**. Estimate time of trial is 2-3 days. A trial confirmation is set for **September 9, 2024, at 8:30 a.m. in Courtroom 5 before the District Court Judge**. Time is excluded through trial pursuant to 18 U.S.C. § 3161(h)(7)(B)(iv). (Lopez Amador, Corina) (Entered: 02/22/2024) |
| 06/21/2024 | 104 | MINUTE ORDER (TEXT ONLY): The Court sets a **Status Conference for August 14, 2024 at 1:00 p.m. in Courtroom 8 before Magistrate Judge Barbara A. McAuliffe**. The parties shall meet and confer and file a joint status report, *not later than August 12, 2024*, informing the Court of (1) whether the parties anticipate they will be ready to proceed to trial on September 24, 2024 as scheduled; (2) what kind of motions and the number of motions each party anticipates will need to be resolved in advance of trial (e.g., in limine, motion to dismiss, suppression, other motions), (3) a proposed briefing schedule for resolution of the motions in advance of trial, and (4) any other information to aid the Court in keeping the trial date currently scheduled. Time under the Speedy Trial Act has already excluded through trial. Minute order signed by Magistrate Judge Barbara A. McAuliffe on 6/21/2024. (Valdez, E) (Entered: 06/21/2024) |
| 08/12/2024 | [105](#) | JOINT STATUS REPORT by USA as to Benjamin John Martin. (Barton, Joseph) (Entered: 08/12/2024) |
| 08/13/2024 | [106](#) | *Joint Status Report* and STIPULATION and ORDER to Vacate Status Conference as to Benjamin John Martin (1) signed by Magistrate Judge Barbara A. McAuliffe on 8/13/2024. It is so ordered that the status conference is continued from August 14, 2024, to **September 11, 2024, at 1:00 p.m. in Courtroom 8 before Magistrate Judge Barbara A. McAuliffe**. The parties shall be prepared to discuss the status of stipulations of fact and setting a new trial date. Should the parties arrange for a district judge to be assigned to the case and pick a date for the stipulated facts bench trial before the September 11, 2024 conference, they may vacate the hearing. The trial date of September 24, 2024 and trial confirmation of September 9, 2024 are VACATED. Time has already been excluded through September 24, 2024. (Valdez, E) (Entered: 08/13/2024) |

