## NO. 24-7203

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

# UNITED STATES OF AMERICA,

*Plaintiff/Appellee,*

**v.**

# BENJAMIN JOHN MARTIN,

*Defendant-Appellant,*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
CR No. 1:21-cr-00228-NODJ-BAM
No District Court Judge Assigned**

———————

## APPELLANT'S OPENING BRIEF

———————

**\*GEORGE T. PALLAS, P.A**
  **2420 SW 22nd Street**
  **Miami, FL 33145**
  **305-856-8580**
  **george@pallaslaw.com**

  **Carolyn A. Stewart**
  **1204 Swilley Road**
  **Plant City, FL 33567**
  **813-659-5178**
  **Carolstewart_esq@protonmail.com**
  *Counsel for Defendant- Appellant*

**TABLE OF CONTENTS**

JURISDICTION AND BAIL STATUS.................................................................. 1

STATEMENT OF THE ISSUES ........................................................................1

STATEMENT OF THE CASE ........................................................................ 2

STATEMENT OF FACTS ...............................................................................5

SUMMARY OF ARGUMENT .......................................................................11

STANDARD OF REVIEW ............................................................................14

ARGUMENT ...............................................................................................15

    I. THE PRESIDENTIAL PARDON OF JANUARY 20, 2025, APPLIES TO THIS CASE AND REQUIRES THAT THE CONVICTION BE VACATED …………………………………………………………...15

    II. 18 U.S.C. § 922(g)(9) VIOLATES THE SECOND AMENDMENT UNDER *NEW YORK STATE RIFLE & PISTOL ASS'N V. BRUEN*……20

    III. THE DISTRICT COURT ERRED IN DENYING THE MOTION TO SUPPRESS BECAUSE FEDERAL AGENTS CONDUCTED AN ILLEGAL SEARCH ..................................................................................29

CONCLUSION ............................................................................................34

CERTIFICATE OF COMPLIANCE ..............................................................36

CERTIFICATE OF SERVICE .......................................................................36

STATEMENT OF RELATED CASES ............................................................36

ADDENDUM - STATUTORY AND CONSTITUTIONAL PROVISIONS ........37

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. Gant*, 556 U.S. 332 (2009) ...................................................29

*Arizona v. Hicks*, 480 U.S. 321 (1987) ........................................13, 30, 31

*Biddle v. Perovich*, 274 U.S. 480 (1927) .............................................19

*Bjerkan v. United States*, 529 F.2d 125 (7th Cir. 1975) .....................................16

*California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316 (1997) ...................................................16

*Carlisle v. United States*, 517 U.S. 416 (1996) ...................................................14

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ........ …………….……….21

*Duncan v. Walker*, 533 U.S. 167 (2001) .............................................18

*Ex parte Garland*, 71 U.S. (4 Wall.) 333 (1866) .......................................15, 19, 20

*Herrera v. Collins*, 506 U.S. 390 (1993) ..........................................19, 20

*Horton v. California*, 496 U.S. 128 (1990) .............................................30

*Illinois v. Gates*, 462 U.S. 213 (1983) .............................................30

*In re North*, 62 F.3d 1434 (D.C. Cir. 1994) ...................................................20

*In re Murray Energy Holdings Co.,* 662 B.R. 604 (S.D.Ohio 2024)………….16

*Jones v. United States*, 529 U.S. 848 (2000) .....................................................30

*Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019) (Barrett, J., dissenting) ...............22

*Knote v. United States*, 95 U.S. 149 (1877) .......................................16

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) .....................................23

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992) .........................16

*New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) ................1, 3, 20

*Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) (en banc), *vacated and remanded*, 144 S. Ct. 1480 (2024) .................................................................22

*Scarborough v. United States*, 431 U.S. 563 (1977) ......................................30

*Schick v. Reed*, 419 U.S. 256 (1974) ................................................................15

*United States v. Baker*, 894 F.2d 1144 (10th Cir. 1990) .................................33

*United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013) ..................................14

*United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024) (panel decision), *reh'g en banc granted*, 2024 WL 3259688 (9th Cir. July 3, 2024) ................14, 22

*United States v. Karo*, 468 U.S. 705 (1984) ...................................................34

*United States v. King*, 687 F.3d 1189 (9th Cir. 2012) ...................................14

*United States v. Lopez*, 514 U.S. 549 (1995) ...................................................30

*United States v. Rahimi*, 144 S. Ct. 1889 (2024) ..........................................12, 25

*United States v. Wilson*, 32 U.S. (7 Pet.) 150 (1833) .....................................16, 19

*Wong Sun v. United States*, 371 U.S. 471 (1963) ...............................................34

**Constitutional Provisions**

U.S. Const. art. II, § 2, cl. 1 ...............................................................................15

U.S. Const. amend. IV ........................................................................... *passim*

**Statutes**

18 U.S.C. § 922(g) ................................................................. *passim*

18 U.S.C. § 922(g)(8) ...................................................................25

18 U.S.C. § 922(g)(9) ...........................................1, 2, 3, 4, 10, 20, 23, 35

18 U.S.C. § 3231 ..................................................................... 1

18 U.S.C. § 3742(a) ................................................................. 1

28 U.S.C. § 1291 ..................................................................... 1

Cal. Penal Code § 29805 ..................................................................28

Omnibus Consolidated Appropriations Act of 1997,

Pub. L. No. 104-208, § 658, 110 Stat. 3009, 3009-371 to -372 (1996)

(Lautenberg Amendment) ...................................................................27

## JURISDICTION AND BAIL STATUS

The United States District Court for the Eastern District of California had jurisdiction under 18 U.S.C. § 3231. On November 25, 2024, the district court entered judgment convicting the Appellant, Benjamin John Martin, of possession of a firearm by a person convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. § 922(g)(9), and sentenced him to 38 months imprisonment followed by 24 months of supervised release. (ER-033-4). Mr. Martin filed a timely notice of appeal on November 27. 2024. (ER-187). This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

Martin is currently on bail pending this appeal pursuant to the agreement of the parties and this Court's order.

## STATEMENT OF ISSUES

1. Whether the Presidential Pardon issued on January 20, 2025, which pardons individuals convicted of offenses "related to events that occurred at or near the United States Capitol" on January 6, 2021, applies to Mr. Martin's conviction for firearm possession, where federal agents discovered the firearms only because they were executing a search warrant in connection with Mr. Martin's January 6th case.

