**No. 24-7203**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**UNITED STATES OF AMERICA,**

*Plaintiff-Appellee*,

v.

**BENJAMIN MARTIN**

*Defendant-Appellant*.

On Appeal from the United States District Court
for the Eastern District of California
No. 1:21-cr-00228-NODJ-BAM
No District Judge currently assigned

# APPELLANT'S OPENING BRIEF

Carolyn Stewart
Stewart Country Law PA
1204 Swilley Rd.
Plant City, FL 33567
813-659-5178
Carolstewart_esq@protonmail.com

*Attorney for Appellant Benjamin Martin*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................v

INTRODUCTION.........................................................................................1

JURISDICTIONAL STATEMENT.................................................................3

STATUTORY [AND REGULATORY] AUTHORITIES .....................................3

BAIL STATUS ……………………………………………………………… 3

ISSUE(S) PRESENTED ...............................................................................3

STATEMENT OF THE CASE .......................................................................8

SUMMARY OF THE ARGUMENT...............................................................10

ARGUMENT ..............................................................................................10

    I.    THE CONVICTION SHOULD BE VACATED AND REMANDED FOR DISMISSAL BECAUSE THE JANUARY 6TH PARDON APPLIES TO MR. MARTIN'S CASE HERE.................................11

        A.    Standard Of Review .................................................................11

        B.    The Case Includes Constitutional Violations of the "Separation of Powers" and Due Process.......................................11

            1.    The Court encroached on the Executive Branch............14

            2.    Only the Executive should be guiding or directing execution of the Pardon....................................................16

            3.    The "But-For" and "related to" analysis shows the Pardon applies here.................................................................19

            4.    Applying the Pardon is Just.........................................22

ii

II.     THE CONVICTION MUST BE VACATED WITH REMAND TO DISMISS  BECAUSE THE COURT UNCONSTITUTIONALLY APPLIED 18 U.S.C. SECTION 922(g)(9), LACKED JURISDICTION, AND VIOLATED MR. MARTIN'S RIGHTS ......24

      A.     Standard of Review ...............................................................24

      B.     The District Court Lacked Jurisdiction and Prosecuted Martin for a Non-Crime .................................................................25

           1.     18 U.S.C. Section 921's definition for domestic violence that drove Section 922(g)(9) prior to January 2022 did not encompass dating relationships ..............................26

           2.     The statute's history/text shows there was no jurisdiction ......................................................................26

           3.     The 2022 Amendment to Section 922(g)(9) was not retroactive....................................................................28

      C.     It Is Against American Jurisprudence to Prosecute Non-Crimes .......................................................................28

      D.     Even if the Statute is Facially Constitutional, it was Unconstitutionally Applied to Mr. Martin...............................30

           1.     Mr. Martin was unconstitutionally prosecuted and convicted of a law applied ex post facto; and violated his Fourth, Fifth, and Sixth Amendment rights ...................33

           2.     Martin was denied notice and substantive due process..36

III.     THE SENTENCE MUST BE VACATED BECAUSE THERE WAS NO REASONING GIVEN FOR IT; IT EXCEEDS USSG GUIDELINES, AND IT VIOLATES MR. MARTIN'S 2ND AND 5TH AMENDMENT RIGHTS…………… .………… 37

      A.     Standard Of Review ............................................................37

iii

B. Martin's Sentence was Excessive, With Significant Discrepancies From What Should Have Been Applied from the USSG; Where the USSG and Judge Violated Martin's 2nd and 5th Amendment Rights. ..............................................37

C. The Judge Abused Discretion and Erred in Adding a Special Condition that Allows Warrantless Computer and Device Searches ...............................................................................41

CONCLUSION ..............................................................................43

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

iv

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Bell v. United States*, 254 F.2d 82 (D.C. Cir. 1958)................................29

*Carlesi v. New York*, 233 U.S. 51 (1914)................................28

*Todd v. United States*, 158 U.S. 278 (1895)................................29

*Andrews v. Warden*, 958 F.3d 1072 (11th Cir. 2020) ................................14

*Biddle v. Perovich*, 274 U.S. 480 (1927) ................................11, 21

*Bjerkan v. United States*, 529 F.2d 125 (7th Cir. 1975);................................13

*Buckley v. Valeo*, 424 U.S., 122 ................................16

*California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316 (1997) ................................17

Carlisle v. United States, 517 U.S. 416 (1996) ................................10

*Duncan v. Walker*, 533 U.S. 167 (2001) ................................21

*Eslaminia v. White*, 136 F.3d 1234 (9th Cir. 1998) ................................25

*Ex parte Garland*, 71 U.S. (4 Wall.) 333 (1866). ................................12

*Ex parte Grossman*, 267 U.S. 87 (1925)................................15

*Gall v. United States*, 552 U.S. 38 (2007)................................42

*Herrera v. Collins*, 506 U.S. 390 (1993)................................22

*In re North*, 62 F.3d 1434 (D.C. Cir. 1994) ................................23

*INS v. Chadha*, 462 U.S. 919 (1983)................................15,16

v

*Knote v. United States*, 95 U.S. 149 (1877) ...............................................13

*Loving v. United States*, 517 U.S. 748 (1996)...........................................15

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803).................................16

*McMillan v. Pennsylvania*, 477 U.S. 79 (1986);.......................................38

*Mellouli v. Lynch*, 575 U.S. 798 (2015) ...................................................18

*Mistretta v. United States*, 488 U.S. 361 (1989) ......................................16

*Morales v. Trans World Airlines, Inc.*, 504 U. S. 374 (1992)...........................17,18

*New York State Rifle and pistol ass'n v. Bruen 597 U.S. 1 (2022)*................6, 31, 33

*States v. Chavez-Cuevas*, 862 F.3d 729 (9th Cir. 2017)...........................25

*States v. Wilson*, 32 U.S. (7 Pet.) 150 (1833).........................................22

*Trump v. United States*, 603 U.S. 593 (2024) ..........................................14

*United States v. Alaniz,* 69 F.4th 1124 (9th Cir. 2023) ............................24

*United States v. Ali*, 620 F.3d 1062 (9th Cir. 2010)..................................24

*United States v. Gasca-Ruiz*, 852 F.3d 1167 (9th Cir. 2017)...................37

*United States v. Halamek*, 5 F.4th 1081 (9th Cir. 2021).........................37

*United States v. Harris*, 999 F.3d 1233 (9th Cir. 2021)..........................37

*United States v. Lacher*, 134 U.S. 624 ....................................................29

*United States v. Vieke*, 348 F.3d 811 (9th Cir. 2003)..............................37

*United States v. Klein*, 13 Wall. 128 (1872)............................................15

*United States v. Lopez,* 998 F.3d 431 (9th Cir. 2021)..............................24

*United States v. Neil*, 312 f.3d 419 (9th Cir. 2002)........................................24

*United States v. Noonan*, 906 F.2d 952........................................11

*United States v. Phillips*, 367 f.3d 846 (9th Cir. 2004)........................24

*United States v. San Juan-Cruz*, 314 F.3d 384 (9th Cir. 2002)..............24

*United States v. Struckman*, 611 F.3d 560 (9th Cir. 2010)...................24

*United States v.Sanders*, 133 F.4th 341 (5th Cir. 2025)........................11

*United States v. Watts*, 519 U.S. 148 (1997)........................................38

**STATUTES**

§ 921 ........................................................................................26, 30
18 U.S.C. § 921 ....................................................................................25
18 U.S.C. § 922(G)(9)..........................................................................24
18 U.S.C. Section 922(g)(9)..................................................................26
§ 922(g)(1)............................................................................................20
18 U.S.C. § 3231 ...................................................................................3
18 U.S.C. § 3553(a)..............................................................................42
18 U.S.C. § 3742(a)................................................................................3
18 U.S.C. § 922(g)(9)..............................1, 2, 3, 4, 6, 24, 25, 26, 27, 29, 30, 31, 36
28 U.S.C. § 1291 ....................................................................................3