| | | |
|---|---|---|
| 08/20/2024 | 107 | STIPULATION and PROPOSED ORDER for Schedule Stipulated Facts Bench Trial and Vacate Status Conference by USA. (Barton, Joseph) (Entered: 08/20/2024) |
| 08/20/2024 | 108 | ORDER TO SCHEDULE STIPULATED FACTS BENCH TRIAL AND VACATE STATUS CONFERENCE as to Benjamin John Martin signed by District Judge Jennifer L. Thurston on August 20, 2024. Bench Trial set for 9/10/2024 at 09:00 AM in Courtroom 4 (JLT) before District Judge Jennifer L. Thurston. Status Conference currently set for 9/11/2024 before Judge McAuliffe is VACATED. (Munoz, I) (Entered: 08/20/2024) |
| 08/27/2024 | 109 | STIPULATION and PROPOSED ORDER for Jury Trial Waiver by USA. (Barton, Joseph) (Entered: 08/27/2024) |
| 08/27/2024 | 110 | STIPULATION *of Fact for Bench Trial* by USA. (Barton, Joseph) (Entered: 08/27/2024) |
| 08/28/2024 | 111 | Jury Trial Waiver and ORDER WAIVING Jury Trial, signed by District Judge Jennifer L. Thurston on 8/28/2024 as to Benjamin John Martin. (Marrujo, C) (Entered: 08/28/2024) |
| 09/06/2024 | 112 | PROPOSED JURY INSTRUCTIONS by Benjamin John Martin. (Baigmohammadi, Hootan) (Entered: 09/06/2024) |
| 09/07/2024 | 113 | BRIEF by USA as to Benjamin John Martin. (Barton, Joseph) (Entered: 09/07/2024) |
| 09/09/2024 | 114 | MEMORANDUM by Benjamin John Martin in Opposition to Govt's Motion for Remand re 113 Brief filed by USA. (Attachments: # 1 Exhibit A, Email from Mr. Martin's Sister) (Baigmohammadi, Hootan) (Entered: 09/09/2024) |
| 09/10/2024 | 115 | MINUTES (Text Only) for proceedings held before District Judge Jennifer L. Thurston: BENCH TRIAL held on 9/10/2024 as to Benjamin John Martin (1) Count 1. Oath Given. Waiver of jury trial accepted. Waiver of opening statements. STIPULATED FACTS read into the record [Doc. 110] accepted by the Court. Waiver of closing statements. The Court ruled from the bench and the rulings are preserved on the record. The Court FOUND the defendant guilty on Count 1. Sentencing set for 11/25/2024 at 09:00 AM in Courtroom 4 (JLT) before District Judge Jennifer L. Thurston. USA request remand [Doc. 113]. Defendant filed opposition. The defendant will remain on Pretrial supervision. Government Counsel: Joseph Barton, Robert Veneman-Hughes present. Defense Counsel: Hootan Baigmohammadi, Douglas Beevers present. Custody Status: BOND. Court Reporter/CD Number: ECRO. (Munoz, I) (Entered: 09/10/2024) |
| 10/15/2024 | 116 | *(TO BE VIEWED BY ASSIGNED COUNSEL ONLY)* DISCLOSED PRESENTENCE INVESTIGATION REPORT (DRAFT) as to Benjamin John Martin. Informal objections shall not be submitted via CM/ECF and shall be in compliance with the sentencing schedule and pursuant to Local Rule 461. (Lopez, N) (Entered: 10/15/2024) |
| 11/04/2024 | 117 | SENTENCING PRESENTENCE INVESTIGATION REPORT (FINAL) as to Benjamin John Martin. (Attachments: # 1 Defendant's Informal Objections, # 2 Response to Defendant's Informal Objections, # 3 Sentencing Recommendation) (Lopez, N) (Entered: 11/04/2024) |
| 11/12/2024 | 118 | OBJECTION to PRESENTENCE REPORT by Benjamin John Martin. (Attachments: # 1 Declaration of Edward Gramespacher #2, # 2 Exhibit A, Nikoui C.V.) (Baigmohammadi, Hootan) (Entered: 11/12/2024) |
| 11/20/2024 | 119 | SENTENCING MEMORANDUM by USA as to Benjamin John Martin. (Barton, Joseph) (Entered: 11/20/2024) |
| 11/20/2024 | 120 | SENTENCING MEMORANDUM by Benjamin John Martin. (Attachments: # 1 Exhibit A, Character Letters, # 2 Exhibit B, Receipts) (Baigmohammadi, Hootan) (Entered: 11/20/2024) |