2. Whether 18 U.S.C. § 922(g)(9) violates the Second Amendment on its face and as applied to Mr. Martin under *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), where the statute imposes a permanent, nationwide ban on firearm

1

possession, including in one's home for self-defense, based on a predicate misdemeanor conviction for domestic battery that requires no actual violence and where no weapons, much less firearms, were possessed or used.

3. Whether Mr. Martin's Fourth Amendment rights were violated where federal agents seized firearms without probable cause that a federal crime had been committed, as they had not yet determined whether the firearms had traveled in interstate commerce—a necessary jurisdictional element of the offense.

## STATEMENT OF THE CASE

### A. Nature of the Case

This is a criminal appeal from a conviction for a single count of possession of a firearm by a person convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. § 922(g)(9).

### B. Course of Proceedings Below

Mr. Martin attended the "Stop the Steal" rally in Washington, D.C. on January 6, 2021. That peaceful exercise of his First Amendment rights led to the FBI seeking warrants to search his residence. On September 2, 2021, federal agents executed these warrants at Mr. Martin's residence in Madera County, California. (ER-67-19-20, 182:28. 183:1-2). During that search, agents discovered firearms by prying open a locked safe in Mr. Martin's garage. (ER-67-68, 183:19-28). On top of the safe was one round of Santa Barbara 7.62 X 51 mm ammunition. (68:1-2).

2

Mr. Martin was indicted on one count of possession of a firearm and ammunition by a person convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. § 922(g)(9). (ER-175). His predicate conviction was a 2018 California misdemeanor for battery under California Penal Code § 243(e)(1). (ER-68:15-6, 175:27, 176:1-4). He was also indicted in the District of Columbia on September 8, 2021, for the events at the U.S. Capitol. (Case No. 1:21-cr-00562-RC, Dkt. 5).

On January 16, 2024, Mr. Martin moved to dismiss the indictment, arguing that § 922(g)(9) violates the Second Amendment both facially and as applied under *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). (ER-128). The district court denied this motion as well. (ER-70).

At the same hearing, Mr. Martin's motion to suppress evidence was heard, where counsel argued that federal agents lacked probable cause to seize the firearms without first obtaining a warrant because they could not determine whether the firearms had traveled in interstate commerce without examining their markings and serial numbers. (ER-156). The district court denied the motion. (ER-70).

On September 10, 2024, Mr. Martin proceeded to a bench trial on stipulated facts. (ER-43, 67). The court found him guilty. (ER-33).

On November 25, 2024, the district court sentenced Mr. Martin to 38 months imprisonment followed by 24 months of supervised release. (ER-33). The court

3

granted voluntary surrender, ordering Mr. Martin to surrender by noon on January 22, 2025. (ER-33).

## C. Post-Judgment Proceedings

On January 20, 2025, President Donald Trump issued a pardon to individuals convicted of offenses "related to events that occurred at or near the United States Capitol" on January 6, 2021. (ER-3-7).

The next day, on January 21, 2025, Mr. Martin moved for bail pending appeal and requested that the district court rescind the self-surrender order, arguing the pardon applied to both his January 6th case and the firearms case. (ER-9). Defense counsel argued there was a clear nexus between the January 6th events and the firearms case because agents were executing a search warrant for the January 6th case when they discovered the firearms. (ER-9).

The district court found that the pardon was specific to "events that occurred at or near the United States Capitol" and did not apply to possessing weapons in California. (ER-9). The court denied the motion for bail pending appeal. (ER-8). Mr. Martin timely appealed. (ER-187).

## D. Disposition Below

The district court entered judgment finding Mr. Martin guilty of violating 18 U.S.C. § 922(g)(9) and sentenced him to 38 months imprisonment followed by 24 months of supervised release. (ER-33).

## STATEMENT OF FACTS

### A. The January 6th Investigation and Search

On September 2, 2021, federal agents executed search warrants at Mr. Martin's residence in Madera County, California. (ER-67:19-20). The search warrants were issued in connection with an investigation into Mr. Martin's alleged participation in events at the United States Capitol on January 6, 2021. (ER 182:27, 183:1-2).

### B. Discovery of Firearms

During the search, agents discovered a large safe in the attached garage of Martin's residence. (ER-183:9). On top of the safe was one round of Santa Barbara 7.62 X 51 mm ammunition. (68:3). Inside the safe, agents found multiple firearms, including:

- A Benelli 12-gauge shotgun, Model Super Black Eagle II, serial number U452103B

- A Kimber 45 Caliber Pistol, Model Raptor 2, serial number KR85106

- Additional firearms which were never determined to have travelled in interstate commerce.

(ER-67:25-7, 183:22-27).

The safe also contained Mr. Martin's United States passport, birth certificate, and various other documents pertaining to him. (ER-67:1-2, 184:1-9).

5

In a recorded jail call on September 2, 2021, Mr. Martin referred to the safe as "my big one." (ER-67:22-3).

## C. Mr. Martin's Prior Conviction

On or about December 21, 2018, Mr. Martin was convicted in Fresno County Superior Court, case number F18901304, of battery committed against a spouse with whom the defendant was cohabiting, in violation of California Penal Code Section 243(e)(1). (ER-68:15-6, 184:26-8, 185:1-8). California Penal Code § 243(e)(1) is an offense that requires only "the slightest touching" and does not require any act of physical force or actual violence. (ER-130, FN 2).

## D. Ownership of Firearms

Several of the firearms found in the safe belonged to William Gramespacher, Mr. Martin's girlfriend's father. (ER-41-2). Mr. Gramespacher provided these firearms to his daughter, who placed them in the safe in their cases. Id.

Martin was not present when the firearms were placed in the safe. Gramespacher did not give Mr. Martin permission to touch or control his firearms. At the time agents opened the safe, several of Mr. Gramespacher's firearms remained in their cases, undisturbed. Photographic evidence shows these three firearms cases were unopened when agents discovered them. (ER-40).

Martin admitted to knowingly possessing the two (2) firearms and the ammunition in question alleged in the indictment. (ER-68:4)

**E. The Interstate Commerce Element**

The two (2) firearms and ammunition alleged in the indictment had previously been transported in interstate or foreign commerce. (ER-68:5-6). However, at the time agents initially observed the firearms in the safe, they had not yet turned the firearms over to examine their serial numbers and markings to determine whether they had, in fact, traveled in interstate commerce. (ER-123:18-24). Some of the firearms found could not ultimately be charged federally because investigators were unable to establish that they had crossed state lines. (ER-126:22-24).