**USCS Const. Art. III, § 2, Cl 1** ........................................................27
Art. II, § 2 .............................................................................................15
U.S. Const. art. II, § 1 cl.1.....................................................................12

**OTHER AUTHORITIES**

Black's Law Dictionary, Thomas Reuters ........................................17, 18

**REGULATIONS**

Fed. R. Crim P. 12(b) ...........................................................................25
USSG § 6A1.3........................................................................................38
USSG §2K2.1....................................................................................38, 39
USSG §5D1.3(b).....................................................................................42

**INTRODUCTION**

Benjamin Martin attended the D.C. rally on January 6, 2021, and was charged for conduct at the U.S. Capitol. During the raid of his California residence on September 2, 2021, that was based on his alleged January 6th crime(s), the FBI forced open a safe; and found rifles and a handgun. Martin was then charged in this Circuit with violating 18 U.S.C. § 922(g)(9) where the government used a 2018 no contest conviction to misdemeanor domestic violence, which involved dating. ER-175. He is on direct appeal for the conviction and sentence for 18 U.S.C. § 922(g)(9) in this case. ER-187.

President Trump issued a Pardon Proclamation on January 20, 2025. Add.1. It pardoned all who were convicted of offenses related to the events of January 6th. Add.1-3. Outstanding indictments were to be dismissed. *Id.* The court discussed the pardon on January 21, 2025, without any guidance from the U.S. AG at that time as to whether it applied to Martin's California federal charges. ER-003. In cases where items categorized as contraband (marijuana, firearms) were discovered solely because of January 6th searches, the U.S. Attorney General as execution authority disseminated guidance that the pardon covered ongoing prosecutions that resulted from searches. That can be seen in the government's filing in this case's Dkt. 25.1 at 4-5, as well as the Appellant's motion. Dkt. 21.1at 3-4.

The pardon's applications and implementation by the DOJ as executing authority have been consistent. It's also been consistent about when it will not be applied. Criminal acts such as stalking around former President Obama's neighborhood, threatening FBI agents while they were investigating an ongoing case and possessing child pornography that would have inevitably been discovered because of monitoring of internet activity, are not covered. In direct appeal cases such as Mr. Martin's, such as those that were in progress without a final conviction at district courts or on direct appeal, the charges related to firearms have been vacated or dismissed. Martin's case remains where the pardon and government dismissal has not yet been allowed by the Circuit for firearms discovered during the search despite no final conviction given his direct appeal and despite the government's assertion that the pardon applies.

This is a case where the pardon never should have had to apply because federal criminal charges should never have been brought. Mr. Martin was not criminally liable and was not in violation of 18 U.S.C. § 922(g)(9) as it existed and was defined in 2021 when the DOJ and FBI obtained the January 6th search warrant, raided his residence, and arrested and charged him. During this prosecution that should never have proceeded, his Fifth Amendment and Fourth Amendment rights have been violated. This brief will address multiple issues, each of which show that the Court should overturn his conviction.

## JURISDICTIONAL STATEMENT

The United States District Court for the Eastern District of California alleged jurisdiction under 18 U.S.C. § 3231 based on the Indictment. ER-175-77. On November 25, 2024, the district court entered judgment convicting the Appellant, Benjamin John Martin, of possession of a firearm by a prohibited person (convicted of a misdemeanor crime of domestic violence), in violation of 18 U.S.C. § 922(g)(9), and sentenced him to 38 months imprisonment followed by 24 months of supervised release. (ER-033-34). Mr. Martin filed a timely notice of appeal on November 27, 2024. (ER- 187). This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## BAIL STATUS

Mr. Martin is released on bail pending appeal pursuant to this Court's February 25, 2025, Order.

## STATUTORY AND REGULATORY AUTHORITIES

All relevant statutory, constitutional or regulatory authorities not quoted within appear in the Addendum to this brief.

## ISSUE(S) PRESENTED

1.  Whether the District Court violated the U.S. Constitution and Martin's rights in not applying Presidential Pardon Proclamation 10887 to his case.

2.  Whether the district court unconstitutionally applied 18 U.S.C. § 922(g)(9), lacked jurisdiction, and violated Martin's rights.

3

3.   Whether the judge misinterpreted and misapplied the U.S. Sentencing Guidelines (USSG), violating Mr. Martin's 2nd and 5th Amendment rights.

## STATEMENT OF THE CASE

This case is an appeal from a criminal conviction and sentence under 18 U.S.C. § 922(g)(9). Mr. Martin's home was raided by the FBI and others because he had gone to the January 6th rally in D.C., marched peacefully to the Capitol, and then entered the U.S. Capitol grounds behind a large crowd.

The FBI raided his home and arrested him on September 2, 2021, under the January 6th arrest warrant. ER-142;147. The search warrant was a January 6th cookie cutter one where based on the equivalent of trespassing the warrant resembled a "general warrant" that authorized searchers to tear the residence apart looking for anything that "could" indicate travel to D.C. 9 months earlier, clothes worn, phone, drives, and any document that could indicate plans to travel and stop Congress. ER-147-152.

Mr. Martin was arrested at the start of the home raid on September 2 and placed in a police car. ER-044. After a length of time when the search had been ongoing, and the FBI had already taken his phone, and been through the home, Agent Ledbetter demanded the combination to a standing safe in the garage. Martin didn't have the combination  and conveyed that. Agent Ledbetter wrote that

4

Martin gave him a combination they couldn't get to work. ER-145. The FBI then requested assistance and broke open the safe. The safe contained firearms and ammunition. ER-040. Those were seized. In addition to firearms, the safe contained documents such as Martin's and family passports, tax returns from 2017, and birth certificates – the kinds of documents one might keep in a fire resistant safe. ER-184. Specifically related to the safe:

On top of the safe the FBI alleged there was one round of Santa Barbara 7.62 X 51 mm ammunition. (ER-184). This is not on any seizure receipt or in any picture by the search team. Inside the safe, agents found multiple firearms, including:

. A Benelli 12-gauge shotgun, Model Super Black Eagle II, serial number U452103B

. A Kimber 45 Caliber Pistol, Model Raptor 2, serial number KR85106

• Additional firearms which were never determined to have travelled in interstate commerce.

(ER-067:25-7, ER-183).

Most of the firearms found in the safe belonged to William Gramespacher, Mr. Martin's girlfriend's father. (ER-041-42).

The agents knew Martin had a 2018 domestic violence-related misdemeanor conviction in the Superior Court of Fresno County and was not allowed to possess

firearms. Agent Ledbetter obtained another search warrant to cover (after) the safe break-in, alleging Martin had violated § 922(g)(9). ER-139-146

Martin was not present when the firearms were placed in the safe. Gramespacher did not give Mr. Martin permission to touch or control his firearms. ER-041. At the time agents opened the safe, several of Mr. Gramespacher's firearms remained in their cases, undisturbed. Photographic evidence shows these three firearms cases were unopened when agents discovered them. (ER-040).

Martin was then indicted on 9/16/2021 for one count of possession of a firearm (shotgun and pistol and 1 round of 7.62 ammunition) by a person convicted of a misdemeanor crime of domestic violence (under California law where he had received probation), asserting violation of 18 U.S.C. § 922(g)(9). (ER-175). There is no record of Mr. Martin ever having engaged in a threat or crime with a weapon of any type. He wasn't married to the alleged domestic violence victim. (PSR).