| 11/21/2024 | 121 | DECLARATION of EDWARD ALLEN GRAMESPACHER filed by Benjamin John Martin. (Baigmohammadi, Hootan) (Entered: 11/21/2024) |
| 11/25/2024 | 122 | MINUTES (Text Only) for proceedings held before District Judge Jennifer L. Thurston: SENTENCING held on 11/25/2024 for Benjamin John Martin (1) Count 1 CUSTODY: 38 months. Special Assessment $100. SUPERVISED RELEASE: 24 months with conditions. Prison: Fresno, CA. Preliminary Order of Forfeiture-GRANTED. Appeal Rights Given. Defendant shall self surrender by 12:00pm on 1/22/2025. DEFENDANT TERMINATED. CASE CLOSED. Government Counsel: Joseph Barton present. Defense Counsel: Douglas Beevers, Hootan Baigmohammadi present. Custody Status: BOND. Court Reporter/CD Number: ECRO. (Munoz, I) (Entered: 11/25/2024) |
| 11/26/2024 | 123 | EXHIBITS *A-E re 11/25/24 Judgment and Sentencing* filed by Benjamin John Martin. (Baigmohammadi, Hootan) (Entered: 11/26/2024) |
| 11/26/2024 | | RECEIPT number 100004056 for $100.00 for Special Assessment from Benjamin John Martin. (Lundstrom, T) (Entered: 11/26/2024) |
| 11/27/2024 | 124 | NOTICE of APPEAL by Benjamin John Martin. (Baigmohammadi, Hootan) (Entered: 11/27/2024) |
| 11/27/2024 | 125 | APPEAL PROCESSED to Ninth Circuit re 124 Notice of Appeal filed by Benjamin John Martin. Filed dates for Notice of Appeal *11/27/2024* and Appealed Order / Judgment *11/25/2024*. Court Reporter: *ECRO*. *Fee Status: Not Paid - Billed* Bill for fees due sent to *Benjamin John Martin* (Attachments: # 1 Appeal Information, # 2 Bill for Appeal Fee) (Marrujo, C) (Entered: 11/27/2024) |
| 11/27/2024 | 126 | TRANSCRIPT REQUEST for proceedings held on 11/25/24 before Judge Jennifer L. Thurston. Court Reporter ECRO-Fresno. (Baigmohammadi, Hootan) (Entered: 11/27/2024) |
| 11/27/2024 | 127 | AMENDED TRANSCRIPT REQUEST re 126 for proceedings held on 11/25/24 before Judge Jennifer L. Thurston. Court Reporter ECRO-Fresno. (Baigmohammadi, Hootan) (Entered: 11/27/2024) |
| 11/29/2024 | 128 | USCA CASE NUMBER 24-7203 for 124 Notice of Appeal filed by Benjamin John Martin. (Marrujo, C) (Entered: 12/02/2024) |
| 12/04/2024 | 129 | JUDGMENT and COMMITMENT signed by District Judge Jennifer L. Thurston on December 4, 2024 as to Benjamin John Martin. (Munoz, I) (Entered: 12/04/2024) |
| 12/04/2024 | 130 | TRANSCRIPT of Proceedings as to Benjamin John Martin held on **11/25/2024**, before District Judge Jennifer L. Thurston. **SENTENCING HEARING** filed by ECRO, Phone number 559-499-5928 or 559-499-5290, E-mail Fresno_ECRO@caed.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction must be filed within 5 court days. Redaction Request due 12/26/2024. Redacted Transcript Deadline set for 1/6/2025. Release of Transcript Restriction set for 3/6/2025. (Rosales, O.) (Entered: 12/04/2024) |
| 12/10/2024 | 131 | TRANSCRIPT REQUEST for proceedings held on 09/08/2021, 01/16/2024, 09/10/2024 before Judge Hon. Erica P. Grosjean, Hon. Jennifer L. Thurston. Court Reporter ECRO-Fresno. (Crager, Mia) (Entered: 12/10/2024) |
| 12/23/2024 | 132 | AMENDED JUDGMENT signed by District Judge Jennifer L. Thurston on December 23, 2024 as to Benjamin John Martin (1). (Attachments: # 1 Reason for Amendment) (Munoz, I) (Entered: 12/23/2024) |