**F. Motion to Suppress Hearing**

On January 16, 2024, the district court held a hearing on Mr. Martin's motion to suppress. (ER-79). Counsel for Martin argued that federal officers needed probable cause of a federal crime before seizing the firearms, and that the jurisdictional element requiring interstate travel is a necessary constitutional element of federal firearms offenses. Counsel argued that the agent needed a warrant before turning over the firearms to examine their markings because the agent could not know whether a federal offense had been committed without first determining the interstate nexus.

The government argued that officers do not need evidence of every element of an offense to establish probable cause. The district court denied the motion to suppress. (ER-70).

7

## G. Motion to Dismiss Hearing

At the same hearing, Mr. Martin motion to dismiss the indictment on Second Amendment grounds under *Bruen* was heard. (ER-79). Counsel for Martin argued that under *Bruen* step one, the Second Amendment's plain text covers Mr. Martin's conduct of possessing firearms in the home, making his conduct presumptively protected. Under *Bruen* step two, counsel argued, the government failed to identify a distinctly similar or relevantly similar historical analog to § 922(g)(9). The government's burden, defense counsel explained, was to identify historical regulations analogous to § 922(g)(9) using the "how" and "why" metrics established in *Bruen*: how the historical regulation burdened the right to armed self-defense, and why the regulation was justified.

Defense counsel maintained that the government's cited historical analogues were insufficient:

**Pennsylvania Ratifying Convention Proposal**: This proposal did not become law and therefore is not well-established or representative of founding-era understanding. That the Founders rejected this proposal is evidence they did not view such limitations as consistent with the Second Amendment.

**Going Armed to the Terror of the People Statutes**: These prohibited certain types of public carry of rare dangerous weapons but did not constitute an absolute lifetime deprivation of the right to possess firearms. They said nothing about home

8

possession for self-defense. The "why" was also different—protecting general public order versus protecting a small subset of domestic violence victims.

**Surety Bond Laws**: These laws did not disarm anyone; they required posting a bond to keep the peace but did not take away firearms. This is "diametrically opposed" to § 922(g)(9), which imposes an absolute lifetime deprivation.

Defense counsel emphasized that § 922(g)(9) requires no actual violence—only "the slightest touching"—unlike traditional crimes of violence that require acts of physical force. Mr. Martin's predicate offense under California Penal Code § 243(e)(1) has the same minimal definition.

Defense counsel further argued that the government's "dangerousness" rationale is not a substitute for faithful *Bruen* analysis, which requires examining the specific "how" and "why" of historical regulations. While some dangerous conduct historically led to disarmament, not all did, and the Court cannot take a shortcut by simply saying something is dangerous and therefore must lead to disarmament.

The government responded that there is a historical tradition of disarming dangerous people, citing the Militia Act of 1662 from England, going armed statutes, and surety bond laws.

The district court took the motion under submission and subsequently denied it. (ER-70).

## H. Bench Trial on Stipulated Facts

On September 10, 2024, Mr. Martin proceeded to a bench trial on a stipulated set of facts. (ER-67-8). Based on the stipulated facts, the district court found Mr. Martin guilty of violating 18 U.S.C. § 922(g)(9).

## I. Sentencing

On November 25, 2024, the district court imposed a sentence of 38 months' imprisonment followed by 24 months of supervised release. (ER-33). The court granted voluntary surrender, ordering Mr. Martin to surrender to the Bureau of Prisons by noon on January 22, 2025. (ER-11:17-20).

## J. The Presidential Pardon and Post-Judgment Motion

On January 20, 2025, President Donald Trump issued a pardon stating: "I hereby grant a full and unconditional pardon to all individuals convicted of offenses **related to** events that occurred at or near the United States Capitol on January 6, 2021." (ER-7) (emphasis added).

On January 21, 2025, Mr. Martin moved for bail pending appeal and requested that the district court rescind the self-surrender order, arguing the pardon applied to both his January 6th case and the firearms case. (ER-9, 25). Defense counsel argued there was a clear nexus between the January 6th events and the firearms case because agents were executing a search warrant solely for the January 6th case when they discovered the firearms, and the firearms case would not have occurred but for Mr.

10

Martin's involvement in the January 6th investigation. (ER-9-24).

The district court construed the pardon language narrowly; found it was specific to "events that occurred at or near the United States Capitol" and did not apply to possessing weapons in California. (ER-9:13-21). The court denied the motion for bail pending appeal. (ER-8).

## SUMMARY OF ARGUMENT

### I. The Presidential Pardon Applies

The Presidential Pardon issued on January 20, 2025, pardons individuals convicted of offenses "related to events that occurred at or near the United States Capitol" on January 6, 2021. The phrase "related to" must be given its ordinary, broad meaning under principles of pardon construction.

Mr. Martin's firearms conviction is directly and inextricably related to the January 6th events. Federal agents discovered the firearms *only* because they were executing a search warrant for the January 6th investigation. ***But for*** Mr. Martin's presence at the Capitol, the firearms would never have been found, charged, or prosecuted. The causal connection is clear and direct.

The pardon power is plenary and must be construed liberally in favor of the person pardoned. The district court's narrow construction contradicts both the pardon's plain text and the President's evident intent to provide comprehensive relief to January 6th defendants. This Court should hold that the pardon applies and

11

remand with instructions to vacate the conviction.

## II. Section 922(g)(9) Violates the Second Amendment

Under *Bruen*'s mandatory framework, Mr. Martin's conduct—keeping firearms in a locked safe in his home for self-defense—falls within the Second Amendment's plain text and is therefore presumptively protected. The burden shifts to the government to identify historical regulations from the founding era that are "relevantly similar" to §922(g)(9)'s permanent, nationwide ban on all firearm possession.

The government cannot meet this burden. The historical regulations cited—a rejected constitutional proposal, "going armed to the terror of the people" statutes, and surety bond laws—are not relevantly similar under *Bruen*'s "how" and "why" metrics. Those regulations imposed temporary, limited restrictions on threatening public carry after individualized findings of dangerousness. Section 922(g)(9) imposes a permanent ban on all possession, including in the home, based solely on a past misdemeanor conviction requiring no actual violence.