On January 16, 2024, Mr. Martin moved to dismiss the indictment, arguing that § 922(g)(9) violates the Second Amendment both facially and as applied under *New York State Ryle & Pistol Ass'n V. Bruen*, 597 U.S. 1 (2022). (ER-128; SER-12). He also moved to suppress the search. ER-122. The district court denied both motions (ER-070). At the hearing, Mr. Martin's motion to suppress was heard, where counsel argued that federal agents lacked probable cause to seize the firearms without first obtaining a warrant. ER-079-120.

6

Mr. Martin agreed to waive a jury trial and proceed with a stipulated facts bench trial. ER-067. The bench trial took place on 9/10/24 and he was found guilty. ER-043. He objected to the PSR that included a firearm not charged against or previously attributed to him. SER-03-11.

On November 25, 2024, the district court sentenced Mr. Martin to 38 months imprisonment followed by 24 months of supervised release, having overridden his calculations and assessment where the length of imprisonment should have been much less. (ER-033).

He timely filed his notice of appeal on 11/27/2024. ER-187.

Mr. Martin requested bond release pending appeal, (ER-025) and had a hearing scheduled on the motion for January 21, 2025.

On January 20, 2025, President Trump issued his Pardon Proclamation. Add.1

At the January 21st hearing, Mr. Martin requested that the Court allow time for the determination out of D.C. if the pardon applied to his present case. ER-009. The judge stated she didn't think the pardon applied if the activity wasn't "at the Capitol;" without allowing a separate hearing or Executive Branch input. ER-009-015. Her minute order denied release pending appeal. ER-008.

Mr. Martin remains released upon the Order by this Court and this appeal addresses the conviction and sentence.

## SUMMARY OF THE ARGUMENT

I.  There is a rich history surrounding Presidential Pardons. In this case about the January 6th Pardon Proclamation, President Trump issued that to rectify injustices that occurred across cases and imprisonment, and to lead to healing.

The Presidential Pardon issued on January 20, 2025, pardons individuals convicted of offenses "related to events that occurred at or near the United States Capitol" on January 6, 2021. The phrase "related to" must be given its ordinary, broad meaning under principles of pardon construction.

Mr. Martin's firearms conviction is directly and inextricably related to the January 6th events. Federal agents discovered the firearms only because they were executing a search warrant for the January 6th investigation. But for Mr. Martin's presence at the Capitol, the firearms would never have been found, charged, or any crime prosecuted. Mr. Martin was not arming himself or using the firearms. From his layman's perspective, he had no access or dominion. There is no paperwork, but he had given them away – he no longer held title. Regardless, the causal connection is clear and direct.

The pardon power is plenary and must be construed liberally in favor of the person pardoned. The district court's narrow construction contradicts both the Pardon's plain text and the President's evident intent to provide comprehensive relief to January 6th defendants, whose lives and families have suffered. This

8

Court should hold that the pardon applies and remand with instructions to dismiss the indictments with prejudice.

II. 18 U.S.C. 922(g)(9) was unconstitutionally applied to Mr. Martin because the law in effect in 2018 when he pled no contest to misdemeanor domestic violence and in 2021 when he was arrested and declared to be in possession of firearms, did not include those in a dating relationship. The statute applied to married persons, those with children, guardians, and like relationships. 18 U.S.C. 922(g)(9) did not apply to him (unmarried) and he was wrongly prosecuted. This raises the lack of jurisdiction and what was presented to a grand jury. The amendment enacted on January 25, 2022, was the first time that those in a dating relationship were subject to § 922(g)(9). Because of wrongful prosecution and violation of rights involved, as well as there cannot have been a conviction for what was not criminal, the Court should vacate the conviction and remand with an Order to dismiss the indictment with prejudice.

III. Having submitted to a stipulated bench trial after reluctantly agreeing that he must have had constructive possession of some type of the firearms in the indictment, given the safe was in his residence, (and nothing more) Mr. Martin was ambushed for sentencing. With no evidence and no cause, the government asserted that sentencing should be based on possession of an AR-15 with the ability to load 30-round magazines. The government and Probation recommended prison ranging

from over 50 to 70+ months. This was extreme given that his assessment of the USSG showed the range should be about 0-7 months for a non-violent, non-victim crime that consisted of firearm storage in a locked safe where he was guilty because he knew the safe was in the residence.

He is unable to ascertain how the Court came up with a prison sentence of 38 months, where it must have assumed without any evidence let alone a preponderance, that he possessed an AR-15. Because the enhancements are outside what is just or necessary, and will deprive him of liberty for no cause, the Court should vacate the sentence.

## ARGUMENT

**I. MR. MARTIN'S CONVICTION SHOULD BE VACATED AND THE CASE REMANDED FOR RULE 48(A) DISMISSAL BECAUSE THE JANUARY 6TH PARDON APPLIES TO THIS CASE.**

### A. Standard Of Review

This Court reviews questions of law, including the interpretation and scope of a presidential pardon, de novo. *Carlisle v. United States*, 517 U.S. 416, 426 (1996). See *United States v. Fryberg*, 854 F.3d 1126, 1130 (9th Cir. 2017). The effect of a presidential pardon presents a pure question of law. *United States v. Noonan*, 906 F.2d 952, 959 (3d Cir. 1990).

### B. The Case Includes Constitutional Violations of the "Separation of Powers" and Due Process.

The judge ignored the Executive's Article II authority and without any due process and without the government even providing a position, denied application of the Pardon (Add.1; ER-003-08; ER-009-15) to Mr. Martin. The judge didn't use any discernible standard for the few minutes the issue was discussed with this being the day after the Proclamation was issued. She said she didn't think it applied, despite the defense asking for time to research and hear what D.C. had to say. *Id*.

Past courts when presented with controversy about a pardon examined the four corners of the pardon, Article II of the Constitution, whether the pardon infringed on any other branch, and what the pardon directed and allowed, with

11

minimal, non-complex fact review. Because of the lower court's failure to apply the constitutional standard for a Pardon, where here no adverse position was taken by the Government as to the Pardon's application, the Court must overturn the decision at ER-008, vacate the conviction, and remand for dismissal.

The Founders saw a pardon as an act of grace that served the public interest. *United States v. Sanders*, 133 F.4th 341, 394 (5th Cir. 2025). See also *Biddle v. Perovich*, 274 U.S. 480, 486 (1927). President Trump stated his intent in the Proclamation (Add.1) and in speeches that he saw this being for reconciliation and as rectifying injustices, such as the invasive, unnecessary FBI raids, lengthy, and unnecessary pretrial incarcerations with no family visits, unsanitary jail conditions, and inedible food to name a few. The Pardon for this case is classified as an Executive Action and directed the U.S. AG and BOP to act, where its central theme and intent is to provide grace to non-government civilians and to support the public interest of reconciliation. *Id.*

The Constitution grants the President sweeping authority "The President . . shall have Power to grant Reprieves and Pardons for Offences against the United States, except in Cases of Impeachment." U.S. Const. art. II, § 2, cl. 1. (Add.4). The Supreme Court has consistently held that the pardon power is "plenary" and virtually unlimited: "The power thus conferred is unlimited, with the exception stated. It extends to every offence known to the law and may be exercised at any

12

time after its commission, either before legal proceedings are taken, or during their pendency, or after conviction and judgment." *Ex parte Garland*, 71 U.S. (4 Wall.) 333, 380 (1866). A pardon "releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence." *Id.* at 380-81.

The pardon power includes the authority to grant conditional pardons, class pardons, and pardons with broad categorical language. *Schick v. Reed*, 419 U.S. 256, 266 (1974). Importantly, pardons must be construed liberally in favor of the person pardoned: "It is well settled that a pardon is to be liberally construed in favor of the person to whom it is granted." *Bjerkan v. United States*, 529 F.2d 125, 129 (7th Cir. 1975); *accord Knote v. United States*, 95 U.S. 149, 152 (1877) ("A pardon is an act of grace, and it is the general rule that one is to be construed favorably to the grantee.").