| 01/07/2025 | 133 | MOTION for Bail Pending Appeal by Benjamin John Martin. Motion Hearing set for 1/21/2025 at 09:00 AM before District Judge Jennifer L. Thurston. (Baigmohammadi, Hootan) (Entered: 01/07/2025) |
|---|---|---|
| 01/14/2025 | 134 | OPPOSITION by USA to 133 Motion for Miscellaneous Relief. (Barton, Joseph) (Entered: 01/14/2025) |
| 01/15/2025 | 135 | TRANSCRIPTION of Proceedings as to Benjamin John Martin held on 09-08-2021, DETENTION HEARING AND INITIAL APPEARANCE ON THE COMPLAINT, before Magistrate Judge Erica P. Grosjean, filed by Court Reporter Rachael Lundy, Phone number 559-207-1072 E-mail rlundy.csr@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction must be filed within 5 court days. Redaction Request due 2/6/2025. Redacted Transcript Deadline set for 2/18/2025. Release of Transcript Restriction set for 4/17/2025. (Deputy Clerk rl) (Entered: 01/15/2025) |
| 01/15/2025 | 136 | TRANSCRIPTION of Proceedings as to Benjamin John Martin held on 01-16-2024, MOTION TO DISMISS and MOTION TO SUPPRESS HEARING, before District Judge Jennifer L. Thurston, filed by Court Reporter Rachael Lundy, Phone number 559-207-1072 E-mail rlundy.csr@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction must be filed within 5 court days. Redaction Request due 2/6/2025. Redacted Transcript Deadline set for 2/18/2025. Release of Transcript Restriction set for 4/17/2025. (Deputy Clerk rl) (Entered: 01/15/2025) |
| 01/15/2025 | 137 | TRANSCRIPTION of Proceedings as to Benjamin John Martin held on 09-10-2024, BENCH TRIAL, before District Judge Jennifer L. Thurston, filed by Court Reporter Rachael Lundy, Phone number 559-207-1072 E-mail rlundy.csr@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction must be filed within 5 court days. Redaction Request due 2/6/2025. Redacted Transcript Deadline set for 2/18/2025. Release of Transcript Restriction set for 4/17/2025. (Deputy Clerk rl) (Entered: 01/15/2025) |
| 01/21/2025 | 138 | MINUTES (Text Only) for proceedings held before District Judge Jennifer L. Thurston: 133 MOTION for Bail Pending Appeal filed by Benjamin John Martin held on 1/21/2025. Motion is DENIED. Government Counsel: Joseph Barton present. Defense Counsel: Hootan Baigmohammadi present. Custody Status: BOND. Court Reporter/CD Number: Rachel Lundy. (Deputy Clerk IM) (Entered: 01/21/2025) |
| 01/21/2025 | 139 | TRANSCRIPT REQUEST for proceedings held on January 21, 2025 before Judge Jennifer L. Thurston. Court Reporter Rachael Lundy. (Baigmohammadi, Hootan) (Entered: 01/21/2025) |
| 01/27/2025 | 140 | TRANSCRIPT of Proceedings as to Benjamin John Martin held on 01-21-2025, Motions Hearing, before District Judge Jennifer L. Thurston, filed by Court Reporter Rachael Lundy, Phone number 559-207-1072 E-mail rlundy.csr@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction must be filed within 5 court days. Redaction Request due 2/18/2025. Redacted Transcript Deadline set for |

| | | 2/27/2025. Release of Transcript Restriction set for 4/28/2025. (Deputy Clerk rl) (Entered: 01/27/2025) |
|---|---|---|
| 01/31/2025 | 141 | COLLATERAL RETURNED as to Benjamin John Martin: 6 USA Passport No. 561698547 Returned to U.S. Department of State. (Deputy Clerk EF) (Entered: 01/31/2025) |
| 02/03/2025 | 142 | MEMORANDUM by Benjamin John Martin. (Attachments: # 1 Exhibit A) (Baigmohammadi, Hootan) (Entered: 02/03/2025) |
| 02/11/2025 | 143 | TRANSCRIPT REQUEST for proceedings held on 11/25/2024 before Judge JLT. Court Reporter ECRO-Fresno. (Tierney, Michael) (Entered: 02/11/2025) |

**PACER Service Center**

**Transaction Receipt**

02/13/2025 12:49:22

| PACER Login: | appealsqueen | Client Code: | |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 1:21-cr-00228-JLT-BAM |
| Billable Pages: | 16 | Cost: | 1.60 |