*United States v. Rahimi*, which upheld § 922(g)(8), does not save § 922(g)(9). The Supreme Court in *Rahimi* emphasized repeatedly that § 922(g)(8)'s prohibition is temporary—lasting only as long as a restraining order remains in effect after an individualized judicial finding of ongoing threat. Section 922(g)(9) has no such temporal limitation or individualized finding. It is a permanent lifetime ban triggered

automatically by a misdemeanor conviction, with no mechanism for restoration of rights.

The statute is also unconstitutional as applied to Mr. Martin. His predicate offense occurred in 2018 and involved only California's minimal "slightest touching" standard. He has not engaged in violence for seven years. He demonstrated perfect compliance during three years of pretrial supervision. The firearms were locked in a safe in his home. Under these circumstances, the permanent prohibition violates the Second Amendment's core protection.

## III. The Search Violated the Fourth Amendment

Federal agents seized the firearms before establishing probable cause that a federal crime had been committed. At the moment of seizure, agents had not examined the firearms' serial numbers or markings and therefore could not know whether they had traveled in interstate commerce—a necessary jurisdictional element that converts possession from a potential state offense into a federal crime. The government conceded that some firearms ultimately could not be federally charged because the interstate nexus could not be established. This proves that the jurisdictional element was not "immediately apparent" from plain view. Under *Arizona v. Hicks*, officers cannot manipulate or further examine items to establish probable cause—the incriminating nature must be immediately apparent without additional investigation.

Federal officers cannot conduct warrantless seizures based on suspected state crimes and then retroactively establish federal jurisdiction through post-seizure investigation. The proper procedure would have been to obtain a warrant after establishing probable cause of the interstate nexus. The evidence should be suppressed.

## STANDARD OF REVIEW

**Presidential Pardon**: This Court reviews questions of law, including the interpretation and scope of a presidential pardon, de novo. *Carlisle v. United States*, 517 U.S. 416, 426 (1996).

**Second Amendment Challenge**: This Court reviews constitutional challenges to federal statutes de novo. *United States v. Chovan*, 735 F.3d 1127, 1133 (9th Cir. 2013). The district court's denial of a motion to dismiss on Second Amendment grounds is reviewed de novo. *United States v. Duarte*, 101 F.4th 657, 661 (9th Cir. 2024).

**Motion to Suppress**: This Court reviews the district court's denial of a motion to suppress for clear error as to underlying factual findings but reviews de novo the ultimate determination of probable cause. *United States v. King*, 687 F.3d 1189, 1195 (9th Cir. 2012).

**ARGUMENT**

**I.      THE PRESIDENTIAL PARDON OF JANUARY 20, 2025,
         APPLIES TO THIS CASE AND REQUIRES DISMISSAL OF THE
         CONVICTION**

**A. The Presidential Pardon Power Is Plenary and Must Be Construed
     Liberally**

The Constitution grants the President sweeping authority: "The President . . .
shall have Power to grant Reprieves and Pardons for Offences against the United
States, except in Cases of Impeachment." U.S. Const. art. II, § 2, cl. 1.  The Supreme
Court has consistently held that the pardon power is "plenary" and virtually
unlimited:

"The power thus conferred is unlimited, with the exception stated. It extends to every
offence known to the law and may be exercised at any time after its commission,
either before legal proceedings are taken, or during their pendency, or after
conviction and judgment."  *Ex parte Garland*, 71 U.S. (4 Wall.) 333, 380 (1866).

A pardon "releases the punishment and blots out of existence the guilt, so that
in the eye of the law the offender is as innocent as if he had never committed the
offence." *Id.* at 380-81. The pardon power includes the authority to grant conditional
pardons, class pardons, and pardons with broad categorical language. *Schick v. Reed*,
419 U.S. 256, 266 (1974).

Importantly, pardons must be construed liberally in favor of the person
pardoned:  "It is well settled that a pardon is to be liberally construed in favor of the

15

person to whom it is granted and that its operation is not to be restricted by a narrow and strict construction of its terms." *United States v. Wilson*, 32 U.S. (7 Pet.) 150 (1833); *Bjerkan v. United States*, 529 F.2d 125, 129 (7th Cir. 1975); *accord Knote v. United States*, 95 U.S. 149, 152 (1877).

## B. "Related To" Has a Broad, Inclusive Meaning

The critical language of the pardon is "related to events that occurred at or near the United States Capitol." (ER-3-7). The phrase "related to" is ordinarily understood to have an expansive scope. The Supreme Court has repeatedly recognized this: "The ordinary meaning of the phrase 'relate to' is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'" *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (quoting Black's Law Dictionary); *see also California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 324 (1997) (same); *cf. In re Murray Energy Holdings Co.,* 662 B.R. 604 (S.D.Ohio 2024) (Test for "related to" bankruptcy jurisdiction is whether outcome of proceeding could have any conceivable effect on debtor).

## C. Mr. Martin's Firearms Conviction Is "Related To" the January 6th Events

Mr. Martin's firearms conviction bears a direct causal relationship to the January 6th events:

**But-For Causation**: The firearms would never have been discovered but for the

16

January 6th investigation. Federal agents executed the search warrant at Mr. Martin's home solely because they were investigating his alleged presence at the Capitol. Without January 6th, there would have been no search, no discovery of firearms, no federal charges, and no conviction.

**Direct Connection**: The firearms were discovered during the execution of a warrant specifically targeting January 6th evidence. The search that uncovered the firearms was itself an "event related to" January 6th.

**Prosecutorial Discretion**: Mr. Martin likely would not have been federally prosecuted for firearm possession absent the January 6th case. The government concedes that the firearms were locked in a safe in his home; he was not armed in public or dealing drugs; and he had no felony record. This prosecution was pursued because of January 6th.

**Parallel Precedent**: The Department of Justice (DOJ) has consistently taken the position in other court filings across that the January 6th Pardon applies to defendants who had charges for contraband found during their respective January 6 searches. Their cases were either dismissed pursuant to a government motion pursuant to Rule 48(a) motion due to the Pardon or the government declining to prosecute:

M.D. Fla.　　- *United States v. Ball*, 24-cr-97
W.D. Tex.　　- *United States v. Guy Reffitt*, 4:22cr289
D. Md.　　　- *United States v. Sattler*, 1:23-cr-00438

M.D. Fla.  - *United States v. Jeremy Brown*, 21-cr-00348 (Limited remand from 11th Circuit for Rule 48(a) dismissal under pardon)

D. Md.  - *United States v. Elias Costianes*, Jr., 21-cr-00458 (Limited remand from 4th Circuit for Rule 48(a) dismissal)

D.D.C.  - *United States v. Bertino*, 22-cr-00329 (weapons charge transferred from Western District of North Carolina to District of Columbia and dismissed along with January 6 offenses.)