The presidential pardon issued on January 20, 2025, provides: "I hereby grant a full and unconditional pardon to all individuals convicted of offenses **related to events that occurred at or near the United States Capitol** on January 6, 2021." (Add.1-2) (emphasis added). The critical language is "**related to** events that occurred at or near the United States Capitol." This phrase must be given its ordinary meaning, interpreted consistent with principles favoring the person pardoned. However, without allowing for the requested time and ability to litigate,

13

the judge decided with no legal reasoning that she was not going to further discuss or consider the Pardon. (ER-014:22-25; ER-015:1-2). There was no allowance by the court for the government to obtain the executing authority's decision as the speaker for the sitting U.S. President who issued the Pardon at hand. (ER-011-15).

The Defense asked for the ability to research and litigate (ER-014:2-9); and asked the court to at least stay the prison report date. The judge instead directed the defense to move to the other issue raised in its motion (ER-014-015), thus out of hand dismissing the Pardon as meritless. In the courtroom hearing (ER-010-15) and in the decision (ER-008) where no legal justification was provided in denying all the defense's requests, the judge placed herself over the Article II authority of the Executive Branch.

**1. The court encroached on the Executive Branch**. The judge made an on-the-spot determination of what "related to" meant – with no legal standards, review or due process. (ER-012:6-12). But the Pardon, where no controversy or adverse position was raised by the government over its application to Mr. Martin, should not have been subjected to judicial interpretation. Where, as here, the Pardon has been properly bestowed and acted upon under the President's exclusive authority, it is not "subject to further judicial examination," *Trump v. United States*, 603 U.S. 593, 608 (2024). Just as *Ex parte Garland*, 71 U.S. 333, 380, 18 L.

14

Ed. 366 (1867) found that the pardon power "of the President is not subject to legislative control" the same applies to judicial control.

"Ordinarily, the President relies on the Department of Justice—specifically, the Attorney General and Office of the Pardon Attorney—to administer the pardon process." *Andrews v. Warden*, 958 F.3d 1072, 1078 (11th Cir. 2020). Proclamation 10887 (Add.1) spells out that the U.S. AG will execute. Yet the court did not pause for execution authority, in violation of the Pardon and Constitution. The Constitution does not use the term "Separation of Powers," but certain authorities are given to each of the three branches by the U.S. Constitution. For pardons, the President's power is plenary. "The Executive can reprieve or pardon all offenses after their commission, either before trial, during trial or after trial, by individuals, or by classes, conditionally or absolutely, and this without modification or regulation by Congress." *Ex parte Grossman*, 267 U.S. 87, 119-20 (1925)((quoting *Ex parte Garland,* 71 U.S. (4 Wall.) 333, 380 (1867)).

Normally such matters of what is assigned to a branch involve legislation and judicial review of laws. "In *United States v. Klein*, 13 Wall. 128 (1872), an Act of Congress was struck for encroaching upon judicial power, but the Court found that the Act also impinged upon the Executive's exclusive pardon power. Art. II, § 2." *Ins v. Chadha*, 462 U.S. 919, 999 (1983). *Chadha* at 1000 supports examining disruption and impairment by one branch against another to determine overreach.

15

For pardons, with the power being absolute if a pardon does not violate another part of the Constitution (impeachment for example), the "basic principle of our constitutional scheme [applies] that one branch of the Government may not intrude upon the central prerogatives of another." *Loving v. United States*, 517 U.S. 748, 757 (1996). But by immediate dismissal and no U.S. AG execution direction, that is what happened here: encroachment. "The clear assignment of power to a branch, furthermore, allows the citizen to know who may be called to answer for making, or not making, those delicate and necessary decisions essential to governance." *Loving*, 517 U.S. at 758. In Mr. Martin's case, the court did not consider the assignment of power to the Executive branch and instead usurped it.

### 2. The Judiciary interprets some laws and rules, but the Executive for a sitting President who issued the Pardon directs execution.

The Judiciary was established as "a Third Branch of Government with the 'province and duty . . . to say what the law is' in particular cases and controversies." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). The judiciary cannot address political questions and particularly applicable here, the court does not have the province "to enquire how the executive, or executive officers, perform duties in which they have a discretion." *Marbury* at 170. Supposedly "the Framers 'built into the tripartite Federal Government . . . a self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of the other.'" *Mistretta v. United States*, 488 U.S. 361, 381-82 (1989)

16

(quoting *Buckley v. Valeo*, 424 U.S., at 122). See also *INS v. Chadha*, 462 U.S. 919, 951 (1983). In the present case, this Court is being called upon to safeguard against the encroachment on the Executive, and subsequently Mr. Martin's Constitutional rights, by the district court. Without even any controversy between the parties, no judicial role as applicable to this case presented a prompt for the judge to create her own interpretation of the January 6 Pardon Proclamation.

Any question or argument over the application of the term "related to" should have been requested by the E.D. Cal. U.S. Attorney's Office and should have come directly from the U.S. AG offices. That requirement remains today since President Trump did not further delegate execution authority. Given all other case precedents for this Pardon, there is no reason for Mr. Martin to be discriminated against for the Pardon. See those similarly situated in:

| | |
|---|---|
| M.D. Fla. | - United States v. Ball, 24-cr-97 |
| W.D. Tex. | - United States v. Guy Reffitt, 4:22cr289 |
| D. Md. | - United States v. Sattler, 1:23-cr-00438 |
| M.D. Fla. | - United States v. Jeremy Brown, 21-cr-00348 ((Limited remand on appeal for Rule 48(a) dismissal under pardon)) |
| D. Md. on | - United States v. Elias Costianes, Jr., 21-cr-00458 ((Limited remand appeal for Rule 48(a) dismissal)) |
| D.D.C. | - United States v. Bertino, 22-cr-00329 (weapons charge transferred from Western District of North Carolina to D.C. and dismissed along with January 6 offenses.) |

The issues are a strict matter of law where the district court violated the Separation of Powers doctrine and denied due process while it breached the Executive's Constitutional authority. In each of the above cases, the Pardon was

17

applied and the DOJ ceased prosecution because of the "related to" nexus. The phrase "related to" is ordinarily understood to have an expansive scope. The Supreme Court has repeatedly recognized this: "The ordinary meaning of the phrase 'relate to' is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'" *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (quoting Black's Law Dictionary); *see also California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 324 (1997) (same). In *Morales*, the Court interpreted the phrase "relating to" in a preemption provision and held it must be given a broad construction consistent with Congress's intent to establish comprehensive regulation. *Id.* at 383-84.

The 12th Edition of Black's law dictionary does not define "relate to" or "related to." Under "relate" the appropriate use would be "in connection with." From a past edition of Black's: "To relate to means 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.' In ordinary parlance, one thing can 'relate to' another even if it also relates to other things." *Mellouli v. Lynch*, 575 U.S. 798, 814 (2015) Thomas and Alito dissent ((Quoting *Morales v. Trans World Airlines, Inc.*, 504 U. S. 374, 383 (1992) (quoting Black's Law Dictionary 1158 (5th ed. 1979)). Similarly, in the criminal context, courts have recognized that "related to" encompasses causal

18

connections and derivative conduct. *See United States v. Irey*, 612 F.3d 1160, 1214 (11th Cir. 2010) ("related to" in sentencing context includes conduct with sufficient causal nexus).