This clearly demonstrates the Executive Branch's understanding that firearms charges arising from January 6th investigations fall within the pardon's scope.

## D. The District Court's Interpretation Was Impermissibly Narrow

The district court held that the pardon applies only to conduct that literally occurred "at or near the United States Capitol." (ER-9-24). Under this reading, the phrase "related to events" adds nothing—it becomes mere surplusage.

Moreover, this interpretation violates basic principles of construction. Courts must give effect "to every clause and word" and avoid constructions that render language meaningless. *Duncan v. Walker*, 533 U.S. 167, 174 (2001). If the President intended to pardon only conduct at the Capitol, he could have written: "convicted of offenses that occurred at or near the United States Capitol." Instead, he used the broader phrase "related to events that occurred at or near" the Capitol.

The modifier "related to" expands the pardon's reach beyond the physical location to encompass offenses, as here, with sufficient nexus to the January 6th events.

**E. Presidential Intent Supports a Broad Construction**

The President's intent in issuing the pardon was evidently to provide comprehensive relief to individuals caught up in the January 6th prosecutions. Courts should construe pardons consistent with their evident purpose. *See Biddle v. Perovich*, 274 U.S. 480, 486 (1927). In a recent filing, the United State Attorney for the District of Maryland succinctly summed up the President's intent:

> In the context of President Trump's intent that the pardon will end a "grave national injustice" and begin a "process of national reconciliation," the pardon's remedial purpose will not be achieved if people subjected to January 6-related investigations continue to be prosecuted for certain in-home offenses that would not have been discovered but for those investigations. *U.S v. Wilson*, (D.C. Cir, 25-3041, Doc #2141205 at 20).

Clearly, where, as here, an individual was prosecuted solely because of his connection to January 6th, and the offense would never have been discovered or charged but for that connection, the pardon should apply.

**F. The Pardon Power's Purpose Supports Application Here**

The pardon power serves important constitutional functions:

- **Mercy and Second Chances**: Allowing the Executive to extend grace. *Herrera v. Collins*, 506 U.S. 390, 412 (1993).

- **Political Reconciliation**: Permitting the President to heal national divisions. *See Ex parte Garland*, 71 U.S. at 380-81.

- **Correcting Injustice**: Providing a check on prosecutorial overreach. *United*

19

*States v. Wilson*, 32 U.S. (7 Pet.) 150, 160 (1833).

All three purposes are served by applying the pardon here. Mr. Martin was prosecuted federally for gun possession that likely would not have been charged absent January 6th. Excluding this conviction would be inconsistent with the evident purpose of providing comprehensive relief.

## G. Legal Effect of the Pardon

If this Court concludes the pardon applies, the conviction must be vacated and the case dismissed. A pardon "releases the punishment and blots out of existence the guilt." *Herrera v. Collins*, 71 U.S. at 380-81. The pardon is self-executing. *See In re North*, 62 F.3d 1434, 1437 (D.C. Cir. 1994).

## H. Conclusion on Pardon Issue

The pardon's plain language—"related to events that occurred at or near the United States Capitol"—encompasses Mr. Martin's firearms conviction. The offense was discovered, charged, and prosecuted solely because of the January 6th investigation. The but-for causal connection is direct and undeniable.

Accordingly, this Court should hold that the pardon applies and remand with instructions to vacate the conviction and dismiss the case.

## II. 18 U.S.C. § 922(g)(9) VIOLATES THE SECOND AMENDMENT UNDER *NEW YORK STATE RIFLE & PISTOL ASS'N V. BRUEN*

### A. The Supreme Court's *Bruen* Framework

In *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), the

20

Supreme Court established a new mandatory framework:

"When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24.

This represents a fundamental shift. Courts can no longer balance public safety interests against Second Amendment rights. The government must justify restrictions through historical analysis focused on regulations from the founding era (late 18th century) and the Reconstruction era (mid-to-late 19th century). *Id.* at 26-27, 37.

The government bears the burden of identifying "a well-established and representative historical analogue, not a historical twin." *Id.* at 30. The analogue must be "relevantly similar" based on two metrics: (1) how the historical regulation burdened the right to armed self-defense, and (2) why the government imposed that regulation. *Id.* at 28-29.

**B. Step One: The Second Amendment's Plain Text Covers Mr. Martin's Conduct**

**1. Mr. Martin Remains Part of "The People"**

The Second Amendment protects "the right of the people to keep and bear Arms." U.S. Const. amend. II. In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court held:

"'[T]he people' seems to have been a term of art employed in select parts of the Constitution. . . . All three of these instances unambiguously refer to individual rights, not 'collective' rights."

*Id.* at 579-80.

The *Heller* Court explicitly stated that "the people" refers to "all members of the political community, not an unspecified subset." *Id.* at 580 (emphasis added). This Court's recent panel decision in *United States v. Duarte* confirms that individuals with criminal convictions remain within "the people":

"We hold that Duarte's status as a felon does not remove him from 'the people' guaranteed the right to bear arms by the Second Amendment."

101 F.4th at 664-65.

The Third Circuit has reached the same conclusion in *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023): "We agree with Range that despite his [felony] false statement conviction, he remains among "the people" protected by the Second Amendment." See also *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (then-Judge Barrett dissenting) ("Founding-era legislatures did not strip felons of the right to bear arms simply because of their status as felons.").

If a *felony* conviction does not categorically exclude someone from "the people," a *misdemeanor* conviction certainly cannot. Mr. Martin remains one of "the people" protected by the Second Amendment.

22

## 2. Keeping Arms in the Home Is the Core Right

The Supreme Court has repeatedly emphasized that the "central component" of the Second Amendment is "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635; *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010); *Bruen*, 597 U.S. at 8-9. The Court in *Heller* concluded: "[W]e hold that the District's ban on handgun possession in the home violates the Second Amendment." 554 U.S. at 635.

Mr. Martin's conduct—possessing firearms in a locked safe in the garage of his home—falls within this core protection. He was not carrying firearms in public, brandishing them, threatening anyone, or using them in connection with any crime.

## 3. Conclusion on Step One

Because Mr. Martin remains part of "the people" and his conduct—keeping arms in his home—falls within the plain text of the Second Amendment, his conduct is "presumptively protected" under *Bruen*. 597 U.S. at 24. The burden shifts entirely to the government at step two.