**3. The "But-For" and "related to" analysis regarding the January 6th investigation, as was applied in the cases supra, shows that the Pardon applies here**. Mr. Martin's firearm conviction bears a direct causal relationship to the January 6th events. The firearms would never have been discovered but for the January 6th investigation. Federal agents executed the search warrant at Mr. Martin's home solely because they were investigating his presence at the Capitol. The warrant application was based entirely on January 6th conduct. Without January 6th, there would have been no search, no discovery of firearms, no federal charges, and no conviction. Additionally, the forensics and other discovery as provided more than indicated that the FBI lumped the California case with the D.C. case for investigation. They were not "separate." This was particularly evident where the forensics discovery showed that the fiction of "domestic terrorism" reached back to the Washington Field Office for the California prosecution. The government's actions proved the California prosecution was related to January 6th. Unless of course the California FBI offices are attaching the false label of "domestic terrorism" to everything they investigate for whomever they believe are Trump supporters.

19

This is not a case of attenuated causation or coincidental timing. The firearms were discovered during the execution of a warrant specifically targeting January 6th evidence. The search that uncovered the firearms was itself an "event related to" January 6th and events. The FBI obtained an ex post facto search warrant for firearms after they broke into the safe and seized firearms. (ER-139).

Mr. Martin likely would not have been federally prosecuted for firearm possession absent the January 6th case. The firearms were locked in a safe in his home; he was not armed in public or dealing drugs; and he had no felony record. This prosecution was pursued because of January 6,[th] and the firearms search warrant was created only after firearms searched for in the January 6th case were discovered (ER-139-152). In the January 6th case, the FBI was searching for anything that could indicate an intent to have disrupted Congress.

At least one other January 6th defendant, Peter Krill, faced similar circumstances. Federal authorities arrested him in New Jersey for January 6th crimes and found firearms during that arrest. (ER-013). He was charged both with January 6th offenses and with § 922(g)(1) violations in New Jersey. *Id*. Following the January 20, 2025, pardon, Mr. Krill was reportedly released from custody. *Id*. This demonstrates the U.S. AG execution authority's direction that firearm charges arising from January 6th investigations and searches fall within the pardon's scope.

20

The district court's interpretation was impermissibly narrow and without due process. Regardless of the request, no briefing or specific investigation was allowed by the judge. In effect, Mr. Martin was the first January 6th defendant to raise the issue upon the Pardon's issuance. Without allowing any due process, the judge indicated that the pardon applies only to conduct that literally occurred "at or near the United States Capitol." (ER-012-015). Under this reading, the phrase "related to events" adds nothing—it becomes mere surplusage.

While an Executive Order or Action is not a statute, the interpretation used violates basic principles of statutory construction. Courts must give effect to every word and avoid constructions that render language meaningless. *Duncan v. Walker*, 533 U.S. 167, 174 (2001). If the President intended to pardon only conduct at the Capitol, he could have written: "convicted of offenses that occurred at or near the United States Capitol." Instead, he used the broader phrase "related to events that occurred at or near" the Capitol. The modifier "related to" expands the pardon's reach beyond the physical location to encompass offenses with sufficient nexus to the January 6th events. To hold otherwise nullifies this language.

The President's intent in issuing the pardon was to provide comprehensive relief specifically to individuals caught up in the January 6th prosecutions, and for anyone imprisoned under deplorable third world-like conditions. (Add.1). News reports and his public statements indicate the Pardon was meant to provide full

21

pardons to all except the commuted-only individuals where investigation there was supposed to continue. It did and the DOJ recently moved to vacate the convictions and dismiss with prejudice.[1] Courts should construe pardons consistent with their evident purpose. *See Biddle v. Perovich*, 274 U.S. 480, 486 (1927) (courts should give effect to the President's intent in granting a pardon). Where, as here, an individual was prosecuted solely because of his connection to January 6th, and the offense would never have been discovered or charged but for that connection, the pardon should apply.

### 4. Applying the Pardon is just.

The pardon power serves important constitutional functions, including:

- **Mercy and Second Chances**: Allowing the Executive to extend grace to those who have been punished. *Herrera v. Collins*, 506 U.S. 390, 412 (1993).

- **Political Reconciliation**: Permitting the President to heal national divisions. *See Ex parte Garland*, 71 U.S. at 380-81 (pardon for Confederate sympathizers).

- **Correcting Injustice**: Providing a check on prosecutorial overreach. *United States v. Wilson*, 32 U.S. (7 Pet.) 150, 160 (1833).

---

[1] D.D.C. case 1:21-cr-015 is one example.

All three purposes are served by applying the Pardon here. Mr. Martin was prosecuted federally for gun possession that would not have been charged absent January 6th. The firearms were found only because of the January 6th search. Whether he had dominion over the items is a discussion for another day. Excluding this conviction from the pardon's scope would be inconsistent with the evident purpose of providing comprehensive relief to January 6th defendants and the Pardon execution authority's direction in all similarly situated cases.

In all other January 6 defendant's cases where the defendant was on appeal or the conviction had not yet become final, the DOJ brought forward direction from the U.S. AG that the pardon applies to January 6 search contraband (i.e. Reffitt, Brown, Sattler, Costianes, et al.). Because of this, Mr. Martin's conviction must be vacated and the case dismissed as requested in this case's Dkt. 25.1.

The government cannot continue to enforce a conviction that has been pardoned. The pardon is self-executing and requires no further action by the courts beyond recognizing its validity and effect. *See In re North*, 62 F.3d 1434, 1437 (D.C. Cir. 1994). The pardon's plain language—"related to events that occurred at or near the United States Capitol"—encompasses the search for any evidence of any crime (ER-139-152) that resulted in Mr. Martin's charges and conviction. The offense was prosecuted solely because of the January 6th investigation. The but-for causal connection is direct and undeniable. The district court's interpretation

23

impermissibly narrowed the pardon's scope in violation of the rule that pardons must be construed liberally.

Because the district court violated the Constitutional authority of the Executive Branch, and provided no due process to Mr. Martin, this Court should overturn the "decision" at ER-008 and hold that the Pardon applies as previously conveyed by the Executive. This Court should then vacate the conviction and remand with instructions to dismiss the case with prejudice or as moot.

**II.  MR. MARTIN'S CONVICTION SHOULD BE VACATED WITH REMAND FOR DISMISSAL BECAUSE THE DISTRICT COURT UNCONSTITUTIONALLY APPLIED 18 U.S.C. § 922(g)(9), LACKED JURISDICTION, AND VIOLATED HIS RIGHTS.**

**A.  Standard of Review.**

The Court reviews the constitutionality of a statute de novo. *United States v. Alaniz,* 69 F.4th 1124, 1127 (9th Cir. 2023), just as it reviews questions of law de novo. See *United States v. Ali*, 620 F.3d 1062, 1067 (9th Cir. 2010). The district court's construction or interpretation of a statute is reviewed de novo. See, e.g., *United States v. Lopez*, 998 F.3d 431, 434 (9th Cir. 2021). The validity of an indictment is reviewed de novo. *See United States v. San Juan-Cruz*, 314 F.3d 384, 387 (9th Cir. 2002).

Jurisdictional issues are reviewed de novo. See *United States v. Struckman*, 611 F.3d 560, 571 (9th Cir. 2010). The denial of a motion to dismiss an indictment for an alleged lack of jurisdiction is reviewed de novo. See *United States v.*

24

*Phillips*, 367 f.3d 846, 854 (9th Cir. 2004); *United States v. Neil*, 312 f.3d 419, 421 (9th Cir. 2002).

Lack of subject matter jurisdiction may be raised for the first time on appeal under Fed. R. Crim P. 12(b) and by virtue of the U.S. Constitution for cases and controversies, which requires vacatur and dismissal of charges.

The Defense moved to dismiss the indictment (ER-128-156; SER-12-26) (without indication that the statute had been completely misapplied in the charging document). The motion to dismiss was denied (ER-070-78). Lack of federal jurisdiction was also asserted by the Defense at ER-162 and denied.