### C. Step Two: The Government Cannot Demonstrate Historical Consistency

## 1. Section 922(g)(9) Imposes an Unprecedented Burden

Section 922(g)(9) provides: "It shall be unlawful for any person ... who has been convicted in any court of a misdemeanor crime of domestic violence, to ... possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. §

23

922(g)(9).

Thus, the statute imposes these severe restrictions:

- **Permanent Duration**: No temporal limitation

- **No Individualized Finding**: Applies automatically upon conviction

- **No Mechanism for Restoration**: No process for restoring rights

- **Nationwide Scope**: Applies everywhere, including as here, in the home

- **Applies to All Possession**: Loaded, unloaded, functional or non-functional

- **Covers Non-Violent Conduct**: Requires only "the slightest touching"

In Mr. Martin's case, the predicate offense—California Penal Code § 243(e)(1)—expressly requires only "the slightest touching" and no actual violence or injury. (ER-130, FN 2). In fact, even though the touching causes no pain or bodily harm or leaves no mark and even though only the feelings of such person are injured by the act, the slightest [unlawful] touching, if done in an insolent, rude, or an angry manner, is sufficient. (Id.).

## 2. The Pennsylvania Proposal Was Rejected

The government relied on a 1788 proposal from Pennsylvania's ratifying convention. This proposal was **never enacted into law**. *Bruen* requires "a well-established and representative historical analogue," not a rejected proposal. 597 U.S. at 30. The Third Circuit addressed this in *Range*: "If anything, the fact that the proposal was not adopted by the [convention] suggests that such a ban was not part

24

of the historical tradition of firearms regulations in this country."  69 F.4th at 106.

Thus, the rejection of this proposal is evidence *against* § 922(g)(9)'s constitutionality.

### 3. "Going Armed" Statutes Are Not Relevantly Similar

The government relies on historical "going armed" statutes.  These statutes fail both prongs of *Bruen*'s test:

**The "How" Prong**: Going armed statutes regulated *conduct*—threatening public carry. They did *not* prohibit home possession, impose lifetime bans, or disarm individuals permanently based on status, as the statute herein does.

As the Third Circuit explained:  "[T]hese laws generally restricted the use of firearms in public, leaving the citizenry free to keep firearms in the home."  *Range*, 69 F.4th at 105.  In contrast, section 922(g)(9) prohibits *all* possessions everywhere, regardless of conduct, based solely on past conviction status.

**The "Why" Prong**: Going armed statutes protected the general public from immediate threats. Section 922(g)(9) protects a small subset—domestic partners— from speculative future harm.

### 4. *United States v. Rahimi* Does Not Save § 922(g)(9)

The government's likely reliance on *United States v. Rahimi*, 144 S. Ct. 1889 (2024), which upheld 18 U.S.C. § 922(g)(8), will be misplaced.  *Rahimi*, as demonstrated below, is clearly distinguishable:

25

**Critical Distinction #1: Temporal Limitation**

The Supreme Court in *Rahimi* emphasized that § 922(g)(8)'s prohibition is *temporary*: "Section 922(g)(8) is ... a *temporary* matter. It applies only for as long as the order is in effect, *usually no more than two years*." *Id.* at 1902-03 (emphasis added). In contrast. section 922(g)(9) has **no temporal limitation**. The prohibition lasts forever.

**Critical Distinction #2: Individualized Finding**

*Rahimi* emphasized that § 922(g)(8) requires an individualized finding: "Section 922(g)(8) applies *only after a court finds* that an individual poses a credible threat to the physical safety of an intimate partner." *Id.* at 1897 (emphasis added). Section 922(g)(9), on the other hand, requires **no such individualized finding**. The prohibition applies automatically.

**Critical Distinction #3: Ongoing Threat vs. Historical Conviction**

In *Rahimi*, the defendant had recently "assault[ed] his girlfriend" and "threatened to shoot her." *Id.* at 1897.

Mr. Martin's predicate conviction occurred in **2018**—more than three years before discovery of the firearms herein. As demonstrated, all that is needed for conviction is only "the slightest touching," resulting in "injured feelings." No weapon, much less a firearm, was used or needs to be used in this misdemeanor offense. Mr. Martin has committed no violence for seven years.

26

**Comparison Table**:

| Feature | § 922(g)(8) (*Rahimi*) | § 922(g)(9) (This Case) |
|---|---|---|
| Duration | Temporary (≤2 years) | **Permanent (lifetime)** |
| Trigger | Court order | Criminal conviction |
| Finding | Individualized threat | **No individualized finding** |
| Violence | Recent threatening conduct | **"Slightest touching" (2018)** |

## 5. Surety Laws Did Not Disarm Anyone

Surety laws required posting a bond. *Bruen*, 597 U.S. at 38-39. The critical point: **surety laws did not disarm anyone**. As *Bruen* held:

"[S]urety statutes did not allow the government to *disarm* individuals. Rather, these statutes allowed the government to require that individuals post a bond before carrying arms in public." 597 U.S. at 38 (emphasis added).

Section 922(g)(9) provides **no such option**. The statute mandates permanent disarmament. The "how" of surety laws—optional financial guarantee—is diametrically opposed to the "how" of § 922(g)(9)—mandatory permanent disarmament.

## 6. Section 922(g)(9) Is a Modern Innovation

Section 922(g)(9) was enacted in **1996**. *See* Omnibus Consolidated Appropriations Act of 1997, Pub. L. No. 104-208, § 658, 110 Stat. 3009 (1996).

27

Prior to 1968, federal law contained **no categorical prohibitions** on firearm possession by convicted persons. This late arrival is fatal under *Bruen*: "[P]ost-ratification adoption or acceptance of laws inconsistent with the original meaning of the constitutional text obviously cannot overcome or alter that text." 597 U.S. at 27.

A statute first enacted **200 years after ratification** simply cannot establish historical tradition.

### 7. Domestic Violence Context Does Not Save the Statute

In *McDonald*, the Court rejected arguments that the Fourteenth Amendment incorporated only rights recognized when women and racial minorities lacked basic rights. 561 U.S. at 778-79. Outdated attitudes toward domestic violence cannot justify unprecedented burdens on Second Amendment rights.

Moreover, California imposes only a **10-year** prohibition following domestic violence convictions. Cal. Penal Code § 29805. If California has determined that 10 years is sufficient, the federal lifetime ban is grossly disproportionate and, as such, cannot stand..