Alternatively, because the law did not apply, and the court never researched or was advised that the statute was misapplied, where the indictment was defective, with everything from the search, arrest, indictment to waiver of jury trial, the bench trial, and sentencing contaminated by misinterpretation and misapplication of the law (and unconstitutional), this may be considered a structural error that requires vacatur. Structural errors "are relatively rare and consist of serious violations that taint the entire trial process, thereby rendering appellate review of the magnitude of the harm suffered by the defendant virtually impossible." *Eslaminia v. White*, 136 F.3d 1234, 1237 n.1 (9th Cir. 1998); see also *United States v. Chavez-Cuevas*, 862 F.3d 729, 734 (9th Cir. 2017).

**B. The District Court Never Had Jurisdiction and Mr. Martin was Prosecuted for a Non-Crime**.

25

**1. The 18 U.S.C. § 921 definition for domestic violence that dictated application of 18 U.S.C. § 922(g)(9) prior to January 2022 did not allow 18 U.S.C. § 922(g)(9) to encompass dating relationships**. Martin was not married at the time of the 2018 offense and maintained a separate primary domicile. This state-level case data was admittedly available to the prosecution before the raid and arrest in September 2021. ER-146, 154.

The January 2022 Bipartisan Safer Communities Act (BSCA), enacted January 25, 2022, added "dating relationship" to the law/statute under Sec. 12005 (a)(1)(B) and (a)(2) for a Misdemeanor Crime of Domestic Violence. Add.24-25. Prior to January 2022, dating relationships were not included for 18 U.S.C. Section 922(g)(9) as defined by § 921.

## 2. The Statute's History/Text Shows There Was No Jurisdiction.

The statute charged did not apply to Mr. Martin. While that may be considered personal jurisdiction, the defense did preserve lack of jurisdiction in its motions and hearing to suppress, albeit from a different perspective. ER-126, 158, 161-62.

But since the only subject matter that could have applied to Martin was state law, which was not charged, the court had no subject matter jurisdiction. In September 2021 when he was arrested and indicted (ER-175), 18 U.S.C. § 922(g)(9) by its definition lacked for him what was needed to comprise personal

26

and subject matter jurisdiction. The U.S. Department of Justice's archived Justice Manual section from 2013 addressed the 1996 law that first added domestic violence. The DOJ Manual shows that the ATF had the lead, and that dating relationships were not included, given that the statute only included:

"As enacted the statute defines "misdemeanor crime of domestic violence" (MCDV) as any state or federal misdemeanor that -

> has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim."

> Justice Manual, 1117. Restrictions on the Possession of Firearms by Individuals Convicted of a Misdemeanor Crime of Domestic Violence as of 2013.[2]

Because the statute did not apply to Mr. Martin, and the DOJ failed to state a true offense, then under Article III of the U.S. Constitution, which limits courts to adjudicating cases and controversies authorized by Congress, the district court had no subject matter jurisdiction.

---

[2] DOJ archive at: https://www.justice.gov/archives/jm/criminal-resource-manual-1117-restrictions-possession-firearms-individuals-convicted - Law prior to 2022.

27

U.S. CONSTITUTION CL 1. SUBJECTS OF JURISDICTION.

> THE JUDICIAL POWER SHALL EXTEND TO ALL CASES,
> IN LAW AND EQUITY, ARISING UNDER THIS
> CONSTITUTION, THE LAWS OF THE UNITED STATES,
> AND TREATIES MADE . . . .

USCS CONST. ART. III, § 2, CL 1

### 3. The 2022 18 U.S.C. § 922(g)(9) Amendment Was Not Retroactive.

The enactment of the BSCA was prospective for the addition of "dating" and said the law was not retroactive. The court and DOJ couldn't go back to Martin's 2018 misdemeanor conviction to charge, prosecute, and convict him under § 922(g)(9).

> (b) NO RETROACTIVE APPLICATION.—
> The amendments made by subsection (a) shall not apply to any conviction of a misdemeanor crime of domestic violence entered before the date of enactment of this Act.

Add.25; 117 P.L. 159

Because the law didn't apply and was wrongly used for the indictment, the district court had no jurisdiction over Mr. Martin (personal and for the entirety of the case's subject matter), and the conviction must be overturned.

### C. It is Against American Jurisprudence to Prosecute Non-Crimes.

This is an unquestionable Sixth Amendment Notice and Fifth Amendment due process violation. Words have meaning and the search, arrest, and conviction for a non-crime require that Mr. Martin's conviction must be vacated. Mr. Martin

28

was arrested and indicted (ER-175) in 2021 before 18 U.S.C. 922(g)(9) was amended to add misdemeanor crimes of domestic violence that included "dating relationships." Add.11 combined with Add.24-25 shows he was not subject to the federal crime charged.

In an example, "Plaintiff in error was convicted of the alleged crime of forgery in the second degree, as a second offense. There is no such crime known to the penal law of the State of New York." *Carlesi v. New York*, 233 U.S. 51, 52 (1914). The convicted felon received a Presidential pardon. *Carlesi* held that upon the pardon the Plaintiff in error could not have a statute written after the fact and then used against him when the pardon made him innocent. In yet another case example: "[T]he arrest here was rested on a charge of 'suspicion of housebreaking.' There is no such crime. Hence the arrest is illegal. And it is illegal even if we read the charge as one for the crime of house-breaking." *Bell v. United States*, 254 F.2d 82, 88 (D.C. Cir. 1958).

The jurisprudence on this is rooted in our founding and history.

> It is axiomatic that statutes creating and defining crimes cannot be extended by intendment, and that no act, however wrongful, can be punished under such a statute unless clearly within its terms. 'There can be no constructive offences, and before a man can be punished, his case must be plainly and unmistakably within the statute.' *United States v. Lacher*, 134 U.S. 624; Endlich on the Interpretation of Statutes, sec. 329, 2d ed.; Pomeroy's Sedgwick on Statutory and Constitutional Construction, 280.

*Todd v. United States*, 158 U.S. 278, 279 (1895)

29

The law that was amended in January 2022 clearly stated it was not retroactive regarding what fell under it for domestic violence. Dating relationships were not included in 18 U.S.C. § 922(g)(9) when Mr. Martin was convicted in 2018, and not when he was arrested and charged in 2021 for firearms. Just as in the above caselaw, the Court must vacate Martin's conviction.

**D. Even if the Statute is Facially Constitutional, it was Unconstitutionally Applied to Mr. Martin.**

The law was misinterpreted by the Court after the DOJ wrongly presented it to the grand jury. The crime of "dating domestic violence" didn't exist under the statute before 2022 for Martin's facts, to include 2021 when he was arrested and indicted for violating 18 U.S.C. § 922(g)(9). The amended statute (Add.24-26) and the change to § 921(a)(33) and (37) in January 2022 given the BSCA (Add. 29-31 showing the amended, present law) was not in effect when he was arrested and indicted. His was falsely deprived of his right to liberty, denied notice of what crime was involved, and the government still has not admitted to the illegitimate indictment. The BSCA and its statute simply was not retroactive. Even so, how DOJ convinced a grand jury and a judge to overlook the law's fundamental application and scope remains a mystery. The indictment (ER-175) goes far beyond being "defective."

There are multiple implications here. The government apparently must have misrepresented the law to obtain a grand jury indictment. Docket activity until the

30

end of 2021 shows assignment to the magistrate and basically bail motion work with a status conference -- see Dkt. 25 at ER-192. Through March 2022 neither the court nor the federal public defender counsel noted that Mr. Martin was excluded from criminal liability under the existing Section 922(g)(9). By the time Mr. Martin's longer-term federal public defender attorneys came onto the case in May 2022 (see docket 25 at ER-192) if they had missed all media coverage and then researched the law, the "dating" language had been added.