### D. Section 922(g)(9) Is Unconstitutional As Applied

Even if § 922(g)(9) might be constitutional in some applications, it is clearly unconstitutional as applied to Mr. Martin:

- **Predicate Offense**: Required only "the slightest touching"

- **Passage of Time**: 2018 conviction, more than three years before discovery

- **No Violence for Seven Years**:

- **Perfect Compliance**: Three years of pretrial supervision

- **Home Possession Only**: Firearms locked safe in attached garage

- **No Firearm Misuse**: Never used firearms dangerously

Under these circumstances, permanently prohibiting Mr. Martin from possessing firearms in his home violates the Second Amendment's core protection.

### E. Conclusion on Second Amendment

Section 922(g)(9) fails at both steps of *Bruen*'s framework. Mr. Martin's conduct is presumptively protected. The government cannot identify well-established historical analogues relevantly similar under the "how" and "why" metrics. Accordingly, this Court should reverse Mr. Martin's conviction on Second Amendment grounds.

## III. FEDERAL AGENTS CONDUCTED AN ILLEGAL SEARCH
### A. The Fourth Amendment Requires Probable Cause

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. A warrantless seizure is per se unreasonable unless it falls within a recognized exception. *Arizona v. Gant*, 556 U.S. 332, 338 (2009). The plain view doctrine is one such exception. Officers may seize evidence without a warrant when:

1. They are lawfully present

2. The item is in plain view

29

3. The incriminating character is "immediately apparent"

*Horton v. California*, 496 U.S. 128, 136-37 (1990).

For the incriminating character to be "immediately apparent," officers must have **probable cause before** seizing or examining the item. *Arizona v. Hicks*, 480 U.S. 321, 326-27 (1987).

## B. The Interstate Commerce Element Is a Necessary Constitutional Element

Congress's power to regulate firearm possession derives from the Commerce Clause. *United States v. Lopez*, 514 U.S. 549, 559-62 (1995). For § 922(g) prosecutions, the government must prove the firearm "traveled in interstate commerce." *Scarborough v. United States*, 431 U.S. 563, 575-77 (1977).

This is **"a necessary part of the [government's] case"** and **"an essential element of the crime."** *Id.* at 577; *Jones v. United States*, 529 U.S. 848, 854 (2000). Without the interstate commerce element, **there simply is no federal crime**.

## C. Officers Must Have Probable Cause of a *Federal* Crime

To seize property as evidence of a federal crime, federal officers must have probable cause that a **federal** crime has been committed. Probable cause requires "a fair probability that contraband or evidence of a crime will be found." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Mr. Martin is not a convicted felon. Thus, the firearms discovered pursuant to the DC search warrant were not contraband. At the moment officers observed

30

the firearms herein, they had not examined serial numbers or markings. (ER-156-7). They could not know whether the firearms had traveled in interstate commerce. The government implicitly conceded this: most of the firearms ultimately **could not be charged** because investigators could not establish interstate travel. (ER-159-160). If the interstate nexus had been "immediately apparent," this would not have been an issue.

**D.** *Arizona v. Hicks* **Prohibits Manipulation**

In *Arizona v. Hicks*, an officer noticed stereo equipment that seemed out of place. 480 U.S. at 323. He suspected it might be stolen but could not confirm without examining serial numbers. *Id.* at 324. The officer moved the equipment to see the serial numbers. *Id.* The Supreme Court held this violated the Fourth Amendment: "Officer Nelson's moving of the equipment ... did constitute a 'search' separate and apart from the search for the shooter.... The 'distinction' ... is between 'looking' at a suspicious object in plain view and 'moving' it even a few inches." *Id.* at 324-25.

The Court held that **the incriminating nature must be immediately apparent** *before* **any manipulation**: "[I]n order to invoke the plain view doctrine... [the officer must have] probable cause to believe that the equipment was stolen... *before* he moved it." *Id.* at 326-27 (emphasis added).

Officers cannot manipulate items to develop probable cause.

**E. Officers Lacked Probable Cause of a Federal Crime**

31

At the moment officers observed the firearms, they knew:

- Mr. Martin had a prior misdemeanor conviction

- There were firearms in the safe

They did **not** know:

- Whether the firearms had traveled in interstate commerce

- Where they were manufactured

- Whether they qualified for federal charges

To determine the interstate nexus, officers needed to:

1. Open the safe and move the firearms

2. Examine serial numbers and markings

3. Trace them through ATF databases

4. Determine manufacturing location

This is precisely the investigative manipulation *Hicks* prohibits.

### F. The Government's Concession Proves the Point

The dispositive fact is the government's concession: some firearms *could not* be charged because the interstate nexus could not be established. (ER-159-160). If the interstate commerce element had been "immediately apparent," **every firearm** would have been chargeable. The fact that some were not charged establishes that the officers could not determine federal jurisdiction without additional investigation.

### G. State Law Violations Do Not Justify Federal Seizures

The government will likely argue that officers had probable cause of a **state** law violation. However, this argument fails.

**Federal officers cannot obtain federal warrants for state law violations.** *United States v. Baker*, 894 F.2d 1144, 1149-50 (10th Cir. 1990). If federal officers believe only a state crime has been committed, they should contact state authorities for a state warrant. Federal officers cannot conduct warrantless seizures for suspected state crimes and then manufacture federal jurisdiction through post-seizure investigation.

### H. The Proper Procedure

The constitutionally appropriate procedure was:

**Option 1 - State Warrant**: Contact California authorities to obtain a state warrant.

**Option 2 - Federal Warrant**: Apply for a federal search warrant, prior to the manipulation, explaining the need to examine markings to establish interstate commerce.

**What Actually Occurred**: Officers discovered the firearms pursuant to the J6 warrant from DC, then moved the firearms, examined the serial numbers and markings, traced them through ATF databases, all without a warrant, to retroactively establish federal jurisdiction. They then sought a second warrant, from a magistrate in the Eastern District of California, listing the only two (2) firearms that they could determine travelled in interstate commerce. This is exactly what *Hicks* prohibits.

33

## I. The Evidence Should Be Suppressed

Because the initial seizure violated the Fourth Amendment, all evidence derived from that seizure must be suppressed as fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963). This includes the firearms themselves, serial number examinations, ATF trace reports, and manufacturing information.