As *Todd* points out, neither courts nor prosecutors can constructively amend an indictment and create non-existent intendment. The law in effect contained no interpretive intent that could have been used to prosecute Mr. Martin as occurred in his case. Potentially, grand jury testimony transcripts would provide the answer as to how a law can have been egregiously "misinterpreted" and unconstitutionally applied when the meaning and definitions were clearly presented in the existing law. The publication of the new law in January 2022 should have been apparent across the DOJ.

Mr. Martin hasn't spent the past 15 months in prison only because while the trial court denied his request, this Court gave the grace of his release pending appeal. According to the Section 921 amendment, under (c)(2) his Second Amendment rights can be restored federally in 5 years after the end of his probation/supervised release. But this is only because he was in a dating situation,

31

and not a spousal or guardianship one; and if subject to no other disqualifications. Add.25. That appears countered by a 10-year period under California law.

The defense's trial court arguments centered on Bruen and Heller (and similar cases) concerning the constitutional right to maintain arms, much as did Martinez, Padgett, and Ryno where this Court recently held in its March 18, 2026, Opinion for appeal case 23-432 at Dkt. 87.1 that 18 U.S.C. § 922(g)(9) is Constitutional both facially and as it was applied.

Martin's case is distinguished from *Martinez et al.* because they were married and their matters involved spouses and/or children where their domestic violence violations fell well within the existing law. The law prior to 2022 did not include a dating relationship and should not have been wrongly applied to Mr. Martin. Therefore, because the statute that existed in 2021 was unconstitutionally applied to Mr. Martin, his conviction must be vacated.

Alternately the Court should look at the totality of the circumstances and find structural error. Everything from the search to the indictment, with pressure on Mr. Martin that he could not prevail at a jury trial, led to stipulated facts (ER-067) and a bench trial where he was convicted despite proclaiming to his lawyers all along that he had no dominion over the safe and firearms because he did not know the combination. He would have been faced with a "he said – he said" against Ledbetter at a full trial. Ledbetter was convinced Martin possessed the firearms and

32

the government claimed guilt through knowledge of safe contents. ER-067; 043.

That is not the standard for possession but was repeated throughout. Mysteriously,

nobody could account for the alleged 7.62 round in the indictment. ER-175.[3]

**1. Martin was unconstitutionally prosecuted and convicted of a law applied ex post facto; which violated his Fourth, Fifth, and Sixth Amendment rights.**

The use of the federal felony charge while Martin's D.C. case was simultaneously proceeding served a purpose of creating duress. Agent Ledbetter admitted he talked to D.C. DOJ to obtain the second search warrant, without ever making mention of coordination by anyone in DOJ to follow the Petite Policy of talking to state prosecutors. ER-070-79. The judge then erred in denying the Motions to dismiss and suppress, even given argument of lack of jurisdiction. (See ER-143 for example and ER 070-74; also denying a Franks hearing).

The search of the safe was an illegal 4th Amendment violation. There was no legitimate federal predicate, probable cause, or even reasonable suspicion. Facts cannot have been examined under the law when the safe was broken into *after the items to be seized for the January 6th case search had been located*. That included his phone and clothes he wore to D.C., as if those items show planning to trespass

---

[3] Search/seizure receipts in discovery showed no such round, which also was incompatible with any firearms contained in the safe, all beyond Martin's dominion.

in the near general warrant. ER-167-69. Everything FBI Agent Ledbetter wrote in his affidavits for the second search warrant (to cover the "after the fact" of break-in) was accepted as true, despite that not being the case. With so much expended on *Bruen* and other cases, the lack of reasonable suspicion (stale 2013 shotgun receipt elsewhere in the home, and a gun case in a closet) received little attention. There should have been serious doubts raised about the affidavit to get a second search warrant after the safe was broken into. The same agent claimed without proof that Martin knew the combination and had access to the safe but didn't provide it. Yet Agent Ledbetter didn't call the person with the combination – causing break-in of the safe – with everything from him to be believed?

The forensics (common discovery provided by the government) are telling. No fingerprints or DNA was taken from the safe's combination dial or handle. Mr. Martin was presumed guilty because a locked safe was in his residence where others lived, without any showing he ever touched the combination, where no forensics were attempted on the outside of the safe. Affidavits were provided that showed ownership of firearms in the safe by at least one other person. ER-041. The picture also shows the broken safe with no 7.62 round. ER-040. That important papers might be kept by C.G. in the fire resistant safe in California on behalf of Martin was treated as nefarious, and as inference that Martin must have had the combination. The legal issue of "dominion" was never raised by his defense, and

34

he was left with non-negotiable stipulated facts where his presence in the same residence was equated to "possession." ER-067.



**Figure 1: common discovery showing the FBI searchers had no interest in the Champion safe. The white placard (0) says: "not searched."**

This is the type of inherent bias that causes defendants to lose hope about being able to have a fair trial. Motions were denied without any evidentiary or hearing that would place the burden on the government. The charge for the 7.62 round remains a mystery. It supposedly was seen by the FBI atop the safe. The above FBI discovery picture from the search shows that to be quite untrue. Additionally, the figure above serves another important purpose. It shows the

35

combination dial that was never tested. See also ER-040 for the view of the destroyed safe.

**2. Martin was denied notice as well as substantive due process**.

There was no federal crime under 18 U.S.C. § 922(g)(9) that applied to him upon arrest and indictment. How was he as a non-attorney supposed to know the details when surrounded by "the experts?" Without notice, he cannot have had the *mens rea* to violate the federal law, regardless of whether anyone thought he was guilty of violating California law. Thus, the conviction must be overturned. He was denied a Franks hearing on the evidence because Ledbetter's affidavit was considered reasonable. (Found at ER-182-86).

The law was misapplied: an illegitimate "second" search was conducted of his residence using an illegitimate affidavit, property was destroyed, he had no notice of being subject to the crime (wrongly) charged, was jailed, indicted, placed under house arrest and other supervised release conditions (such as curfew and ankle monitor), subjected to financial hardship, and ridiculed as an insurrectionist because of the DOJ's news releases throughout his prosecution. His discovery (not public) showed the FBI used a false J6 predicate of Martin being a domestic terrorist in this case. Forensics requests showed that J6 terrorist designation here.

Because of the above, the Court should vacate the charges and remand for dismissal with prejudice.

36

III. **THE SENTENCE MUST BE VACATED BECAUSE THERE WAS NO REASONING GIVEN FOR IT WHERE IT EXCEEDS APPLICABLE USSG GUIDELINES, AND VIOLATES MR. MARTIN'S 2ND AND 5TH AMENDMENT RIGHTS.**

A. **Standard of Review**

"We review the district court's factual findings for clear error, its construction of the United States Sentencing Guidelines de novo, and its application of the Guidelines to the facts for abuse of discretion." *United States v. Harris*, 999 F.3d 1233, 1235 (9th Cir. 2021)((quoting *United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170 (9th Cir. 2017) (en banc)). "Objections to a sentence not presented to the district court generally cannot be raised for the first time on appeal. However, imposition of an erroneous sentence may be reviewed for plain error." *United States v. Halamek*, 5 F.4th 1081, 1087 (9th Cir. 2021). ((quoting *United States v. Vieke*, 348 F.3d 811, 813 (9th Cir. 2003) (internal citation omitted)).

Defense objected to the PSR computation and requested a hearing. SER03-11.

B. **Martin's Sentence was Excessive, With Significant Discrepancies From What Should Have Been Assessed; Where the Judge Violated Martin's 2nd and 5th Amendment Rights with an Unconstitutional USSG Application.**

The judge's issuance of the sentence of 38 months' imprisonment did not include any supporting reasons at sentencing or afterwards.