The government cannot cure a Fourth Amendment violation by subsequently obtaining a warrant based on evidence from the unlawful seizure. *See United States v. Karo*, 468 U.S. 705, 719 (1984) (warrant was ultimately deemed valid based on the untainted information presented in the affidavit).

## J. Conclusion on Fourth Amendment Violation

Federal agents violated the Fourth Amendment by seizing firearms before establishing probable cause that a federal crime had been committed. The interstate commerce element was not "immediately apparent" and could not be determined without examining the firearms' markings. This Court should reverse the conviction and remand with instructions to suppress the evidence.

## CONCLUSION

For the foregoing reasons, Appellant Benjamin John Martin respectfully requests that this Court:

1. **REVERSE** the conviction and **DISMISS** the indictment on the ground that the Presidential Pardon of January 20, 2025, applies to this case; or alternatively,

2. **REVERSE** the conviction and **DISMISS** the indictment on the ground that 18 U.S.C. § 922(g)(9) violates the Second Amendment under *Bruen*; or alternatively,

3. **REVERSE** the conviction and **REMAND** with instructions to **SUPPRESS** the firearm evidence on Fourth Amendment grounds; or alternatively,

4. **GRANT** such other and further relief as the Court deems just and proper.

Respectfully submitted,

GEORGE T. PALLAS, P.A
Counsel for Benjamin Martin
2420 SW 22nd Street
Miami, FL 33145
305-856-8580
305-860-4828 FAX
george@pallaslaw.com
By:/s/ *George T. Pallas*
GEORGE T. PALLAS, ESQ.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and contains fewer than 14,000 words.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been electronically filed with the Clerk of Court using CM/ECF system which will send notification of such filing to all parties.

By:/s/ *George T. Pallas*
GEORGE T. PALLAS

## STATEMENT OF RELATED CASES

*United States v. Martinez*, Case No. 23-432 (9th Circuit Court of Appeals)
Issue on Appeal is the constitutionality of 18 U.S.C. Section 922(g)(9)

# ADDENDUM

# <u>INDEX TO ADDENDUM</u>

January 20, 2025, Presidential Proclamation [DE 142, 142-1]……….App. 1

18 U.S.C. Section 922(g)…………………………………………………App. 2

HEATHER E. WILLIAMS, #122664
Federal Defender
HOOTAN BAIGMOHAMMADI, #279105
Assistant Federal Defender
Designated Counsel for Service
801 I Street, 3rd Floor
Sacramento, CA 95814
Telephone: (916) 498-5700
Fax: (916) 498-5710

Attorneys for Defendant
BENJAMIN MARTIN

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Case No. 1:21-cr-00228-JLT-BAM |
|---|---|---|
| Plaintiff, | ) | **MEMORANDUM** |
| vs. | ) | Date: |
| BENJAMIN MARTIN, | ) | Time: |
| | ) | Judge: Hon. Jennifer L. Thurston |
| Defendant. | ) | |

On January 21, 2025, the Court held a motion hearing for Mr. Martin's Motion for Bail Pending Appeal. At the hearing, the Court and parties discussed President Trump's pardon dated January 20, 2025. The government provided a copy of the pardon to the Court for their review. The parties agree that Exhibit A attached is a copy of the pardon reviewed by the Court and discussed on the record on January 21, 2025.

Date: January 31, 2025

Respectfully submitted,

HEATHER E. WILLIAMS
Federal Defender

/s/ Hootan Baigmohammadi
HOOTAN BAIGMOHAMMADI
Assistant Federal Defender
Attorney for Defendant
BENJAMIN MARTIN

-1-

# Exhibit A

Menu



Search

PRESIDENTIAL ACTIONS

# GRANTING PARDONS AND COMMUTATION OF SENTENCES FOR CERTAIN OFFENSES RELATING TO THE EVENTS AT OR NEAR THE UNITED STATES

# CAPITOL ON JANUARY 6, 2021

January 20, 2025

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

A PROCLAMATION

This proclamation ends a grave national injustice that has been perpetrated upon the American people over the last four years and begins a process of national reconciliation.

Acting pursuant to the grant of authority in Article II, Section 2, of the Constitution of the United States, I do hereby:

(a)  commute the sentences of the following individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021, to time served as of January 20, 2025:

- Stewart Rhodes
- Kelly Meggs
- Kenneth Harrelson
- Thomas Caldwell
- Jessica Watkins
- Roberto Minuta
- Edward Vallejo
- David Moerschel
- Joseph Hackett

- Ethan Nordean
- Joseph Biggs
- Zachary Rehl
- Dominic Pezzola
- Jeremy Bertino

(b)  grant a full, complete and unconditional pardon to all other individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021;

The Attorney General shall administer and effectuate the immediate issuance of certificates of pardon to all individuals described in section (b) above, and shall ensure that all individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021, who are currently held in prison are released immediately.  The Bureau of Prisons shall immediately implement all instructions from the Department of Justice regarding this directive.

I further direct the Attorney General to pursue dismissal with prejudice to the government of all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021.  The Bureau of Prisons shall immediately implement all instructions from the Department of Justice regarding this directive.

    IN WITNESS WHEREOF, I have hereunto set my hand this twentieth day of January, in the year of our Lord two thousand twenty-five, and of the Independence of the United States of America the two hundred and forty-ninth.

Administration

Issues

**THE WHITE HOUSE**

1600 Pennsylvania Ave NW
Washington, DC 20500

# THE WHITE HOUSE

WH.GOV

Copyright

Privacy

## 18 U.S.C. 922

(g) It shall be unlawful for any person—
(1)
who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
(2)
who is a fugitive from justice;
(3)
who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802));
(4)
who has been adjudicated as a mental defective or who has been committed to a mental institution;
(5) who, being an alien—
(A)
is illegally or unlawfully in the United States; or
(B)
except as provided in subsection (y)(2), has been admitted to the United States under a nonimmigrant visa (as that term is defined in section 101(a)(26) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(26)));
(6)
who has been discharged from the Armed Forces under dishonorable conditions;
(7)
who, having been a citizen of the United States, has renounced his citizenship;
(8) who is subject to a court order that—
(A)
was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
(B)
restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
(C)
(i)
includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or
(ii)
by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury; or
(9)
who has been convicted in any court of a misdemeanor crime of domestic violence, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 24-7203

I am the attorney or self-represented party.

**This brief contains** 7,021 **words,** including 7,790 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/George T. Pallas **Date** 11/19/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*