37

The Guidelines state that it is 'appropriate' that facts relevant to sentencing be proved by a preponderance of the evidence, USSG § 6A1.3 comment, and we have held that application of the preponderance standard at sentencing generally satisfies due process. *McMillan v. Pennsylvania*, 477 U.S. 79, 91-92, (1986); *Nichols*, supra, 511 U.S. at 747-748. We acknowledge a divergence of opinion among the Circuits as to whether, in extreme circumstances, relevant conduct that would dramatically increase the sentence must be based on clear and convincing evidence.

*United States v. Watts*, 519 U.S. 148, 156 (1997).

SER-03-11 contains Martin's objections. He stipulated only to the items in the Indictment (ER-067). The PSR surprise was to attribute to Martin the other firearms that belonged to Gramespacher. ER-041. The greatest enhancement that the DOJ and Probation wanted added was to hold Martin accountable for possessing an AR-15 (and standard magazines) with no proof. The DOJ and USSG unconstitutionally alleged a standard 30-round magazine counted as "large capacity." *No federal law makes a 30 round AR-15 magazine illegal*. This violated his 2nd Amendment and Fifth Amendment rights.

No proof was ever put forth that Martin had dominion or possession of these items. He stipulated after lawyers said he had "constructive possession" by being in the residence, knowing the safe was present, and knowing that others' firearms were in the safe. ER-067.

The USSG base level for the charge fell under §2K2.1., where (a)(7) with a base of 12 at most should have been assessed. Instead, the DOJ and Probation

38

wrote that Martin should be assessed at (a)(4)(B) because of a semiautomatic firearm capable of accepting a "large capacity" magazine. USSG Commentary 2 states a magazine that holds more than 15 rounds applies. No law supports this or makes a standard AR-15 magazine illegal. The Model 1911 .45 cal. pistol only accepted a magazine of 7-8 rounds. Neither the pistol nor the shotgun would be considered a semiautomatic rifle. No semiautomatic rifle was in the indictment. The USSG "illegal" designation of a standard magazine is unconstitutional. Martin had no notice because there was no federal law supporting the USSG, and the judge unconstitutionally used the USSG to violate Martin's rights enhancing for a legal magazine capability.

Martin walked into an unjust ambush for sentencing. The government couldn't obtain an indictment and there was no proof he possessed the AR-15 or magazine either through safe access, dominion, or title, yet they were attributed to him, with nothing constitutionally shown for alleged "large capacity" magazines.

Even the offense level of 20 was not enough for the DOJ. It demanded that with no evidence of obstruction, nor a preponderance of evidence, that 3C.1.1 should apply, and added an enhancement of +2, then +4 by counting firearms known to belong to others. ER-041. The DOJ and Probation were stacking up unwarranted points to recommend a sentence from 57 to over 70 months

39

imprisonment for a victimless crime where no firearm was ever used to threaten anyone, deal drugs, commit burglary, or anything else.

Defense said the maximum should be 18 months imprisonment. But even that was incorrect. Under §2K2.1 when using the correct assignment of level 12 from (a)(7), then paragraph (b)(2) should have been applied since years ago all Martin ever did regarding a firearm involved sporting or hunting. The "12" should have been reduced by "6." Given History II, the maximum prison sentence should have been 1-7 months. And Zone B, where he should fall, would have allowed a mix of probation. Even then, the two point reduction for acceptance of responsibility should have dropped Martin to level 4.

The enhancement was a surprise ambush because allegedly by agreeing to a stipulated bench trial, using the right assessment with reduction of 2 for accepting responsibility, Martin should have fallen into Zone A with 0-6 months as the range (where probation could have been allowed). If the DOJ could have proved that Martin *possessed* the AR-15 and magazines, certainly the grand jury would have indicted for that. Instead, he was indicted only for a pistol, shotgun, and mysterious round of 7.62 ammunition.

The hearing discussed the matters above without decision. The judgment (ER-033-034) ordered 38 months of imprisonment, which means the judge used § 2K2.1.(a)(4) despite constitutional violations and over objections to reach level 20

(meaning she counted the AR-15 and the unconstitutional claim about the standard magazine capability). She decided without an evidentiary hearing. No "reasonableness" can be found in the prison sentence which at most should have ranged from 0-7 months, and not 38 months. The government's recommendations were outrageous, unconstitutional, and without evidence. As was the sentence.

Because of the above, with unjustified enhancements and constitutional violations, the court should vacate the sentence if it is not going to vacate the conviction.

### C. The Judge Abused Discretion and Erred by Including Computer and Device Searches as Part of Special Conditions of Release.

The district court abused its discretion, and alternately clearly erred in ordering the special release condition that allows computer and device searches because there is no relation between computer or internet use and the crime for which Martin was sentenced.  ER-037. The Order stated:

> You must submit your person, property, house, residence, vehicle, papers, computer, other electronic communications or data storage devices or media, or office, to a search conducted by a United States probation officer or any law enforcement officer at any time, based upon reasonable suspicion of unlawful conduct or a violation of a condition of supervision, without a search warrant.

Mr. Martin had no history of abuse of computers, phones, or the internet that portends harm to the public. The caselaw is consistent across circuits that computer monitoring and searches must be because a computer or internet access facilitated

41

the crime being sentenced. For discretionary supervised release conditions, USSG §5D1.3(b) requires that the conditions must involve no greater deprivation of liberty than is necessary and:

> (1) are reasonably related to (A) the nature and circumstances of the offense and the history and characteristics of the defendant; (B) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (C) the need to protect the public from further crimes of the defendant; . . .

USSG §5D1.3(b)

As happened in the present case,

> An error of law occurs if the sentence results from a misapplication of the sentencing statutes - here 18 U.S.C. § 3553(a) - or the Sentencing Commission's guidelines or policy statements or if the court fails to adequately explain (for appellate review purposes) the reasons for the sentence it imposed.

*Gall v. United States*, 552 U.S. 38, 51 (2007).

Because there was no relationship to the charge convicted of, and no explanation was given, the court should vacate that condition and remand.

## CONCLUSION

For all the foregoing reasons, where the law was unconstitutionally applied, Mr. Martin's rights were violated, judicial error occurred, and the President's Pardon Proclamation applies, and for any other reasons this honorable Court deems just and proper, the judgment of the district court should be vacated, and the case remanded for dismissal with prejudice. In the event the Court should find instead

42

for a new trial, the Motion (ER-156-74) to suppress the evidence from the safe should be granted.

Date:  May 26, 2026                         Respectfully submitted,
amended with SER May 29, 2026

/s/ *Carolyn Stewart*
Stewart Country Law PA
1204 Swilley Rd.
Plant City, FL 33567
813-659-5178

*Attorney for Appellant Benjmain Martin*

43

## STATEMENT OF RELATED CASES

**From Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6**

**9th Cir. <u>Case Number 24-7203</u>**

The undersigned attorney or self-represented party states the following:

[ X ]   I am unaware of any related cases currently pending in this court.


**Signature** /s/<u>*Carolyn Stewart*</u>                    **Date** May 26, 2026
                    Carolyn Stewart
Counsel for Appellant Benjamin Martin

# CERTIFICATE OF COMPLIANCE

I certify that:

This brief complies with the word limit of Ninth Circuit Rule 32-1 because this brief contains 9650 words, including words manually counted in any visual images, and excluding the items exempted by Fed. R. App. P. 32(f).

This brief complies with the type size and typeface requirements of Fed. R. App. P. 32(a)(5) and (6).

Date: May 26, 2026

*/s/ Carolyn Stewart*
Carolyn Stewart
Stewart Country Law PA
*Attorney for Appellant Benjamin Martin*

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the Appellate Electronic Filing system.

Date: May 26, 2026, (errata with SER on May 29, 2026),

*/s/ Carolyn Stewart*
Carolyn Stewart
Stewart Country Law PA
*Attorney for Appellant Benjamin Martin*